# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **ENERGY TRANSFER LP,** d/b/a **SUNOCO LOGISTICS**, **GP, LLC**<br><br>    Plaintiff,<br><br>**LORI CHAVEZ-DEREMER**, in her official capacity as Secretary of the United States Department of Labor,<br><br>**WILLOW FORT**, in her official capacity as an Administrative Law Judge of the United States Department of Labor,<br><br>**UNITED STATES DEPARTMENT OF LABOR**,<br><br>*and*<br><br>**THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR.**<br><br>    Defendants. | **CIVIL CASE NO. 25-1258** |

ORIGINAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Energy Transfer LP d/b/a Sonoco Logistics, GP, LLC ("Energy Transfer"), by its undersigned attorneys, alleges and states as follows:

**INTRODUCTION**

1.   Energy Transfer brings this action for declaratory relief under 28 U.S.C. §§ 2201-

02, to enjoin Defendants from conducting an unconstitutional administrative hearing against Energy Transfer currently pending in the U.S. Department of Labor ("DOL")'s Office of Administrative Law Judges ("OALJ"), *Wyderka v. Energy Transfer*, Dkt, No. 2023-PSI-0001 (the "ALJ Hearing"). The ALJ Hearing is unconstitutional for multiple reasons, including depriving Energy Transfer of its Seventh Amendment constitutional right to a jury trial as recently affirmed by the U.S. Supreme Court in *SEC v. Jarkesy*, 144 S. Ct. 2117 (2024) ("*Jarkesy II*").

2.  The ALJ Hearing involves claims against Energy Transfer for compensatory damages and other relief under the whistleblower provisions of the Pipeline Safety Improvement Act of 2002, 49 U.S.C. § 60129 ("PSIA") currently pending before DOL Administrative Law Judge ("ALJ") Willow Fort. An evidentiary hearing on the merits is scheduled to commence on September 9, 2025 to be tried by ALJ Fort without a jury and without the discovery and evidentiary protections available in an Article III court, subject to review by an appellate board and potential further determination by U.S. Secretary of Labor Lori Chavez-DeRemer. The purpose of this civil action is to prevent DOL, its OALJ, Secretary Chavez-DeRemer, and ALJ Fort from continuing this unconstitutional ALJ Hearing against Energy Transfer.

3.  The ALJ Hearing centers around a dispute between Energy Transfer and one of its former employees, Andrew Wyderka, arising from his termination of employment on January 6, 2022. On May 18, 2022, Wyderka filed a complaint against Energy Transfer with DOL's Occupational Safety and Health Administration ("OSHA"), alleging retaliation by Energy Transfer in violation of the PSIA. *See* Declaration of Mark Ishu, Ex. 1, Notice of Whistleblower Complaint (May 18, 2022) ("Wyderka Complaint").[1] Energy Transfer vigorously denies his claim of retaliation and submits that Wyderka was terminated for lawful, non-retaliatory reasons, namely his inability

---

[1] All Exhibits referenced in this Complaint are exhibits to the Ishu Declaration.

2

to improve his performance following a Performance Improvement Plan.

4. Energy Transfer is not asking this Court to litigate the merits of Wyderka's allegations. Instead, Energy Transfer brings five constitutional challenges to the ALJ Hearing.

5. *First*, in *Jarkesy II*, the U.S. Supreme Court held that trying legal claims administratively violates the Seventh Amendment constitutional right to a jury trial. *See Jarkesy II*, 144 S. Ct. at 2127-28. Here, Wyderka's claims are legal in nature, seeking damages for backpay and compensatory damages, and are similar to common-law wrongful-discharge actions. The pending ALJ Hearing denies Energy Transfer its constitutional right to a jury trial.

6. *Second*, OALJ's ALJs are unconstitutionally shielded from presidential oversight mandated by the Take Care Clause, U.S. Const. art. II, sec. 2, because they are doubly insulated from the presidential removal power: they can be removed *only* for cause and *only* by the Merit Systems Protection Board ("MSPB"), whose members can be removed *only* for cause by the President. In *Jarkesy I*, the U.S. Court of Appeals for the Fifth Circuit held that such double insulation is unconstitutional. *See Jarkesy v. SEC*, 34 F.4th 446, 463-65 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd and remanded*, 144 S. Ct. 2117 (2024).

7. *Third*, Wyderka's claims implicate private rights that must be adjudicated in an Article III court. Adjudicating those rights in an Article I tribunal violates Article III and the separation of powers vesting the judicial power exclusively in the judicial branch.

8. *Fourth*, the PSIA statutory scheme accords Wyderka, a private litigant, power to kick out his claims to an Article III court and elect a jury trial, but without providing any intelligible standard to curb or even guide his discretion. Wyderka may even do so after an adverse ruling by ALJ Fort. By delegating unfettered legislative power to an individual litigant to decide whether his claims should be tried before an Article I ALJ or an Article III court with the right to a jury trial and full due-process protections unavailable in the OALJ, PSIA violates the nondelegation

doctrine of the constitutional separation of powers. *See Jarkesy I,* 34 F.4th at 459-63.

9. *Fifth*, the OALJ proceedings violate due process because they lack basic procedural protections, such as the mandatory application of the Federal Rules of Evidence.

10. On January 15, 2025, ALJ Fort issued an order in which she held she does not have the power to decide whether the jurisdiction conferred on the OALJ is constitutional post-*Jarkesy II*. *See* Declaration of Mark Ishu, Ex. 2.

11. Subsequently, on February 24, 2025, the Administrative Review Board ("ARB") decided that it does not have the authority to provide a remedy to the challenges Energy Transfer brought in its motion to dismiss. *See* Declaration of Mark Ishu, Ex. 3.

12. These rulings mean that the issues cannot be considered by any court until years from now, following multiple levels of internal DOL adjudication. ALJ Fort's and the ARB's rulings that they lack power even to consider whether they have constitutional power to adjudicate the claims before them abdicates their fundamental duty to apply the laws and Constitution of the United States, pursuant to their oath of office.

13. The *Jarkesy* decisions and another recent Supreme Court ruling, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), have brought these concerns to a head. *Axon* held that parallel challenges to the constitutional authority of federal agency ALJs are entitled to immediate "here-and-now" adjudication and, where appropriate, injunctive relief from an Article III district court. *Id.* at 195. Under *Axon*, the district court may take swift action to prevent "here-and-now" injury by averting unconstitutional administrative enforcement proceedings without waiting for completion of the administrative process and limited judicial review by a circuit court of appeals.

14. Energy Transfer sits in the same precarious shoes as did the respective plaintiffs in *Axon*— facing an imminent unconstitutional administrative adjudication of claims against it that belong in an Article III court. And its constitutional deprivations mirror those brought in *Jarkesy*.

4

To prevent the acute harm from being required to endure the ALJ Hearing that are facially and irreparably unconstitutional, this Court should preliminarily and permanently enjoin the proceedings, declare further proceedings unlawful, instruct the ALJ to dismiss the case, and grant such other relief as this Court deems necessary or proper.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under the United States Constitution as applied to a federal statute, PSIA, and seeks relief against officers of the United States. *Axon* expressly held that district courts have federal-question jurisdiction under § 1331 to review analogous claims that an agency's enforcement structure violates the Constitution. 598 U.S. at 195. No provision in PSIA or any "other law takes that power away." *Id*. at 211 (Thomas, J., concurring).

16.     This Court has the authority to grant injunctive and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and its inherent equitable powers.

17.     Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(B). Energy Transfer's principal place of business is located in this District at: Energy Transfer 8111 Westchester Drive, Suite 600, Dallas, TX 75225. Any harm resulting from the ALJ Hearing will be felt by Energy Transfer in this District. The Defendants are acting in their official capacity as officers of an agency of the United States, and the federal agencies exercise authority in this District.

## PARTIES

18.     Plaintiff Energy Transfer LP is a privately held Delaware corporation with its principal place of business in Dallas, Texas. Energy Transfer owns and operates various oil and gas assets throughout the United States. Sonoco Logistics Partners, GP, LLC is a subsidiary of Energy Transfer that employed Wyderka from August 2015 until January 2022.

19. Defendant Lori Chavez-DeRemer is the Secretary of Labor. She is statutorily responsible for investigating and adjudicating complaints filed pursuant to the PSIA. She is sued in her official capacity.

20. Defendant Willow Fort is the ALJ presiding over *Wyderka v. Energy Transfer d/b/a Sunoco Logistics,* No. 2023-PSIA-00001 pending before the DOL's OALJ. She is sued in her official capacity.

21. DOL is an agency of the federal government that, among other things, is statutorily tasked with investigating and adjudicating complaints filed pursuant to the PSIA. 49 U.S.C. § 60129.

22. OALJ is responsible for adjudicating complaints filed pursuant to the PSIA.

### BACKGROUND

I. **The OSHA Whistleblower Complaint, Investigation and ALJ Hearing.**

23. Enacted in 2002, the PSIA provides whistleblower protections for employees of entities who own or operate a pipeline facility. 49 U.S.C. ¶ 60129. OSHA is the federal agency that enforces PSIA's whistleblower protections.

24. On May 18, 2022, Wyderka filed a whistleblower complaint with OSHA against Energy Transfer alleging it had retaliated against him in violation of PSIA. *See* Ishu Decl. Ex. 1.

25. An OSHA regional investigator reviewed Wyderka's complaint and, on January 3, 2023, dismissed it because OSHA did not have reasonable cause to believe that Energy Transfer violated PSIA when it terminated his employment. *See* Ishu Decl. Ex. 4, OSHA Findings.

26. On February 1, 2023, Wyderka appealed to the OALJ. *See* Ishu Decl. Ex. 5.

27. After engaging in discovery, Energy Transfer filed a motion for summary dismissal on December 7, 2023, which was denied by ALJ Fort on January 25, 2024. *See* Ishu Decl. Ex. 6,

6

Order.

28. The Supreme Court issued *Jarkesy II* on June 27, 2024. On October 7, 2024, Energy Transfer submitted a letter to ALJ Fort apprising her of the decision and Energy Transfer's intent to move to dismiss for lack of subject-matter jurisdiction based upon *Jarkesy I* and *II*. *See* Ishu Decl. Ex. 7, letter. The letter asked for a conference call to discuss a briefing schedule and a temporary stay of discovery pending a ruling.

29. On November 21, 2024, Energy Transfer moved to dismiss for lack of subject-matter jurisdiction based upon *Jarkesy I* and *II*.

30. On January 15, 2025, ALJ Fort denied Energy Transfer's motion to dismiss, ruling on the one hand that "I do not have the power to decide [constitutional issues] in the ultimate case" and, on the other hand, that "[t]he law, as it currently exists, permits this Tribunal to hear this matter." *See* Ishu Decl. Ex. 2, Order. In other words, ALJ Fort's decision held that she lacked authority to decide the ultimate issue of whether OALJ is a proper tribunal to hear constitutional challenges post-*Jarkesy II*.

31. On January 23, 2025, Energy Transfer filed an expedited motion for an order permitting appeal of interlocutory order requesting ALJ Fort certify that her order denying Energy Transfer's motion to dismiss involved a "controlling question of law as to which there is substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b); Ishu Decl. Ex. 8 Expedited Motion.

32. On January 31, 2025, Energy Transfer filed an interlocutory appeal of ALJ Fort's order denying its motion to dismiss to the Administrative Review Board ("ARB"). *See* Ishu Decl. Ex. 9, Interlocutory Appeal. Energy Transfer's appeal identified five exceptions taken to ALJ Fort's order. First, ALJ Fort's order is contradictory on the ultimate issue in Energy Transfer's primary argument that the administrative tribunal is improper because it lacks authority to hear constitutional challenges to the proceedings. Second, ALJ Fort's order incorrectly holds that

7

Energy Transfer's Seventh Amendment claim fails by narrowing the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024). Third, ALJ Fort's order erroneously holds that the public-rights exception applies to this proceeding, because PSIA's whistleblower protections are integrated into a regulatory scheme aimed at protecting life and property from pipeline transportation and pipeline facilities. Fourth, ALJ Fort's order improperly rejects Energy Transfer's removal argument with one sentence, citing a case from 1926 that fails to address Energy Transfer's argument or account for the drastic change in law over recent years. Lastly, ALJ Fort's order fails to address Energy Transfer's non-delegation and Article III arguments.

33. On February 11, 2025, ALJ Fort granted Energy Transfer's motion and certified the issue of whether Energy Transfer is entitled to a jury trial under the Seventh Amendment to the ARB. *See* Ishu Decl. Ex. 10, Order.

34. On February 24, 2025, the ARB denied Energy Transfer's interlocutory appeal, holding that "the Board would not appear to have the authority [sic] provide a remedy for these challenges." *See* Ishu Decl. Ex. 11, Order. The ARB further held it cannot consider facial challenges to the legality of a regulatory provision or the constitutionality of a statutory provision. Lastly, the ARB held that the Secretary's delegation of authority states "[t]he Board shall not have jurisdiction to pass on the validity of any portion of the Code of Federal Regulations that has been duly promulgated by the Department of Labor[.]"

35. A hearing on the merits of Wyderka's claims is scheduled to be heard by ALJ Fort on September 9, 2025.

## II. The Unconstitutionality of the OALJ Proceedings against Energy Transfer.

36. The ALJ Hearing against Energy Transfer is unconstitutional under *Jarkesy I* and *II*. Even though the OALJ is aware of the constitutional bars, it has declined to act upon them—

indeed, it has declined even to consider them—because, it says, administrative agencies are powerless to consider their lack of constitutional power to enforce the laws they administer. *See* Ishu Decl. Ex. 11, Order.

37. ALJ Fort's refusal to consider whether the ALJ Hearing is unconstitutional exemplifies why Article I courts are not proper tribunals to adjudicate claims that sound in law and involve private rights.

38. The Supreme Court has made it perfectly clear that the deprivation of a constitutional right constitutes an irreparable injury, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and that the time to review and resolve such constitutional violations is now. *Axon*, 598 U.S. at 191. *Axon* holds that federal district courts should rule on constitutional challenges to agency enforcement proceedings to prevent "here-and-now" injuries that "cannot be undone" through appellate review, and thus must be ruled upon as they arise. *Id.* Under *Axon*, the ALJ Hearing should be enjoined, as appellate review following a final decision by the Secretary cannot remedy the constitutional violations, nor can the unconstitutional nature of the proceedings be severed to redress the injury without affecting the adjudication.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **VIOLATION OF SEVENTH AMENDMENT**

39. Energy Transfer re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

40. The Seventh Amendment entitles parties to a jury trial of claims that are legal in nature.

41. Wyderka's claims against Energy Transfer are legal in nature because he seeks compensatory damages, including damages for back pay, contributions to his 401k and medical

9

expenses.

42. The value in controversy exceeds twenty dollars.

43. Wyderka's claims against Energy Transfer seeking a personal award of money damages do not fall within the narrow public rights exception to the Seventh Amendment's right to a jury trial.

44. The ALJ Hearing and ALJ Fort's adjudication of Wyderka's claims violates Energy Transfer's Seventh Amendment right to a trial by jury and constitutes an ongoing irreparable harm to Energy Transfer.

## COUNT II
## VIOLATION OF PRESIDENT'S REMOVAL AUTHORITY UNDER ARTICLE II

45. Energy Transfer re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

46. Article II of the Constitution provides that the President must "take Care that the Laws be faithfully executed," and vests the President with the sole authority to remove those who assist him. U.S. Const. art. II, § 3.

47. DOL ALJs are inferior officers within the executive branch of the United States subject to the President's removal authority.

48. The Secretary of Labor may remove ALJ Fort "only for good cause established and determined by the [MSPB]." 5 U.S.C. § 7521(a).

49. MSPB members, in turn, may be removed by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

50. Accordingly, even though she is exercising executive authority, two levels of for-cause removal protections insulate ALJ Fort from presidential control, which violates Article II of the Constitution and irreparably harms Energy Transfer.

51. This violation of Article II is not severable or mitigable and inflicts an actionable injury. ALJ Fort's ruling that she lacks authority to consider whether the ALJ Hearing against Energy Transfer is unconstitutional and is illegal conduct warranting Presidential oversight.

## COUNT III
## VIOLATION OF ARTICLE III

52. Energy Transfer re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

53. Energy Transfer's private rights are at stake in the ALJ Hearing because Wyderka is seeking compensatory damages.

54. Claims involving private rights cannot be removed from the jurisdiction of the Article III courts. The types of claims Wyderka is asserting and the relief Wyderka seeks implicate the judicial power, which Article III of the Constitution vests exclusively in the federal courts. By adjudicating the claims before an Article I ALJ and subsequent administrative review and decision, Wyderka's election to proceed in the OALJ usurps what the Constitution leaves to the exclusive jurisdiction of Article III courts.

55. Wyderka's claims do not implicate administrative expertise or efficiency. They do not require administrative adjudication, nor are they uniquely suited to administrative adjudication.

56. Accordingly, ALJ Fort's and DOL's continued administrative adjudication of Wyderka's claims violates Article III of the Constitution and constitutes an ongoing irreparable harm to Energy Transfer.

## COUNT IV
## VIOLATION OF NONDELEGATION DOCTRINE
## AND SEPARATION OF POWERS UNDER ARTICLE I

57. Energy Transfer re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

58. Under the separation of powers required by the Constitution, Congress may delegate legislative authority to an administrative agency only if it provides an intelligible principle by which that agency can exercise that power.

59. The PSIA provides no such "intelligible principle." Once 210 days have lapsed since Wyderka filed his initial complaint, under PSIA, Congress grants to Wyderka unfettered discretion to adjudicate his PSIA claims in either an administrative proceeding before the OALJ with up to two further levels of DOL administrative review, or in federal court with a mutual option to elect a trial by jury. That right re-vests for 90 additional days after the Secretary of Labor issues her final decision, when Wyderka may move his claims to an Article III federal court for *de novo* adjudication—giving him, but not Energy Transfer, the unfettered right to a do-over should he receive an adverse result in the ALJ Hearing.

60. Congress has exceeded its Article I authority by delegating to a third party, in this case a private party (Wyderka), the power to choose (twice, at separate junctures) whether to keep an action before the DOL or to move it to an Article III court.

61. Congress's delegation of authority to a private party to decide whether to subject his private dispute with Energy Transfer to administrative adjudication, violates Article I of the Constitution, the separation of powers required by the Constitution, and the nondelegation doctrine limiting congressional authority.

62. The PSIA's violation of the separation of powers and the nondelegation doctrine thus violates the Constitution and constitutes an ongoing irreparable harm to Energy Transfer.

### COUNT V
### VIOLATION OF THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE

63. Energy Transfer re-alleges and incorporates by reference each of the preceding paragraphs and allegations.

64. Under DOL regulations, ALJ Fort has broad discretion to limit discovery to expedite the ALJ Hearing. Further, the lack of statutory power to adhere to the Federal Rules of Evidence violates Energy Transfer's due-process rights under the Fifth Amendment and materially impairs Energy Transfer's ability to defend itself in the ALJ Hearing.

65. If the action had been brought in an Article III court, as is constitutionally required, Energy Transfer would be granted full discovery rights and would be granted the full constitutional protections afforded by Article III courts.

66. Because PSIA authorizes Wyderka, a private third-party adverse actor, to choose whether Energy Transfer is afforded the protections of an Article III court; whether Energy Transfer is given the opportunity to defend itself in front of a neutral Article III judge who meets constitutional requirements; whether to erase an adverse result in the DOL by moving his claims to federal court for *de novo* review; and whether or not Energy Transfer can access its Seventh Amendment right to a jury trial, the ongoing ALJ Hearing violate Energy Transfer's due-process rights by implicating fundamental questions of fairness.

67. PSIA also accords DOL a right to participate at any time and then become both prosecutor and adjudicator, including the rights to petition for review of ALJ orders and to approve or disapprove of settlements between the parties. The statutory scheme thus violates Energy Transfer's due- process rights to a fair and impartial adjudicator by allowing DOL to participate in dual roles.

68. ALJ Fort's ruling that she lacks any authority to consider constitutional challenges to her authority further violates Energy Transfer's due-process rights, as it deprives Energy Transfer of an adjudicator who can fulfill the very essence of judicial duty. Requiring a litigant to endure years of illegal, unconstitutional litigation because the tribunal declares that it lacks power to halt its own extra-jurisdictional proceedings is fundamentally unfair and thus violates due process.

69.  This one-sided, fundamentally unfair scheme is inherent in the underlying proceedings and thus constitutes an ongoing irreparable harm to Energy Transfer and should be enjoined.

## PRAYER FOR RELIEF

For these reasons, Energy Transfer respectfully requests that this Court:

1. Preliminarily and permanently enjoin Defendants from continuing the pending ALJ Hearing against Energy Transfer;

2. Declare that the ALJ Hearing against Energy Transfer is unlawful and that Defendants may not proceed with the ALJ Hearing;

3. Award such other and further relief as this Court may deem just and proper, including but not limited to reasonable attorney's fees and costs.

Dated: May 16, 2025                          Respectfully submitted,

_____
Jessica Renee Brown
Texas State Bar No. 24048975
Jessica@KJPartners.law
KJ Partners LLP
4849 Greenville Ave., Ste. 100-170
Dallas, Texas 75206
Tel: (469) 586-6881

*Local Counsel for Plaintiff Energy Transfer*

/s/ Kara Maciel
_____

Kara Maciel, Esq. (pro hac vice motion forthcoming)
District of Columbia Bar No. 477363
kmaciel@connmaciel.com
Mark H. Ishu, Esq. (pro hac vice motion forthcoming)
Illinois State Bar No. 6296803
mishu@connmaciel.com
Conn Maciel Carey LLP
5335 Wisconsin Avenue, NW, Suite 660
Washington, D.C. 20015

*Lead Counsel for Plaintiff Energy Transfer*