## UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| **ENERGY TRANSFER LP,** <br> **d/b/a SUNOCO LOGISTICS, GP, LLC,** <br><br>　　　Plaintiff, <br><br> v. <br><br> **LORI CHAVEZ-DEREMER**, in her official capacity as Secretary of the U.S. Department of Labor, et al., <br><br>　　　Defendants. | Case No. 3:25-cv-01258-L |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## <u>SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

**Page(s)**

I.    NATURE OF CASE ................................................................................................1

II.   INTRODUCTION ................................................................................................1

III.  STATEMENT OF FACTS....................................................................................4

IV.   LEGAL ARGUMENT...........................................................................................6

      A.  This Court Has Subject-Matter Jurisdiction over Energy Transfer's Claims. .........7

      B.  Energy Transfer Is Entitled to a Preliminary Injunction..........................................7

          1.  Energy Transfer Has a Substantial Likelihood of Success on the Merits....9

             i.  Energy Transfer Will Likely Succeed on its Claim that the ALJ Hearing Violates the Seventh Amendment Right to a Trial by Jury (Count I)............................................................................................9

                  a.  Wydra's Retaliation Claim is Analogous to Common- Law Contract and Tort Claims.....................................................13

                  b.  Wyderka Seeks Compensatory Damages and Other Legal Relief ........................................................................................... 15

                  c.  The Public-Rights Exception Does Not Apply........................... 16

             ii.  Energy Transfer Will Likely Succeed on its Claim that the ALJ is Double Insulated from the President's Removal Authority, Violating the Take Care Clause of Article II of the U.S. Constitution (Count II). ....................................................................................17

             iii.  Energy Transfer Likely Will Succeed on its Claim that Wyderka's Underlying Allegations Involve Private Rights and Thus Must be Adjudicated in an Article III Court (Count III). ...........................21

             iv.  Energy Transfer is Likely to Succeed on its Claim that the ALJ Hearing violates the Nondelegation Doctrine and Separation of Powers under Article I of the Constitution (Count IV). ................22

             v.  Energy Transfer Is Likely to Succeed on its Claim that the OALJ's

Procedural Deficiencies Violate the Fifth Amendment's Due Process Clause (Count V)...........................................................23

2.  Energy Transfer Will Suffer Irreparable Harm without a Preliminary Injunction. ................................................................................25

3.  The Harm to Others and the Public Interest Favor An Injunction............26

C.  Security under Rule 65(c) .................................................................27

V.    CONCLUSION..........................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Awad v. Ziriax,*
    670 F.3d 1111 (10th Cir.2012) ........................................................................... 27

*Axon Enter. Inc. v. F.T.C.,*
    598 U.S. 175 (2023) .................................................................................... *passim*

*Barbara et al. v. Trump*
    No. 25-CV-244-JL-AJ (D.N.H. July 10, 2025) ................................................. 28

*Book People, Inc. v. Wong,*
    91 F.4th 318 (5th Cir. 2024) ................................................................................. 9

*BST Holdings, L.L.C. v. OSHA,*
    17 F.4th 604 (5th Cir. 2021) ......................................................................... 8, 27

*Buckley v. Valeo,*
    424 U.S. 1 (1976) ................................................................................................ 19

*Centro Tepeyac v. Montgomery Cnty.,*
    722 F.3d 184 (4th Cir. 2013) .............................................................................. 27

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
    494 U.S. 558 (1990) ............................................................................................ 16

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.,*
    636 F.2d 1084 (5th Cir. 1981) ............................................................................ 28

*City of Monterey v. Del Monte Dunes,*
    526 U.S. 687 (1999) ............................................................................................ 14

*Complete Angler, LLC v. City of Clearwater,*
    607 F. Supp. 2d 1326 (M.D. Fla. 2009) ............................................................. 28

*Corrigan Dispatch Co. v. Casa Guzman, S.A.,*
    569 F.2d 300 (5th Cir. 1978) .............................................................................. 28

*Curtis v. Loether,*
    415 U.S. 189 (1974) ................................................................................ 11, 14, 15

*Decker Coal Co. v. Pehringer,*
    8 F.4th 1123 (9th Cir. 2021) ............................................................................... 21

*Elrod v. Burns,*
    427 U.S. 347 (1976) ....................................................................................... 8, 25

iv

*Energy Transfer, LP v. NLRB,*
    WL 3571494 (S.D. Tex. July 29, 2024) ................................................................... 19

*Executive Benefits Ins. Agency v. Arkison,*
    573 U.S. 25 (2014) ................................................................................................... 22

*Fed. Educ. Ass'n v. Trump,*
    No. 1:25-cv-01362 (D.D.C. Aug. 14, 2025) ............................................................... 28

*Free Enter. Fund v. Public Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010) .........................................................................................*passim*

*Freytag v. Commissioner,*
    501 U.S. 868 (1991) ................................................................................................. 20

*Granfinanciera, S.A., v. Nordberg,*
    492 U.S. 33 (1989) ........................................................................................ 11, 12, 15

*Halliburton, Inc. v. Admin. Rev. Bd.,*
    771 F.3d 254 (5th Cir. 2014) .................................................................................... 13

*Jackson Women's Health Org. v. Currier,*
    760 F.3d 448 (5th Cir.2014) ..................................................................................... 27

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ............................................................................*passim*

*Khalil v. Trump,*
    No. 2:25-cv-01963 (D.N.J. June 11, 2025) ............................................................... 28

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
    103 F.4th 748 (10th Cir. 2024) ................................................................................. 21

*Lebow v. Am. Trans Air,*
    86 F.3d 661 (7th Cir. 1996) ...................................................................................... 14

*Lucia v. SEC,*
    585 U.S. 237 (2018) ............................................................................................ 19, 20

*Marbury v. Madison,*
    5 U.S. 137 (1803) ................................................................................................. 3, 24

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248, 255 (1993) ......................................................................................... 16

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................................... 9

*Scherr v. Volpe,*
    466 F.2d 1027 (7th Cir. 1972) .................................................................................. 28

*Schmidt v. Levi Strauss & Co.*,
    621 F. Supp. 2d 796 (N.D. Cal. 2008).................................................................................. 14

*SEC v. Jarkesy*
    144 S. Ct. 2117 (2024) ....................................................................................... *passim*

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ........................................................................................... 2, 18

*Space Exploration Techs. Corp. v. NLRB*,
    24-50627, 24-10855, 24-40533 slip op. at No. 269, ( 5ᵗʰ Cir. R. Aug. 19, 2025)........................ *passim*

*SpaceX v. NLRB*,
    No. W-24-CV-00203-ADA, 2024 WL 3512082 (W.D. Tex. July 23, 2024)....................................... 18

*Stern v. Marshall*,
    564 U.S. 462 (2011) ........................................................................................... 2, 22

*Tamosaitis v. URS Inc.*,
    781 F.3d 468 (9th Cir. 2015) .................................................................................. 14

*Texas v. Becerra*,
    575 F. Supp. 3d 701 (N.D. Tex. 2021) .......................................................................... 9

*Texas v. Biden*,
    10 F. 4th 538 (5th Cir. 2021) ............................................................................... 9, 26

*Trump v. Wilcox*,
    145 S.Ct. 1415(2025) ......................................................................................... 19

*Tull v. United States*,
    481 U.S. 412 (1987) .......................................................................................... 14

*VHS Acquisition Subsidiary No. 7 v. National Labor Relations Board*,
    759 F. Supp 3d 88 (D.D.C. Dec. 10, 2024) ..................................................................... 20

*Waldrop v. S. Co. Servs.*,
    24 F.3d 152 (11th Cir. 1994)................................................................................... 14

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*,
    80 F.4th 536 (5th Cir. 2023).................................................................................... 8

*Wyderka v. Energy Transfer*,
    Admin. Review Bd. (DOL) Interlocutory appeal (2025)(Warren, Arb.)....................................... *passim*

## Statutes

5 U.S.C. § 1202................................................................................................... 17, 20

5 U.S.C. § 1204..................................................................................................... 17

5 U.S.C. § 3105..................................................................................................... 20

5 U.S.C. § 7521 ............................................................................................................ 17, 20

28 U.S.C. § 1292 ................................................................................................................. 5

Pipeline Safety Improvement Act of 2002, 49 U.S.C. § 60129 ........................................ *passim*

**Other Authorities**

29 C.F.R. § 18.104 ........................................................................................................... 26

29 C.F.R. § 24.109 ........................................................................................................... 11

29 C.F.R. § 24.110 ........................................................................................................... 11

29 C.F.R. § 24.112 ........................................................................................................... 11

29 C.F.R. § 1981.107 ..................................................................................................... 3, 23

29 C.F.R. § 1981.108 ................................................................................................... 10, 24

29 C.F.R. § 1981.111 ....................................................................................................... 24

29 C.F.R. § 1981.114 ....................................................................................................... 24

Rule 65(c) ................................................................................................................... 27, 28

U.S. Const. Art. II, § 3 ..................................................................................................... 17

U.S. Const. art. III § 1 ....................................................................................................... 2

## PLAINTIFF ENERGY TRANSFER'S MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Energy Transfer ("Energy Transfer") respectfully moves this Court for a preliminary injunction enjoining ongoing unconstitutional administrative proceedings against it to be entered against Defendants Lori Chavez-DeRemer, in her official capacity as Secretary of the U.S. Department of Labor ("DOL"); DOL; Willow Fort, in her official capacity as an Administrative Law Judge ("ALJ") of the Office of Administrative Law Judges ("OALJ") of the U.S. Department of Labor, and the OALJ.

## NATURE OF THE CASE

Energy Transfer brings this action for declaratory relief to enjoin Defendants from conducting an unconstitutional administrative hearing currently pending in the DOL's OALJ, *Wyderka v. Energy Transfer*, Dkt. No. 2023-PSI-0001 (the "ALJ Hearing"), while this Court considers its constitutionality. Having to defend against claims in a constitutionally illegitimate administrative proceeding is a "here-and-now injury" that is "impossible to remedy once the proceeding is over." *Axon Enter. Inc. v. F.T.C.*, 598 U.S. 175, 191-92 (2023). Energy Transfer, thus, is entitled to preliminary injunctive relief to protect its constitutional rights and avoid further irreparable harm while this Court adjudicates its claims.

## INTRODUCTION

The ALJ Hearing concerns a dispute between Energy Transfer and one of its former employees, Andrew Wyderka, arising from his termination of employment. Following his termination, Wyderka filed a complaint with the DOL's Occupational Safety and Health Administration ("OSHA"), alleging that Energy Transfer retaliated against him in violation of the Pipeline Safety Improvement Act of 2002, 49 U.S.C. § 60129 ("PSIA"). While Energy Transfer vigorously denies Wyderka's claim of retaliation and submits that he was terminated for lawful,

1

non-retaliatory reasons, Energy Transfer is not asking this Court to litigate the merits of Wyderka's allegations. Instead, Energy Transfer is asking this Court to enjoin the ALJ Hearing because it is unconstitutional for the following five reasons:

*First*, in a recent landmark decision, the U.S. Supreme Court held that administrative proceedings such as the ALJ Hearing are unconstitutional because they violate the Seventh Amendment's requirement that legal claims and remedies be tried by a jury in an Article III court if requested by a party. *SEC v. Jarkesy* 144 S. Ct. 2117 (2024) ("*Jarkesy II*"). Here, a merits hearing is scheduled to commence on September 9, 2025, to be tried without a jury and without the discovery and evidentiary protections of an Article III court. Allowing Wyderka's claims to be tried by an ALJ without a jury would thus violate Energy Transfer's Seventh Amendment rights.

*Second,* the ALJ is insulated from the President's supervision by two levels of for-cause removal protection. This double layer of for-cause removal violates Article II of the Constitution, which grants the power to execute federal laws to the President "alone." *Seila Law LLC v. CFPB,* 140 S. Ct. 2183, 2197 (2020).

*Third,* the ALJ Hearing violates Article III of the Constitution and thus violates the separation of powers. Article III provides that the judicial power of the United States is vested "in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III § 1. Also pursuant to Article III, this judicial power "extend[s] to all Cases, in Law and Equity, arising under . . . the Laws of the United States. U.S. Const. art. III § 0, cl. 1. Congress may not grant judicial power "on entities outside Article III." *Stern v. Marshall,* 564 U.S. 462, 484 (2011). Because claims seeking money damages (such as Wyderka's claims) "implicate the core private right to property[,]" they must be brought in an Article III judicial forum and cannot be heard by an Article I administrative tribunal. *See Axon,* 598 U.S. at 204

(Thomas, J., concurring).

*Fourth,* the ALJ Hearing exceeds legislative authority under Article I of the Constitution by violating separation of powers and the nondelegation doctrine. The PSIA accords private parties such as Wyderka unfettered discretion whether to proceed in an Article I tribunal or whether to kickout his claims to an Article III court by bringing them in a U.S. district court. Thus, Wyderka has absolute control over which tribunal will hear his claims. No comparable right extends to Energy Transfer.

*Fifth,* the ALJ Hearing violates due process. The OALJ's ALJs "have broad discretion to limit discovery in order to expedite the hearing." 29 C.F.R. § 1981.107(b). Neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied by the ALJ at the merits hearing. 29 C.F.R. § 1981.107(d). The ALJ has not been confirmed by the U.S. Senate as meeting the high standards expected from an Article III judge to exercise judicial power and preside over a trial. Furthermore, she has ruled that she lacks authority and will not consider fundamental constitutional questions concerning subject-matter jurisdiction, in stark contrast to an Article III court's inherent judicial authority to determine whether actions by Article I officers violate the Constitution. *See Marbury v. Madison,* 5 U.S. 137, 176-78 (1803). As *Marbury* aptly put it, "[t]his is of the very essence of judicial duty." *Id.* at 178.

Based on these five reasons, Energy Transfer can show a substantial likelihood of success on the merits of its claim that ALJ Hearing is unconstitutional. Energy Transfer can also show a substantial threat of irreparable injury if the injunction is not issued by being compelled to participate in an unconstitutional hearing before an ALJ who will not even consider its unconstitutionality. Moreover, because Energy Transfer is being stripped of its constitutional rights while Defendants stand to lose nothing, Energy Transfer can show that that the threatened injury

if the injunction is denied outweighs any harm that will result if the injunction is granted, and that the grant of an injunction will not disserve the public interest.

Most recently, the Fifth Circuit in *Space Exploration Techs. Corp.  v. NLRB*, Nos. 24-50627, 24-40533, 24-10855 slip opinion at No. 269 (5th Cir. Aug. 19, 2025), confirmed both that federal courts have jurisdiction to enjoin unconstitutional ALJ proceedings and that the dual for-cause removal protections shielding ALJs violate Article II. This binding precedent reinforces that all four injunction factors are met here.

Because all these factors weigh strongly in favor of relief for Energy Transfer, this Court should grant this Motion.

## <u>STATEMENT OF FACTS</u>

On May 18, 2022, Wyderka filed a whistleblower complaint with OSHA against Energy Transfer alleging it had retaliated against him in violation of the PSIA. Compl. ¶ 24. An OSHA regional investigator reviewed Wyderka's complaint and, on January 3, 2023, dismissed it because OSHA did not have reasonable cause to believe that Energy Transfer violated the PSIA when it terminated his employment.  *Id.* ¶ 25.

On February 1, 2023, Wyderka appealed to the OALJ. *Id.* ¶ 26. After engaging in discovery, Energy Transfer filed a motion for summary dismissal on December 7, 2023, which was denied by ALJ Fort on January 25, 2024. *Id.* ¶ 27.

The U.S. Supreme Court issued *Jarkesy II* on June 27, 2024. *Id.* ¶ 28. On October 7, 2024, Energy Transfer submitted a letter to the ALJ apprising her of the decision and its intent to move to dismiss for lack of subject-matter jurisdiction and to move for leave to amend to assert affirmative defenses based upon *Jarkesy II* and its underlying decision in the Fifth Circuit (*Jarkesy v. SEC*, 34 F.4th 446, 459-63 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd and remanded*, 144 S. Ct. 2117 (2024)). *Id.* The letter asked for a conference call to discuss a briefing schedule and a temporary

stay of discovery pending a ruling. *Id.*

On November 21, 2024, Energy Transfer moved to dismiss for lack of subject-matter jurisdiction based upon *Jarkesy I* and *II*. *Id.* ¶ 29. On January 15, 2025, ALJ Fort denied Energy Transfer's motion to dismiss, ruling on the one hand that "I do not have the power to decide [constitutional issues] in the ultimate case" and, on the other hand, that "[t]he law, as it currently exists, permits this Tribunal to hear this matter." *Id.* ¶ 30. In other words, ALJ Fort's decision held that she lacked authority to decide the ultimate issue of whether OALJ is a proper tribunal to hear constitutional challenges post-*Jarkesy II*. *Id.*

On January 23, 2025, Energy Transfer filed an expedited motion for an order permitting appeal of interlocutory order requesting ALJ Fort certify that her order denying Energy Transfer's motion to dismiss involved a "controlling question of law as to which there is substantial ground for difference of opinion." See 28 U.S.C. § 1292(b). *Id.* ¶ 31.

On January 31, 2025, Energy Transfer filed an interlocutory appeal of ALJ Fort's order denying its motion to dismiss to the Administrative Review Board ("ARB"). *Id.* ¶ 32. Energy Transfer's appeal identified five exceptions taken to ALJ Fort's order. *Id.* First, ALJ Fort's order is contradictory on the ultimate issue in Energy Transfer's primary argument that the administrative tribunal is improper because it lacks authority to hear constitutional challenges to the proceedings. *Id.* Second, ALJ Fort's order incorrectly holds that Energy Transfer's Seventh Amendment claim fails by narrowing the Supreme Court's decision in *SEC v. Jarkesy*, 603 U.S. 109 (2024). *Id.* Third, ALJ Fort's order erroneously holds that the public-rights exception applies to this proceeding, because the PSIA's whistleblower protections are integrated into a regulatory scheme aimed at protecting life and property from pipeline transportation and pipeline facilities. *Id.* Fourth, ALJ Fort's order improperly rejects Energy Transfer's removal argument with one

5

sentence, citing a case from 1926 that fails to address Energy Transfer's argument or account for the drastic change in law over recent years. *Id.* Lastly, ALJ Fort's order fails to address Energy Transfer's non-delegation and Article III arguments. *Id.*

On February 11, 2025, ALJ Fort granted Energy Transfer's motion and certified the issue of whether Energy Transfer is entitled to a jury trial under the Seventh Amendment to the ARB. *See* Ishu Decl. Ex. 10, Order  *Id.* ¶ 33. On February 24, 2025, the ARB denied Energy Transfer's interlocutory appeal, holding that "the Board would not appear to have the authority [sic] provide a remedy for these challenges." *See* Ishu Decl. Ex. 11, Order. *Id.* ¶ 34. The ARB further held it cannot consider facial challenges to the legality of a regulatory provision or the constitutionality of a statutory provision. Lastly, the ARB held that the Secretary's delegation of authority states "[t]he Board shall not have jurisdiction to pass on the validity of any portion of the Code of Federal Regulations that has been duly promulgated by the Department of Labor[.]" *Id.* A remote hearing on the merits of Wyderka's claims is scheduled to be heard by ALJ Fort on September 9, 2025. *Id.* ¶ 35.

## **LEGAL ARGUMENT**

Energy Transfer's Complaint seeks a declaration that the ALJ Hearing violates (1) the Seventh Amendment right to jury trial (Count I); (2) the Take Care Clause in Article II of the Constitution by impeding the President's removal power over DOL ALJs (Count II); (3) Article III of the Constitution, where judicial power is solely vested, by using an Article I tribunal to adjudicate private rights (Count III); (4) the nondelegation doctrine and the separation of powers by conferring a private party, Wyderka, with plenary and unilateral authority to decide whether the claims will be tried in an Article I or an Article III tribunal without any "intelligible principle" to limit his discretion (Count IV); and (5) the Due Process Clause of the Fifth Amendment, which

prohibits the adjudication of rights in a fundamentally unfair proceeding, such as the lack of discovery of key allegations in the case (Count V). Energy Transfer also seeks to enjoin Defendants from taking further action in the unconstitutional ALJ Hearing.

**A. This Court Has Subject-Matter Jurisdiction over Energy Transfer's Claims.**

Under the Supreme Court's recent decision in *Axon Enter. Inc. v. F.T.C.*, this Court has subject-matter jurisdiction over Energy Transfer's challenges to the unconstitutional structure of the ALJ Hearing. 598 U.S. at 195. As *Axon* explains, "[t]he ordinary statutory review scheme does not preclude a district court from entertaining" constitutional challenges to the structure of administrative agencies. *Id.* at 180. As was the case with the two sets of administrative proceedings at issue in *Axon* (FTC and SEC), subjecting Energy Transfer to "unconstitutional agency authority" imposes a "here-and-now injury" that "is impossible to remedy once the [administrative] proceeding is over." *Id.* at 191 (describing "the 'here-and-now' injury of subjection to an unconstitutionally structured decision- making process"). Thus, unless the ALJ Hearing is enjoined, Energy Transfer "will lose [its] rights not to undergo the complained-of agency proceedings." *Id.* at 192.

The Fifth Circuit has recently confirmed that federal district courts have jurisdiction to enjoin unconstitutional agency proceedings before they conclude. *SpaceX,* slip op. at 13–14. The court held that structural separation-of-powers challenges are wholly collateral to agency proceedings and therefore properly heard in district court. *Id.* That binding precedent eliminates any doubt that this Court has jurisdiction to consider Energy Transfer's constitutional challenges and directly reinforces its Article II claim in particular.

**B. Energy Transfer Is Entitled to a Preliminary Injunction.**

To obtain preliminary injunctive relief, Energy Transfer must show "(1) a substantial

likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 543 (5th Cir. 2023) (citing *Speaks v. Kruse,* 445 F.3d 396, 399-400 (5th Cir. 2006) (citation omitted)).

Energy Transfer is entitled to preliminary injunctive relief from this Court. Energy Transfer is likely to succeed on the merits of its constitutional claims that (1) the ALJ Hearing violates the Seventh Amendment right to a trial by jury; (2) the ALJ Hearing is doubly insulated from the President's removal authority, violating the Take Care Clause of Article II of the U.S. Constitution; (3) Wyderka' underlying claims involve private rights and thus must be adjudicated in an Article III court; (4) vesting a private litigant with plenary power to decide whether the proceedings should be heard in an Article I administrative proceeding or in an Article III court with the right to trial by jury and full due process rights violates the nondelegation doctrine and separation of powers under Article I of the Constitution; and (5) the OALJ's procedural deficiencies violate the Fifth Amendment's Due Process Clause.

Additionally, because there is likely a constitutional violation, the irreparable injury factor is satisfied. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) ("the loss of constitutional freedoms 'for even minimal periods of time unquestionably constitutes irreparable injury'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Fifth Circuit has also reaffirmed that ALJs insulated by 'at least two layers of for-cause protection' are unconstitutionally beyond the President's removal authority. *SpaceX*, slip op. at 19–22, 27, 31. That decision is binding here and confirms that the DOL's ALJs—like those at the NLRB—violate Article II by depriving the President of the control necessary to ensure faithful execution of the laws. Accordingly, *SpaceX*

8

establishes that the very structural defect present in this case—the double for-cause insulation of DOL ALJs—constitutes an ongoing constitutional violation, which independently satisfies the irreparable injury requirement.

The third and fourth factors of the preliminary injunction analysis—harm to others and the public interest— "merge when the Government is the opposing party." *Texas v. Becerra,* 575 F. Supp. 3d 701, 727 (N.D. Tex. 2021) (quoting *Texas v. United States,* 809 F.3d 134, 187 (5th Cir. 2015)); *Nken v. Holder,* 556 U.S. 418, 435 (2009). The public interest factor weighs in favor of Energy Transfer as there is "no public interest in the perpetuation of unlawful agency action." *Texas v. Biden,* 10 F. 4th 538, 560 (5th Cir. 2021). And it is not in the public's interest for the Executive Branch to "slip from the Executive's control, and thus from that of the people." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010).

Each of these factors weighs in favor of a preliminary injunction here. Accordingly, the ALJ Hearing should be preliminarily enjoined to avoid the immediate and irreparable harm to Energy Transfer from being subjected to unconstitutional adjudication before this Court has had a chance to decide its constitutional challenges.

### 1. Energy Transfer Has a Substantial Likelihood of Success on the Merits.

Both the law and the facts overwhelmingly support Energy Transfer's five constitutional challenges, showing much more than the required substantial likelihood of success for at least one claim.[1]

---

[1] Although Energy Transfer will likely succeed on each of its constitutional claims, injunctive relief should be granted if Energy Transfer establishes a likelihood on any of the claims. *See, e.g., Book People, Inc. v. Wong*, 91 F.4th 318, 340 (5th Cir. 2024) ("granting preliminary injunction where plaintiffs have demonstrated a likelihood of success of the merits of at least one claim").

i. **Energy Transfer Will Likely Succeed on its Claim that the ALJ Hearing Violates the Seventh Amendment Right to a Trial by Jury (Count I).**

On June 27, 2024, the Supreme Court issued *Jarkesy II*.  It definitively holds that Article I administrative law judges cannot adjudicate *legal* claims and remedies, *i.e.*, claims arising at law like Wyderka' PSIA claims in the ALJ Hearing, because the Seventh Amendment requires that they be tried by a jury if so requested.  *Jarkesy II*, 144 S. Ct. at 2127-28 (holding that an SEC ALJ cannot adjudicate securities-fraud enforcement claims brought by the SEC because those claims sound in law and, under the Seventh Amendment, are triable by jury). Stated another way, *Jarkesy II* holds that a party defending legal claims brought under a federal statute before an administrative agency vested with both prosecutorial and judicial authority is entitled under the Seventh Amendment "to be tried by a jury of his peers before a neutral adjudicator."  144 S. Ct. at 2139. *Jarkesy II*'s Seventh Amendment ruling is dispositive here.  All of Wyderka's claims of statutory violations and most of his requested remedies under the PSIA are legal in nature.  Yet the OALJ administrative proceeding between Wyderka and Energy Transfer cannot be tried by a jury. Instead, in direct derogation of the Seventh Amendment, the OALJ has determined that an ALJ employed by the DOL will try it, subject to administrative review by ARB, and then by the DOL Secretary.  49 U.S.C. § 60129(a)(2), (3), (4). Only then can the proceeding be heard by an Article III appellate court with limited power of judicial review.[2]  *Id.*

Though Wyderka is currently bringing his PSIA claims, the DOL retains ultimate authority over the matter; it may elect to join as a party "at any time at any stage" of the proceedings and

---

[2] Notably, the Supreme Court considered but did not disturb rulings by the Fifth Circuit that (i) SEC ALJs violate Article II's Take Care Clause because the ALJs are doubly insulated from the President's removal power; and (ii) that the SEC's broad discretion under the securities statutes to proceed in either an Article I or Article III tribunal violates the nondelegation doctrine and separation of powers because Congress did not provide any intelligible principle to guide that election.  *See Jarkesy v. SEC*, 34 F.4th 446, 459-63, 463-65 (5th Cir. 2022) ("*Jarkesy I*"), *aff'd and remanded*, 144 S. Ct. 2117 (2024).

even may take over its prosecution by petitioning for review of an ALJ decision. 29 C.F.R. §
1981.108(a)(1). By contrast, at no stage in this internal process required by the PSIA and DOL
regulations may Energy Transfer ever obtain a jury trial to defend itself.

"Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by
relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an
administrative agency[.]" *Granfinanciera, S.A., v. Nordberg,* 492 U.S. 33, 61 (1989). *Jarkesy II*
holds that claims like Wyderka's claims against Energy Transfer, which seek backpay and other
compensatory damages that sound in law, not equity, amount to a suit in common law and entitle
Energy Transfer to the protections of the Seventh Amendment. *See Jarkesy II,* 144 S. Ct. at 2128-
31. For these reasons, *Jarkesy II* requires a finding that Energy Transfer is entitled to a trial by jury
in an Article III court.

Notably, Energy Transfer would be entitled to a jury trial of Wyderka's PSIA claims even
if *Jarkesy II* did not exist, as the PSIA itself provides that Wyderka's whistleblower claims are
triable by jury. The PSIA provides Wyderka with a vehicle to pursue a jury trial if he so elected,
through a kickout clause allowing him to bring his claims in a U.S. District Court if the Secretary
of Labor had not issued a "final decision"[3] within 210 days of the filing of his complaint with
OSHA. 49 U.S.C. § 60129(b)(3)(D)(i). If—and only if—Wyderka files such a federal action, either
party may elect a jury trial of the action. *Id.*[4] Thus, Wyderka's whistleblower rights and remedies

---

[3] After the hearing on the merits, the ALJ will issue an order which lays out her findings of fact and law. By
operation of law, this order becomes a "final decision" of the Secretary of Labor after 10 days, unless a party
files an appeal with the ARB. 29 C.F.R. § 24.109. If no timely petition for review is filed, or the ARB denies review,
the decision of the ALJ will become the final order of the Secretary. 29 C.F.R. § 24.110(b). If the ARB accepts the
appeal, the ARB's decision will become a "final decision," but that decision is subject to discretionary review of
the Secretary of Labor. 29 C.F.R. § 24.112(a).

[4] This statutory provision establishes a Seventh Amendment right to jury trial that cannot be abrogated. *See Jarkesy
II*, 144 S. Ct. at 2128 (explaining that the reference to "common law" in the Seventh Amendment was "in
contradistinction to equity, and admiralty, and maritime jurisprudence," so "[t]he Amendment therefore embrace[s]
all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume"
(internal quotation marks omitted)); *Curtis v. Loether*, 415 U.S. 189, 194 (1974) ("The Seventh Amendment does

are triable by a jury under the PSIA—and thus trigger Seventh Amendment protection—but, under this scheme, Energy Transfer's right to a jury trial hinges entirely upon the unfettered discretion of its adversary, Wyderka, regarding whether to kick out his claims to federal court. This major wrinkle placing a party's core constitutional right under the plenary control of its adversary makes the denial of a jury trial here a greater constitutional deprivation than in *Jarkesy*.

The PSIA has a second crucial feature that was not at issue in *Jarkesy*: remedies that include compensatory damages. *See* 49 U.S.C. § 60129(b)(3)(B). These remedies demonstrate that Congress intended that the rights and obligations under the statute are legal in nature. Thus, Congress itself has determined that Wyderka's whistleblower rights and remedies are triable by a jury and thus are legal in nature, which, per *Jarkesy II*, triggers Seventh Amendment protection. That fact alone should settle the question. Congress has spoken.

Even without these additional unique features under the PSIA, *Jarkesy II*'s analysis of the federal securities claims brought by the SEC similarly requires a jury trial in this case. The Supreme Court employed the settled test for applying the Seventh Amendment, which principally focuses on the distinction between law and equity: (1) whether the claims have a late-18th century English common-law analogue; (2) whether the remedies sound primarily in law or equity; and (3) if that two-part test is satisfied, whether the claim falls within a limited "public right" exception for a class of cases that are so inherently public in nature that Congress may assign them for special treatment by an Article I forum.[5] *See Jarkesy II*, 144 S. Ct. at 2128-34; *Granfinanciera v. Nordberg*, 492 U.S. 33, 53 (1989). Of the first two elements, the second one (remedies) is "more

---

apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.").

[5] Examples include tariffs and revenue collection, relations with American Indian tribes, immigration, and veterans' benefits. *See Jarkesy II*, 144 S. Ct. at 2132–34.

important." *Jarkesy II*, 144 S. Ct. at 2129. And the public-rights exception is applied narrowly, with a strong "presumption" favoring adjudication in an Article III court. *Id*. at 2134.

Wyderka's claims satisfy the two-part test, and no public-right exception applies. Wyderka's claims are analogous to common-law breach-of-contract and tort claims for wrongful discharge, and he seeks backpay, contributions to his 401(k), medical expenses, and other compensatory damages that plainly sound in law, not equity. Additionally, the limited "public-rights" exception does not apply because Wyderka' claims are quintessentially private: they seek to enforce contractual rights and recover compensatory damages. The claims thus amount to a suit at common law and entitle Energy Transfer to a jury trial, rendering the ALJ Hearing facially unconstitutional. *See Jarkesy II,* 144 S. Ct. at 2128-31, 2139.

### a. Wyderka's Retaliation Claim is Analogous to Common- Law Contract and Tort Claims.

The PSIA provides for a cause of action if someone "has been discharged or otherwise discriminated against" due to activity protected under the PSIA. 49 U.S.C. § 60129(a), (b). Wyderka's retaliation claim under the PSIA has several common law analogues.[6]

Wyderka alleges that he was discharged or otherwise discriminated against due to activity protected under the PSIA. This claim resembles late 18th-century English common-law breach-of-contract and tort claims for compensatory damages, as reflected by modern-day claims for wrongful discharge and breach of an employment contract. *See, e.g., Halliburton, Inc. v. Admin.*

---

[6] In determining whether Wyderka's PSIA claim has an 18th century common-law analogue, it does not matter that the subject-matter of the claim (retaliation for providing information relating to any violation or alleged violation of any order, regulation, or standard under PSIA or any other Federal law relating to pipeline safety) is modern and without an 18th-century ancestor or analogue. *See Jarkesy II*, 144 S. Ct. at 2128-29 (discussing *Tull v. United States*, 481 U.S. 412, 418-19 (1987), which held that the "statutory nature of the claim was not legally relevant," so that Clean Water Act claims for penalties met this first test because generic "penalties" were litigated at common law in the 18th century); *id.* at 2139 ("this Court clarified in *Tull* that the Seventh Amendment does apply to novel statutory regimes, so long as the claims are akin to common law claims").

*Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (discussing, in the non-Seventh Amendment context, "the common-law background to [] antiretaliation claim," particularly "wrongful discharge of employment"); *see also Lebow v. Am. Trans Air*, 86 F.3d 661, 668-9 (7th Cir. 1996) ("Lebow's unlawful discharge claim [of retaliation for union organizing] is comparable to a common-law action for breach of an employment contract."); *Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) (finding unlawful discharge claim under Rehabilitation Act analogous to common-law breach-of-contract action); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 801 (N.D. Cal. 2008) (in considering a whistleblower claim, finding that "[a] close analogy might be made to the claim of wrongful discharge which existed at common law").

Wyderka's retaliation claim also closely resembles a common-law tort claim. A federal statutory claim for monetary damages caused by the violation of a legal duty imposed by the statute is generally treated as a tort, irrespective of its novel statutory nature. *See, e.g., Curtis v. Loether*, 415 U.S. 189, 195 (1974) (affirming jury-trial right for fair-housing discrimination claim under Title VII, reasoning that "[a] damages action under the statute sounds basically in tort," and recognizing that the claim "is analogous to a number of tort actions recognized at common law"); *see also City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709–11 (1999) (applying this principle to a § 1983 regulatory-taking claim); *Tamosaitis v. URS Inc.*, 781 F.3d 468, 486 (9th Cir. 2015) (requiring jury trial for Energy Reorganization Act whistleblower-retaliation claim because it is comparable to wrongful discharge, "a tort so widely accepted in American jurisdictions today" that courts "are confident that it has become part of our evolving common law") (internal quotation marks omitted); *Schmidt*, 621 F. Supp. 2d at 801 ("[A] wrongful discharge suit exhibits the classic elements of a tort cause of action." (internal quotation marks omitted)).

In either case, the fact that Wyderka's retaliation claim under the PSIA arises through

14

a statutory scheme requiring an initial filing in an administrative agency is immaterial. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency[.]" *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989) (requiring a jury trial for fraudulent conveyance claims brought in U.S. Bankruptcy Court). What matters is that Wyderka's PSIA claim has common-law analogues sounding in contract and tort, meeting the first *Jarkesy* element.[7]

### b. Wyderka Seeks Compensatory Damages and Other Legal Relief.

The second prong of *Jarkesy*'s Seventh Amendment test, whether the requested relief is legal or equitable, is much "more important." *Jarkesy II*, 144 S. Ct. at 2129. And here, almost all Wyderka' requested remedies are legal in nature, a fact that, as emphasized in *Jarkesy II*, is "all but dispositive." *Id.*

Wyderka seeks commonplace legal remedies, including compensatory damages. The PSIA allows Wyderka to recover compensatory damages, costs, and attorney's fees. 49 U.S.C. § 60129(3)(B),(5),(6),(B). These claims are—at least in significant part—legal in nature, and all of the remedies are legal in nature, entitling Energy Transfer to a jury trial under the Seventh Amendment.

General compensatory damages resulting from the purported loss of Wyderka's employment, including loss of compensation, losses associated with his company sponsored

---

[7] The Seventh Amendment's reference to actions at "common law" includes statutes. *See Jarkesy II*, 144 S. Ct. at 2128 (explaining that the Amendment's reference to "common law" was "in contradistinction to equity, and admiralty, and maritime jurisprudence," so "[t]he Amendment therefore 'embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume'") (*quoting Curtis*, 415 U.S. at 194 ("The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.")).

401(k) account, the out of pocket costs of medical expenses as a result of no longer having company sponsored medical insurance, medical expenses associated with pain and suffering, and damage to his reputation, are quintessential legal compensatory damages, no different from those available in tort, that are subject to a jury trial under settled Seventh Amendment jurisprudence. *See, e.g.*, *Jarkesy II*, 144 S. Ct. at 2129 ("While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 (1993)); 2 Dan B. Dobbs, *Law of Remedies* § 6.10(5) at 226 (2d ed. 1993) (footnotes omitted)) ("Back pay claims do not differ remedially from the personal injury claim for lost wages, or the contract claim for past wages due, for example ... [s]o, while reinstatement is clearly equitable as a form of injunctive relief, back pay seems to be just as clearly legal.); *see Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 573 (1990) ("[T]he remedy of backpay sought in this duty of fair representation action is legal in nature.").

In sum, the remedies sought by Wyderka are legal in nature, meeting the second prong of the Seventh Amendment's test for the right to trial by jury. Therefore, Wyderka's claim meets both elements of the *Jarkesy* test.

### c.  The Public-Rights Exception Does Not Apply.

*Jarkesy II* effectively shuts the door on the third factor—the narrow exception for legal claims that advance a "public right." *See* 144 S. Ct. at 2132 ("If a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory").  If the rights at issue are private (*i.e.*, if they involve claims commonly litigated by private parties), the public right exception does not apply.

That is precisely the case here: Wyderka is a private party; his claims involve a dispute over his employment with a private party; and he seeks remedies that are entirely personal to him

without any direct financial benefit to the public. His claims are quintessentially private.

*Jarkesy II* makes clear that the public rights exception does not apply to Wyderka. There, not even the SEC's dual role as prosecutor *and* decisionmaker in adjudicating securities fraud triggered the public-rights exception. *See id.* at 2135. If SEC-brought securities-fraud claims are not public, then surely Wyderka' claims seeking compensation are not public, either.

### ii. Energy Transfer Will Likely Succeed on its Claim that the ALJ is Double Insulated from the President's Removal Authority, Violating the Take Care Clause of Article II of the U.S. Constitution (Count II).

Energy Transfer also is likely to succeed on its claim that the OALJ lacks jurisdiction to hear Wyderka's claims because its ALJs violate the Take Care Clause. Article II provides that the President must "take Care that the Laws be faithfully executed," U.S. Const. Art. II, § 3, vesting the President with sole "authority to remove those who assist him." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 513-14 (2010). The President may not be "restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer determines the policy and enforces the laws of the United States[.]" *Id.* at 484. "[S]uch multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Id.*

Here, the OALJ's ALJs are unconstitutionally shielded from presidential oversight because they are doubly insulated from the presidential removal power: they can be removed *only* for cause and *only* by the Merit System Protections Board ("MSPB"), whose members can be removed *only* for cause by the President.[8] Specifically, the Secretary of Labor may remove ALJ Fort "only for good cause established and determined by the MSPB on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). MSPB members similarly may be removed by the President

---

[8] The MSPB is an executive agency that resolves intra-branch disputes under the Civil Services Reform Act. 5 U.S.C. § 1204(a).

only for cause, *i.e.*, they "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). This double layer of for-cause removal violates the Take Care Clause, which vests the removal power with the President "alone." *Seila Law LLC v. CFPB*, 591 U.S. 197, 213 (2020).

Under Article II, the President must have adequate "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.,* 561 U.S. 477, 514-515 (2010). Although one layer of insulation from Presidential plenary power is acceptable, two layers are not. *Id.* at 515; *see also Seila Law LLC v. CFPB,* 591 U.S. at 215. The Fifth Circuit has recently reaffirmed this principle, holding that ALJs insulated by two levels of for-cause removal protection are unconstitutional. *Space Exploration Techs. Corp. v. NLRB*, slip op. at 19–21. Thus, the double layer of removal protection currently afforded to ALJs in the OALJ does not grant the President removal authority required by Article II and precludes further litigation under that scheme. *See Jarksey I,* 34 F.4th at 463-65 (holding that double insulation of SEC ALJs is unconstitutional).

The Supreme Court declined to address this issue in *Jarkesy II* after granting *certiorari* and hearing full argument on it. Thus, the Fifth Circuit's prior ruling that SEC ALJs are unconstitutional because the statutory removal provisions governing them are unconstitutional remains good law and binding precedent on this Court. *See Jarkesy I*, 34 F.4th at 463–65. In that case, the Fifth Circuit reasoned that the "ALJs perform substantial executive functions[,]" so the President "must have sufficient control over the performance of their functions, and, by implication, he must be able to choose who holds the positions." *Id.* at 463. "Two layers of for-cause protection" under civil service laws "impede that control; Supreme Court precedent [thus]

forbids such impediment." *Id*.[9]

The Fifth Circuit's reasoning applies to ALJs in general. First, the Circuit Court pointed out that the Supreme Court has already decided that "SEC ALJs are 'inferior officers' under the Appointments Clause because they have substantial authority within SEC enforcement actions." *Jarkesy I*, 34 F.4th at 464 (quoting *Lucia v. SEC*, 585 U.S. 237, 245–46 (2018)). DOL ALJs are indistinguishable from SEC ALJs in this regard. If the latter are officers, so are the former. *Free Enter. Fund*, 561 U.S. 477, holds that the Appointment Clause is violated if the President lacks the ability to discipline or replace such officers. One layer of insulation from Presidential plenary power is acceptable, but two layers are not because "the President is no longer the judge of the Board's conduct." *Id.* at 496. The Fifth Circuit recently confirmed this principle, holding that ALJs insulated by two levels of for-cause removal protection are unconstitutional. *SpaceX*, slip op. at 19–21.[10] Thus, it is no surprise that the Supreme Court recently granted a stay of orders from the District Court for the District of Columbia, which enjoined the U.S. President from removing a member of the NLRB and a member of the MSPB. *Trump v. Wilcox*, 145 S.Ct. 1415(2025) ("…the

---

[9] The Fifth Circuit's logic is compelling. It relied upon *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), which held that members of the Public Company Accounting Oversight Board ("PCAOB"), who answered to the SEC Commissioners, but could be removed by the SEC only for willful violations or unreasonable failure to enforce compliance after notice and hearing, were too far removed from the President's constitutional oversight and removal authority over all executive officers. *Id.* at 498. Critically, they enjoyed double insulation not only did the Commissioners have limited removal authority, but the President has limited removal authority over the Commissioners, limited to "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 486-87. SEC ALJs stand in similar shoes as PCAOB members because "they can only be removed by the SEC Commissioners if good cause is found by the Merits Systems Protection Board" ("MSPB"), who, like SEC Commissioners, "can only be removed by the President for cause." *Jarkesy I*, 34 F.4th at 464. Under *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), if the ALJs exercise "significant authority pursuant to the laws of the United States" on a "continuing and permanent" basis, they are officers, not employees who comprise "the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia v. SEC*, 585 U.S. 237, 245 (2018) (quoting *Buckley*, 424 U.S. at 126 n.162).

[10] Before the Fifth Circuit's decision in SpaceX, multiple district courts had likewise held that ALJ removal protections are unconstitutional. *See e.g., Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *4 (S.D. Tex. July 29, 2024) (finding that the NLRB ALJs are unconstitutionally insulated from removal); *SpaceX v. NLRB*, No. W-24-CV-00203-ADA, 2024 WL 3512082, at *2 (W.D. Tex. July 23, 2024) (same); *VHS Acquisition Subsidiary No. 7 v. National Labor Relations Board* 759 F. Supp 3d 88 (D.D.C. Dec. 10, 2024) (holding that NLRB ALJ's removal protections are unconstitutional under Supreme Court precedent).

NLRB and MSPB exercise considerable executive power…The stay reflects…our judgement that the Government faces greater risk of harm from an order allowing a removed officer to continue exercising the executive power than a wrongfully removed officer faces from being unable to perform her statutory duty.").

In *Lucia*, the Supreme Court relied upon a prior decision that had "applied the unadorned 'significant authority' test to adjudicative officials who are near-carbon copies of the Commission's ALJs." 585 U.S. at 246 (citing *Freytag v. Commissioner,* 501 U.S. 868 (1991)). *Freytag* reviewed the status of the "special trial judges" ("STJs") of the United States Tax Court, concluding that the STJs are officers, not mere employees. Among other things, the Court pointed to their presiding over adversarial hearings: they "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders[,]" exercising "significant discretion." 501 U.S. at 881–82. STJs "prepare proposed findings and an opinion" adjudicating charges and assessing tax liabilities. *Id.* at 874. This substantial authority meant that they are officers, even when their decisions are not final. *Lucia* applied *Freytag*'s holding about Tax Court STJs to SEC ALJs, pointing out that SEC ALJs have more autonomy because the SEC can elect not to review an ALJ decision, making it final action of the SEC. *Jarkesy I* then applied *Lucia*'s holding about SEC ALJs to the Take Care Clause. *Jarkesy I*, 34 F.4th at 464.

DOL ALJs stand in the same shoes as SEC ALJs. *See* 5 U.S.C. § 3105. They exercise the same power and authority and thus equally qualify as officers of the United States subject to Presidential authority. They also are subject to 5 U.S.C. § 7521(a), which provides that ALJs may be removed by the Secretary of Labor "only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the Board." And MSPB members, in

turn, also can be removed only for cause, *i.e.*, they "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.* § 1202(d).  Thus, as in *Jarkesy I*, "if the President wanted [a DOL] ALJ to be removed, at least two layers of for-cause protection stand in the President's way."  34 F.4th at 465.  They are "sufficiently insulated from removal that the President cannot take care that the laws are faithfully executed.  The statutory removal restrictions are unconstitutional." *Id; SpaceX,* Slip Op. at 19-21..

Energy Transfer recognizes that the Supreme Court has not yet decided the issue, and that the Ninth and Tenth Circuits have held that the double insulation against removal does not render ALJs unconstitutional.  *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136 (9th Cir. 2021) (rejecting removal challenge to DOL ALJ considering compensation award under the Black Lung Benefits Act); *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 764 (10th Cir. 2024) (finding that CPSC ALJs are constitutional despite double insulation from removal).  But *Jarkesy I* is not only more persuasively reasoned authority, as reflected by its affirmance in *Jarkesy II* on other grounds, it is binding precedent in the Fifth Circuit which should be followed here to prevent unconstitutional litigation from continuing.  The D.C. Circuit, a Circuit Court which has jurisdiction to rule on the constitutionality of these proceedings, has yet to decide which approach to follow.

Thus, the *SpaceX* and *Jarkesy* decisions must be followed by this Court.  The OALJ, as presently constituted, cannot adjudicate Wyderka's claims and thus lacks subject-matter jurisdiction unless a constitutionally permissible ALJ is appointed to adjudicate the case.

### iii.    Energy Transfer Likely Will Succeed on its Claim that Wyderka's Underlying Allegations Involve Private Rights and Thus Must be Adjudicated in an Article III Court (Count III).

Energy Transfer is also likely to succeed on its claim that the ALJ Hearing violates Article

III of the Constitution, where judicial power is solely vested, by using an Article I tribunal to adjudicate private rights. The Constitution requires "the judicial power of the United States" to be vested in Article III courts, and Congress may not confer judicial power "on entities outside Article III." *Stern v. Marshall*, 564 U.S. 484, 503 (2011). Pursuant to this fundamental limitation, "cases involving private rights … may not" be removed from Article III courts. *Executive Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 32 (2014).

As discussed above, Wyderka has brought legal claims (wrongful discharge) seeking legal relief (compensatory damages) for alleged violations of essentially private rights. Because lawsuits seeking money damages "implicate the core private right to property[,]" *Axon*, 598 U.S. at 204, they must be brought in an Article III judicial forum and cannot be heard by an Article I administrative tribunal. *Id.* By adjudicating the claims in an Article I administrative agency, the ALJ Hearing usurps what the Constitution leaves to the exclusive jurisdiction of Article III courts. This is a clear violation of the separation of powers.

### iv. Energy Transfer is Likely to Succeed on its Claim that the ALJ Hearing violates the Nondelegation Doctrine and Separation of Powers under Article I of the Constitution (Count IV).

Under the nondelegation doctrine, Congress may not delegate its legislative power to a non-legislative party to determine whether a matter belongs in an Article I or Article III court without providing an "intelligible principle" to guide the exercise of that power. *See Jarkesy I*, 34 F.4th at 459, 462-63 (citing *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Here, the PSIA fails to provide any standard, guidance, or intelligible principle as to how Wyderka should exercise his discretion. and instead allows *a private litigant*, Wyderka, the unilateral, plenary, and unfettered power to decide whether his claims will be heard in an Article I court, or whether to kickout his claims to an Article III court (with the attendant due-process protections such as the Federal Rules of Evidence, and guarantee of the right to a jury trial), without affording such power to his

adversary, Energy Transfer.

Indeed, PSIA accords Wyderka this unilateral kickout power if DOL does not reach a final decision on his claims within 210 days of the filing of complaint. 49 U.S.C. § 60129(b)(3)(D)(i). Because the federal proceedings are *de novo, id.,* this kickout right gives Wyderka, but not Energy Transfer, the unfettered right to treat the administrative process as if it never happened. By delegating to Wyderka the power to choose whether to move his claims to an Article III court, Congress exceeded its Article II power.

*Jarkesy I* held that Congress violated the separation of powers by delegating to the SEC "unfettered authority to choose whether to bring enforcement actions in Article III courts or within the agency." 34 F.4th at 459. By giving this authority to a private party, but not his adversary, PSIA more egregiously violates the nondelegation doctrine than did the securities laws at issue in *Jarkesy*, where the third party was a government agency (the SEC). It is difficult to imagine a more unfair advantage than allowing the party who allegedly is seeking money damages from another party to select whether the factfinder will be a jury or an ALJ; whether the defendant party will be able to get key discovery from the complainant's principal source(s) of evidence; whether the sitting judge meets constitutional qualifications and has the powers available under Article III; and whether the administrative agency hearing the matter will have the right to engage and participate as prosecuting party if it so elects. The lack of any intelligible principle to guide this unfettered discretion violates separation of powers under the basic strictures of the nondelegation doctrine.

> **v.    Energy Transfer Is Likely to Succeed on its Claim that the OALJ's Procedural Deficiencies Violate the Fifth Amendment's Due Process Clause (Count V).**

DOL ALJ's "have broad discretion to limit discovery in order to expedite the hearing," 29 C.F.R. § 1981.107(b), so Energy Transfer has not known in advance what discovery

it may pursue in mounting its defense.  Similarly, neither the Federal Rules of Evidence nor any other "[f]ormal rules of evidence" may be applied by the ALJ at the merits hearing, 29 C.F.R. § 1981.107(d), creating substantial uncertainty as to what evidentiary rules will govern the merits hearing. Compounding this uncertainty, the DOL's regulations go so far as to provide that, for good cause or under "special circumstances not contemplated" in the regulations (which are undefined and thus unbounded), the ALJ and the DOL's internal review panel that reviews OALJ decisions, the ARB, may waive any rule or regulation governing their respective proceeding. 29 C.F.R. § 1981.114.  Thus, the ALJ is not legally bound by *any* procedural rule.

These violations of due process and fundamental fairness are compounded by the DOL's right under its own regulations to join the proceedings at any time and effectively serve as both litigant/prosecutor and adjudicator/ultimate decision-maker in a single matter. Under 29 C.F.R. § 1981.108(a)(1), the Assistant Secretary for OSHA may "participate as a party or as amicus curiae at any time at any stage of the proceeding," including the right to petition for review of an ALJ decision or an ALJ's approval or disapproval of any settlement between the parties. Depending on the stage of the proceedings, a settlement between the parties must be approved by OSHA, the ALJ, or the ARB, respectively. 29 C.F.R. § 1981.111(a), (b), and (d).  The DOL thus has unlimited power to potentially tilt the proceedings toward Wyderka and turn the ALJ Hearing into a one-sided affair.

The ALJ has ruled that she lacks authority to consider fundamental constitutional questions concerning subject-matter jurisdiction, in stark contrast to an Article III court's inherent judicial authority to determine whether actions by Article I officers violate the Constitution, which *Marbury v. Madison* described as "the very essence of judicial duty." 5 U.S. 137, 178 (1803).  Requiring years of illegitimate unconstitutional litigation because the tribunal claims to lack power to halt

them is the epitome of unfairness.

The cumulative impact of these disparities is not mitigable by eventual limited judicial review in an Article III circuit court of appeals.

### 2. Energy Transfer Will Suffer Irreparable Harm without a Preliminary Injunction.

Energy Transfer will suffer immediate and irreparable injury absent injunctive relief. *See Axon*, 598 U.S. at 191 ("[B]eing subjected to unconstitutional agency authority ... by an unaccountable ALJ... is a here-and-now injury" that is "***impossible to remedy once the proceeding is over, which is when appellate review kicks in***.") (internal quotation marks omitted, emphasis added). An appellate court "could of course vacate the [agency]'s order[,] [b]ut [a] separation-of-powers claim is not about that order; indeed, [Energy Transfer] would have the same claim[s] [if] it won before the agency." *Id.*

As in *Axon*, Energy Transfer's claims here are "about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone." *Id.* "[J]udicial review of [Energy Transfer's] structural constitutional claims would thus come too late to be meaningful." *Id.* at 191. *Axon* establishes irreparable harm if the ALJ Hearing is not enjoined.

The Fifth Circuit has recently reaffirmed that principle, explaining that subjection to an unconstitutional ALJ proceeding is itself an injury that "cannot be undone," and therefore warrants preliminary relief. *SpaceX*, slip op. at 13-14, 30-32. This result reflects the black-letter rule that *any* deprivation of constitutional rights constitutes an irreparable injury warranting injunctive relief. *See, e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (ruling that a loss of constitutionally guaranteed rights "for even minimal periods of time, unquestionably constitutes irreparable injury.").

In addition to the facial harm that Energy Transfer would suffer by undergoing an unconstitutional agency process, the Complaint shows ongoing as-applied harms, such as proceeding to an evidentiary hearing on the merits without the right to discovery on pivotal facts and the safeguards of the Federal Rules of Evidence.[11] 29 C.F.R. § 18.104(a) ("*Questions of Admissibility generally*. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge. . . . In making such determination, ***the judge is not bound by the rules of evidence*** except those with respect to privileges.") (emphasis added).  Engaging in dispositive fact-finding on Wyderka' allegations without the benefit of full discovery is clear injury.  The fact that the regulations governing the proceedings and the ALJ's orders both make clear that the Federal Rules of Evidence will not apply to the upcoming hearing also further illustrates and reinforces this injury. An adverse finding resulting from such a marred process could impact Energy Transfer's reputation.  For these reasons, Energy Transfer's harm from an unconstitutional agency process is immediate and cannot be remedied by an eventual appeal to a Circuit Court years down the road following the ALJ adjudication, internal DOL review at the ARB level, and, potentially, further review by the Secretary.

### 3.  The Harm to Others and the Public Interest Favor An Injunction.

Finally, the merged third and fourth factors of the preliminary injunction analysis support Energy Transfer. The public interest factor weighs in favor of Energy Transfer as there is "no public interest in the perpetuation of unlawful agency action." *Texas v. Biden,* 10 F. 4th 538, 560

---

[11] The ALJ has already denied Energy Transfer's Summary Judgment motion, and, after denying several of Energy Transfer's discovery motions and *motions in limine*, made clear that the ALJ is not bound by the rules of evidence except those with respect to privileges pursuant to DOL's regulations.  *Second Amended Notice of Hearing* (October 10, 2024) ("The formal rules of evidence do not apply in PSIA proceedings. 29 C.F.R. § 18.104(a)"); Order Denying Employer's Motion for Leave to take a limited Deposition of the Complainant (October 21, 2024).

(5th Cir. 2021). And it is not in the public's interest for the Executive Branch to "slip from the Executive's control, and thus from that of the people." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010).

Further, where, as here, a constitutional violation is likely, the OALJ and the DOL are in no way harmed by the issuance of a preliminary injunction which prevents them from using an adjudication process likely to be found unconstitutional because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir.2012) (cited with approval in *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 470 n. 9 (5th Cir.2014)); *BST Holdings, L.L.C.*, 17 F.4th at 618 ("[A] stay will do OSHA no harm whatsoever. Any interest OSHA may claim in enforcing an unlawful (and likely unconstitutional) [regulation] is illegitimate."). Conversely, an injunction would not cause substantial harm to others because, "[i]f anything, the system is improved by such an injunction." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013). Because Energy Transfer is likely to succeed on the merits of its constitutional challenges, a preliminary injunction is clearly in the public interest.

To be clear: this Motion asks only to enjoin the ALJ Hearing pending the Court's determination of Energy Transfer's constitutional challenges to them. If the Court ultimately were to rule in Defendants' favor, the ALJ Hearing could resume without any major disruption. As Wyderka initially filed this action three years ago, a further delay to decide the constitutionality of the ALJ Hearing to address a landmark Supreme Court decision hardly constitutes unacceptable disruption. Energy Transfer thus stands to suffer constitutional deprivation, but Defendants do not stand to lose anything. Thus, the final two preliminary injunction factors point in one direction: granting an injunction so that the Court may decide the constitutional issues that the OALJ will

not address.

**C.  <u>Security under Rule 65(c)</u>**

Rule 65(c) provides that when a party seeks a preliminary injunction, the Court may require the movant to give security "in such sum as the court deems proper." The Fifth Circuit has made clear that "the amount of security required … is a matter within the discretion of the trial court," and that a court "may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman*, S.A., 569 F.2d 300, 303 (5th Cir. 1978); *see also City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) (approving waiver of bond in public-interest litigation).

Courts have consistently recognized that waiver is appropriate in public-interest and constitutional cases against government defendants, because requiring substantial security in such circumstances would chill the enforcement of fundamental rights and the government faces no risk of uncompensated damages. *See*, e.g., *Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972) (upholding waiver of bond in public-interest litigation challenging federal highway construction); *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009) (waiving bond in First Amendment case).

Recent district courts addressing constitutional challenges to federal executive action have also exercised their discretion to require only nominal security rather than a substantial bond. *Barbara v. Donald Trump*, No. 25-CV-244-JL-AJ (D.N.H. July 10, 2025) (requiring $1 nominal bond in constitutional challenge to executive order); *Khalil v. Trump*, No. 2:25-cv-01963 (D.N.J. June 11, 2025) (injunction effective upon posting nominal bond of $1); *Fed. Educ. Ass'n v. Trump*, No. 1:25-cv-01362 (D.D.C. Aug. 14, 2025) (requiring $0 "nominal bond").

Accordingly, Plaintiff respectfully submits that the Court should waive the bond requirement altogether. In the alternative, Plaintiff requests that the Court exercise its discretion

under Rule 65(c) to set only a nominal bond (e.g., $1).

## **CONCLUSION**

For the foregoing reasons, Energy Transfer respectfully requests that the Court enter a preliminary injunction to halt the ALJ Hearing pending its resolution of this action. In sum, both the Supreme Court's decision in *Jarkesy* and the Fifth Circuit's binding decision in *SpaceX* compel the same result here. *Jarkesy* makes clear that claims seeking legal remedies must be tried in an Article III court, while *SpaceX* confirms that this Court has jurisdiction to enjoin unconstitutional agency proceedings, that dual for-cause removal protections for ALJs violate Article II, and that subjection to such a proceeding constitutes irreparable harm. Together, these precedents reinforce that all four preliminary-injunction factors are satisfied, and this Court should enjoin the unconstitutional ALJ Hearing.

Dated:  October 3rd, 2025                          Respectfully submitted,

Kara M Maciel

Kara Maciel, Esq.
District of Columbia Bar No. 477363
Mark H. Ishu, Esq.
Illinois State Bar No. 6296803
kmaciel@connmaciel.com
mishu@connmaciel.com
Conn Maciel Carey LLP
5335 Wisconsin Avenue, NW, Suite 660
Washington, D.C. 20015
*Lead Counsel for Plaintiff Energy Transfer*


Jessica Renee Brown
Texas State Bar No. 24048975
Jessica@KJPartners.law
KJ Partners LLP
4849 Greenville Ave., Ste. 100-170
Dallas, Texas 75206
Tel: (469) 586-6881
*Local Counsel for Plaintiff Energy Transfer*

29