IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | |
|---|---|
| ENERGY TRANSFER LP, doing business as SUNOCO LOGISTICS GP LLC, | |
| | |
|     Plaintiff, | |
| | |
| v. | Civil Action No. 3:25-CV-01258-L |
| | |
| UNITED STATES DEPARTMENT OF LABOR, LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor, WILLOW FORT, in her official capacity as an Administrative Law Judge of the United States Department of Labor, and THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR, | |
| | |
|     Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, MOTION TO DISMISS and DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ........................................................................................ iv

I.    SUMMARY ...................................................................................................... 2

II.   STANDARD OF REVIEW ............................................................................. 3

      A.    Subject Matter Jurisdiction ................................................................. 3

      B.    Summary Judgment ............................................................................. 3

      C.    Preliminary Injunction ........................................................................ 4

III.  BACKGROUND ............................................................................................. 4

      A.    Congress Passed the Pipeline Safety Improvement Act to regulate and enforce
            safety standards on pipeline transportation and facilities ................... 4

      B.    Wyderka submitted a whistleblower complaint alleging Plaintiff terminated him
            for raising safety concerns .................................................................. 5

      C.    After years of litigation with the ALJ, Energy Transfer filed a complaint in this
            Court to challenge the ALJ proceeding ............................................... 6

      D.    This case is ripe for a decision on the merits ...................................... 7

IV.   ARGUMENT .................................................................................................. 7

      A.    The Pipeline Safety Improvement Act precludes this Court's review of Energy
            Transfer's claims ................................................................................. 7

      B.    Even if the Court reaches the constitutional claims, Defendants are entitled to
            summary judgment because Energy Transfer fails to show a constitutional
            violation ............................................................................................ 10

            1.    Energy Transfer has no Seventh Amendment right to a jury trial here ..... 10

                  i.    The Seventh Amendment does not apply where, as here, the
                        "make-whole" relief sought by Wyderka is equitable in nature .... 10

                  ii.   The PSIA whistleblower proceeding is equitable in nature and not
                        based in common law ................................................................ 13

iii.    Defendants' adjudication of public rights under the PSIA is consistent with both the Seventh Amendment and Article III.......16

2.    If the Court reaches the Article II removal protection claim, it should sever the offending provisions ..........................................................................21

3.    Energy Transfer's nondelegation doctrine and separation of powers arguments are without merit ...................................................................24

i.    Energy Transfer lacks standing for its nondelegation and separation of powers claims..........................................................24

a.    Separation of powers principles are not implicated here ...25

b.    The PSIA does not offend the private nondelegation doctrine ...........................................................................26

4.    Energy Transfer's due process violation claims are unsupported. ............29

C.    Enjoining a routine administrative proceeding is not in the public interest. .........32

V.    CONCLUSION...............................................................................................33

CERTIFICATE OF SERVICE .......................................................................34

# <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Abbey v. Sullivan*,
978 F.2d 37 (2d Cir. 1992) ................................................................ 31

*Anderson v. Jackson*,
556 F.3d 351 (5th Cir. 2009) .............................................................. 4

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................... 3

*Ass'n of Am. R.R. v. U.S. Dep't of Transp.*,
721 F.3d 666 (D.C. Cir. 2013)........................................................... 27

*Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*,
430 U.S. 442 (1977) ......................................................................17-18

*Axalta Coating Sys. LLC v. FAA*,
144 F.4th 467 (3d Cir. 2025) ............................................................. 20

*Axon Enterprise, Inc. v. FTC*,
598 U.S. 175 (2023) ........................................................................ 8, 9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020) .......................................................................... 22

*BedRoc Ltd., LLC. v. United States*,
541 U.S. 176 (2004) ..................................................................... 22, 23

*Bosse v. Oklahoma*,
580 U.S. 1 (2016) ........................................................................... n.5

*Bowles v. Russell*,
551 U.S. 205 (2007) ........................................................................... 8

*Buckley v. Valeo*,
424 U.S. 1 (1976) ............................................................................. 25

*Burgess v. Whang*,
152 F.4th 579 (5th Cir. 2025) ............................................................ 8

*Byrum v. Landreth*,
566 F.3d 442 (5th Cir. 2009) .............................................................. 4

iv

**Cases – Continued:**

*Carter v. Carter Coal Co.*,
   298 U.S. 238 (1936) ................................................................................................ 27

*Chau v. S.E.C.*,
   72 F. Supp. 3d 417 (2014) .................................................................................... 32

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
   494 U.S. 558 (1990) ...................................................................................... 12, 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ................................................................................................ 31

*Collins v. Yellen*,
   594 U.S. 220 (2021) ................................................................................................ 23

*Crowell v. Benson*,
   285 U.S. 22 (1932) .................................................................................................. 21

*Currin v. Wallace*,
   306 U.S. 1 (1939) .................................................................................................... 28

*Curtis v. Loether*,
   415 U.S. 189 (1974) ................................................................................................ 16

*Decker Coal Co. v. Pehringer*,
   8 F.4th 1123 (9th Cir. 2021) ................................................................................. 33

*Dennis Melancon, Inc. v. City of New Orleans*,
   703 F.3d 262 (5th Cir. 2012) ................................................................................... 4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020) .................................................................................................... 32

*Di Biase v. SPX Corp.*,
   872 F.3d 224 (4th Cir. 2017) ................................................................................... 4

*Diaz v. Castro*,
   122 F. Supp. 3d 603 (S.D. Tex. 2014) .................................................................... 3

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................................ 23

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ...................................................................................................... 8

**Cases – Continued:**

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) ................................................................................. 3

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ........................................................................... 22, 24

*F.T.C. v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) ............................................................................... 31

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) ......................................................................... Passim

*Guile v. Durham Nephrology Associates*,
   2016 WL 375077 (M.D.N.C. Jan. 29, 2016) ......................................... 28

*Haaland v. Brackeen*,
   599 U.S. 255 (2023) ........................................................................... 25, 31

*Halliburton, Inc. v. Admin. Rev. Bd.*,
   771 F.3d 254 (5th Cir. 2014) ................................................................ 15

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir.1985) .................................................................... 4

*Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*,
   566 F.3d 138 (4th Cir. 2009) ................................................................ 30

*Jarkesy v. SEC*,
   34 F.4th 446 (2022) .............................................................................. 26

*Lebow v. Am. Trans Air, Inc.*,
   86 F.3d 661 (7th Cir. 1996) .................................................................. 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) .............................................................................. 25

*Marcus v. Barilla Am. NY, Inc.*,
   14 F. Supp. 3d 108 (W.D.N.Y. 2014) .................................................. 28

*Maryland v. King*,
   567 U.S. 1301 (2012) ............................................................................ 33

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ................................................................................ 4

**Cases – Continued:**

*Mertens v. Hewitt Assocs.*,
 508 U.S. 248 (1993) ................................................................. n.8

*Millsap v. McDonnell Douglas Corp.*,
 368 F.3d 1246 (10th Cir. 2004) ........................................................ 13

*Miranda v. Garland*,
 34 F.4th 338 (4th Cir. 2022) .......................................................... 33

*Mistretta v. United States*,
 488 U.S. 361 (1989) .................................................................. 25

*Moats v. Nat'l Credit Union Admin. Bd.*,
 153 F.4th 449 (5th Cir. 2025) ......................................................... 9

*Mohawk Indus., Inc. v. Carpenter*,
 558 U.S. 100 (2009) .................................................................. 32

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
 458 U.S. 50 (1982) ................................................................... 20

*Nat'l Cable Television Ass'n, Inc. v. United States*,
 415 U.S. 352 (1974) .................................................................. 27

*Nixon v. Adm'r of Gen. Servs.*,
 433 U.S. 425 (1977) .................................................................. 26

*Nken v. Holder*,
 556 U.S. 418 (2009) .................................................................. 32

*N.L.R.B. v. Jones & Laughlin Steel Corp.*,
 301 U.S. 1 (1937) ................................................................. 16, 18

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
 584 U.S. 325 (2018) .................................................................. 17

*Ortega v. Off. of the Comptroller of the Currency*,
 155 F.4th 394 (5th Cir. 2025) ......................................................... 20

*Pittston Co. v. United States*,
 368 F.3d 385 (4th Cir. 2004) ...................................................... 27, 29

*Porter v. Warner Holding Co.*,
 328 U.S. 395 (1946) .................................................................. 11

**Cases – Continued:**

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ..................................................... 3

*Sabine Pilot Serv., Inc. v. Hauck*,
    687 S.W.2d 733 (Tex. 1985) ................................................. n.4

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974) .............................................................. 24

*Schmidt v. Levi Strauss & Co.*,
    621 F. Supp. 2d 796 (N.D. Cal. 2008) ................................... 19

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) ..................................................... Passim

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ...................................................22, 23-24

*Sheline v. Dun & Bradstreet Corp.*,
    948 F.2d 174 (5th Cir. 1991) ................................................ 2-3

*Space Exploration Techs. Corp. v. NLRB*,
    151 F.4th 761 (5th Cir. 2025) ............................................. 9, 21

*Stockman v. Fed. Election Comm'n*,
    138 F.3d 144 (5th Cir. 1998) .................................................. 3

*Thomas v. Union Carbide Agr. Products Co.*,
    473 U.S. 568 (1986) .......................................................... 19, 20

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ............................................................. 8, 9

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) .............................................................. 24

*Tull v. United States*,
    481 U.S. 412 (1987) ..................................................... Passim

*U.S. Telecom Ass'n v. F.C.C.*,
    359 F.3d 554 (D.C. Cir. 2004) ............................................. 27

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021) ................................................................. 22

**Cases – Continued:**

*United States v. Hosford,*
  843 F.3d 161 (4th Cir. 2016) ................................................................ 30

*United States v. Rafoi,*
  60 F.4th 982 (5th Cir. 2023) ................................................................. 4

*Waldrop v. S. Co. Servs.,*
  24 F.3d 152 (11th Cir. 1994) ................................................................ 16

*West v. Gibson,*
  527 U.S. 212 (1999) ............................................................................ 12

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) ................................................................................ 4

*Yellow Freight Sys., Inc. v. Martin,*
  983 F.2d 1195 (2d Cir. 1993) ............................................................... 19

**Statutes**

12 U.S.C. § 1818(i)(1) ............................................................................ 8

15 U.S.C. § 78u–2(c) ............................................................................. 12

15 U.S.C. § 80b–3(i)(3) .......................................................................... 12

Sarbanes-Oxley Act,
  18 U.S.C. § 1514A .............................................................................. 19
  18 U.S.C. § 1514A(b)(1)(B) ................................................................ 28

28 U.S.C. § 1391(e)(1) ........................................................................... 29

Federal Tort Claims Act,
  28 U.S.C. § 2675(a) ............................................................................ 28

29 U.S.C. § 101 ................................................................................. 9-10

Title VII of the Civil Rights Act of 1964,
  42 U.S.C. § 2000e-5(f)(1) ................................................................... 28

Energy Reorganization Act,
  42 U.S.C. § 5851(b)(4) ........................................................................ 28

**Statutes – Continued:**

Federal Railroad Safety Act,
    49 U.S.C. § 20109(d)(3) ................................................................ 28
    49 U.S.C. § 20109(e)(1) ................................................................ 13

Surface Transportation Assistance Act of 1982
    49 U.S.C. § 31105 ........................................................................ 19

49 U.S.C. § 42121(b)(4)(B) ............................................................. 10

49 U.S.C. § 60101 .......................................................................... 5

49 U.S.C. § 60102-60143 ................................................................ 18
49 U.S.C. § 60102(a) ...................................................................... 4
49 U.S.C. § 60102(a), (c)-(d), (f), (n), (q) ........................................ 18

49 U.S.C. § 60129 .......................................................................... 18
49 U.S.C. § 60129(a)(1) .................................................................. 18
49 U.S.C. § 60129(b)(1) .............................................................. n.4, 5
49 U.S.C. § 60129(b)(2) .................................................................. 5
49 U.S.C. § 60129(b)(2)(A) .............................................................. 5
49 U.S.C. § 60129(b)(2)(B)(iii) ........................................................ 5
49 U.S.C. § 60129(b)(3)(B) ................................................... 12, 13, 14
49 U.S.C. § 60129(b)(3)(D)(i) ..................................................... 24, 28
49 U.S.C. § 60129(b)(4)(A) ........................................................ 7, n.2
49 U.S.C. § 60129(b)(4)(B) ........................................................ 7-8, 9

Pipeline Safety Improvement Act of 2002,
    Pub. L. 107-355, 116 Stat. 2985 .................................................... 4

**Federal Rule of Civil Procedure**

    Federal Rule of Civil Procedure 56 .................................................. 3
    Federal Rule of Civil Procedure 56 (a) .......................................... 3, 7
    Federal Rule of Civil Procedure 12(b)(1) ........................................ 7

**Code of Federal Regulations**

    29 C.F.R. § 1981.106(b)(1) ............................................................ 5
    29 C.F.R. § 1981.107 ..................................................................... 5
    29 C.F.R. § 1981.109(b) ........................................................... 12, 14

**Other Authorities**

Kempf & Taylor, *Wrongful Discharge: Historical Evolution, Current Developments, and a Proposed Legislative Solution*, 28 San Diego L. Rev. 117 (1991) .......................................... 14

Krauskopf, *Employment Discharge: Survey and Critique of the Modern At Will Rule*, 51 UMKC L. Rev. 189 (1983) ................................................................................ 14

H.R. Rep. No. 107-605(II) ....................................................................................... 5, 17

# I.   SUMMARY

Andrew Wyderka filed a complaint with the U.S. Department of Labor ("DOL") on May 18, 2022, alleging that his former employer, Energy Transfer LP ("Plaintiff" or "Energy Transfer"), terminated him in retaliation for raising safety concerns in violation of the whistleblower protection provisions of the Pipeline Safety Improvement Act ("PSIA"). Energy Transfer has been litigating Wyderka's complaint before the Office of Administrative Law Judges and participating in the administrative hearing process without objecting to the forum for years. Now, however, it believes that it is entitled to enjoin that proceeding. In doing so, Energy Transfer asks the Court to block a key mechanism that protects whistleblowers who report pipeline safety concerns.

At the threshold, all of Energy Transfer's claims should be dismissed for lack of subject-matter jurisdiction. Energy Transfer ignores the plain text of the PSIA, which expressly bars district court jurisdiction and channels review of claims to the Courts of Appeals in the first instance. As such, the Court does not have jurisdiction to entertain Energy Transfer's claims.

Even if the Court determines it has jurisdiction, Energy Transfer's claims are foreclosed. Neither the Seventh Amendment nor Article III bar the administrative adjudication of Wyderka's whistleblower claims because these claims are "make whole"—i.e., equitable—relief. The claims at issue in this administrative proceeding is not analogous to a "suit[] at common law" to which a jury right attaches, nor is it exclusively within the prerogative of the judiciary under Article III. In any event, Wyderka's whistleblower claims involve public rights, so neither the Seventh Amendment nor Article III is implicated. Thus, Energy Transfer cannot establish a constitutional violation under the Seventh Amendment or Article III.

Moreover, preliminary injunctive relief is not appropriate where, (as here) purportedly

unconstitutional statutory provisions can be severed. Lastly, Energy Transfer's requested preliminary injunction should be denied because the balance of equities and the public interest do not weigh in favor of such relief. Thus, even if the Court exercises jurisdiction, Energy Transfer is not entitled to an injunction.

## II.     STANDARD OF REVIEW

### A.     Subject Matter Jurisdiction

A party may move to dismiss under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts "are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). When subject-matter jurisdiction is lacking, "[i]t is incumbent on all federal courts to dismiss" the action. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exist. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In a facial attack premised on subject-matter jurisdiction, no evidence is considered and the allegations in the complaint are taken as true. *Diaz v. Castro*, 122 F. Supp. 3d 603, 607 (S.D. Tex. 2014).

### B.     Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Summary judgment is particularly appropriate where "the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176

(5th Cir. 1991). "A facial challenge to the constitutionality of a statute," like the one here, "presents

a pure question of law." *United States v. Rafoi*, 60 F.4th 982, 996 (5th Cir. 2023).

### C.    Preliminary Injunction

A preliminary injunction is an "extraordinary remedy," "never awarded as of right." *Winter*

*v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain preliminary relief, Energy Transfer

must, "by a clear showing," establish that (1) it has a substantial likelihood of success on the

merits; (2) it will suffer irreparable harm without an injunction; (3) the balance of equities tips in

its favor; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968,

972 (1997) (citation omitted); *see also Byrum v. Landreth,* 566 F.3d 442, 445 (5th Cir. 2009).

Injunctive relief "should only be granted when the movant has clearly carried the burden of

persuasion" "on all four requirements." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009)

(citing *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985)); *Dennis*

*Melancon*, *Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012). "Courts must balance

the competing claims of injury and must consider the effect on each party of the granting or

withholding of the requested relief." *Winter,* 555 U.S. at 24 (2008) (citation omitted). Energy

Transfer's burden is even higher here because it seeks a preliminary injunction to alter the status

quo by halting DOL proceedings that began years ago. *See Di Biase v. SPX Corp.*, 872 F.3d 224,

230 (4th Cir. 2017).

### III.    BACKGROUND

### A.    Congress Passed the Pipeline Safety Improvement Act to regulate and enforce safety standards on pipeline transportation and facilities.

Congress enacted the PSIA "to provide adequate protection against risks to life and

property posed by pipeline transportation and pipeline facilities." Pub. L. 107-355, 116 Stat. 2985

(Dec. 17, 2002), codified at 49 U.S.C. § 60102(a). The statute sets forth an extensive regulatory

regime with detailed safety requirements. 49 U.S.C. §§ 60101 *et seq.* Acknowledging the critical public-safety role whistleblowers play, Congress included a provision in the PSIA to extend whistleblower protections "to any activity governed by pipeline safety law or regulation." H.R. Rep. No. 107-605(II), at 23 (July 23, 2002) (report of the House Committee on Energy and Commerce). The PSIA thus provides employees with novel protections from adverse-employment actions if they engage in any protected activity, as defined by the PSIA and the cross-referenced statutes and regulations. 49 U.S.C. § 60129(a)(1).

If employees believe they have been discharged in violation of the PSIA, they may file a complaint with the Secretary of Labor within 180 days of the alleged violation. 49 U.S.C. § 60129(b)(1). The Secretary then investigates the complaint and determines whether there is reasonable cause to believe that the complaint has merit. 49 U.S.C. § 60129(b)(2). Employees must prove that they engaged in PSIA-protected activity, that they were subject to an unfavorable personnel action, and that the protected activity was a contributing factor in the unfavorable personnel action. 49 U.S.C. § 60129(b)(2)(B)(iii). An employer may defeat the complaint by demonstrating, through clear and convincing evidence, that it would have taken the same unfavorable personnel action in the absence of any protected activity. 49 U.S.C. § 60129(b)(2)(B)(iii). Following the Secretary's findings, either party may file objections to the findings and request a hearing on the record. 49 U.S.C. § 60129(b)(2); 29 C.F.R. § 1981.106(b)(1). Any such hearing will be conducted de novo by the Office of Administrative Law Judges. 29 C.F.R. § 1981.107.

**B.    Wyderka submitted a whistleblower complaint alleging Plaintiff terminated him for raising safety concerns.**

Wydera, a former Energy Transfer employee, filed a PSIA whistleblower complaint on

May 18, 2022. Complaint, Dkt. No. 1, ¶3. Wyderka alleges that Energy Transfer took adverse action against him (terminating his employment on January 6, 2022) because he raised safety concerns with Energy Transfer that were covered by the PSIA. Dkt. No. 1, ¶3. On January 3, 2023, the Secretary, acting through a Regional Investigator for the Occupational Safety and Health Administration ("OSHA") as an agent, dismissed Wyderka's complaint, finding that OSHA did not have reasonable cause to believe that Energy Transfer violated PSIA when it terminated his employment. Ex. 4 to Complaint, Dkt. No. 1. Wyderka appealed to the Office of Administrative Law Judges ("ALJ") for a de novo hearing on February 1, 2023. Dkt. No. 1, ¶25. The ALJ process has completed discovery, depositions, and motions for summary judgment, and a hearing is scheduled on April 26, 2026. Ex. 6 to Complaint, Dkt. No. 1.[1]

## C. After years of litigation with the ALJ, Energy Transfer filed a complaint in this Court to challenge the ALJ proceeding.

Now, almost three years after the start of the ALJ proceeding, Energy Transfer challenges those proceedings as unconstitutional and brings this lawsuit against Defendants United States Department of Labor; the Office of Administrative Law Judges; Lori Chavez-Deremer, in her official capacity as Secretary of the United States Department of Labor; and Willow Fort, in her official capacity as an Administrative Law Judge of the United States Department of Labor, (collectively, the "Defendants"). Complaint, Dkt. No. 1. In support of its injunctive relief claims, Energy Transfer asserts that: (1) the ALJ proceeding violates its right to trial under the Seventh Amendment; (2) the statutes restricting the removal of ALJs violate the Take Care Clause under Article II of the Constitution; (3) the ALJ proceeding violates Article III; (4) the ALJ proceeding

---

[1] The ALJ's November 17, 2025 Scheduling Order provides the hearing date. Energy Transfer's Motion for Preliminary Injunction was filed on October 3, 2025, but mistakenly references a scheduled hearing date of September 9, 2024. Mot. for Prelim. Inj., Dkt. No. 14, pp. 2, 6.

violates the nondelegation doctrine and separate of powers under Article I; and (5) the ALJ proceeding violates due process. Mot. for Prelim. Inj., Dkt. No. 14, pp. 2-3.

**D.     This case is ripe for a decision on the merits.**

On October 3, 2025, Energy Transfer filed a Motion for Preliminary Injunction, arguing that the ALJ proceeding is unconstitutional. Defendants dispute the Court's subject matter jurisdiction, and given that there are no issues of fact, and in furtherance of judicial efficiency, this case is ripe for a merits decision. *See* Fed. R. Civ. P. 12(b)(1) and 56(a). As such, Defendants respond to Energy Transfer's Motion for Preliminary Injunction and move to dismiss for lack of subject-matter jurisdiction. In the alternative, Defendants move for summary judgment on the merits.

## IV.     ARGUMENT

**A.     The Pipeline Safety Improvement Act precludes this Court's review of Energy Transfer's claims.**

Energy Transfer's challenges to the ongoing DOL administrative proceeding are not properly before this Court. Accordingly, the Court should dismiss this case for lack of subject-matter jurisdiction. Congress required that judicial review of DOL decisions in PSIA whistleblower cases be channeled directly to an appropriate "United States Court of Appeal for the circuit in which the violation . . . allegedly occurred or the circuit in which the complainant resided on the date of such violation."[2] 49 U.S.C. § 60129(b)(4)(A). The PSIA's next section, titled "Limitation on collateral attack," provides that "[a]n order of the Secretary of Labor with respect to which review *could* have been obtained under subparagraph (A) *shall not be subject to*

---

[2] Appellate jurisdiction under the PSIA is based on where the violation occurred or where Wyderka resides. 49 U.S.C. § 60129(b)(4)(A). Wyderka resides in Indiana (Seventh Circuit) and he was terminated while he worked at a worksite in Kentucky (Sixth Circuit). *See* Ex. 1 to Complaint, Wyderka's Whistleblower Complaint, Dkt. No. 1.

*judicial review* in any criminal or other civil proceeding." 49 U.S.C. § 60129(b)(4)(B) (emphasis

added). Because the statute explicitly and exclusively channels review of claims involving PSIA

whistleblower proceedings to the courts of appeals and prohibits judicial review of such claims in

any other proceeding, this Court need look no further to confirm its lack of jurisdiction. *See Bowles*

*v. Russell*, 55 l U.S. 205, 212-13 (2007) ("Because Congress decides whether federal courts can

hear cases at all, it can also determine when, and under what conditions, federal courts can hear

them"); *Axon Enterprise. Inc. v. FTC,* 598 U.S. 175, 185 (2023)(recognizing that Congress may

preclude jurisdiction "explicitly, providing in so many words that district court jurisdiction will

yield."); *see also BedRoc Ltd., LLC. v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry

begins with the statutory text and ends there as well if the text is unambiguous.").

  The Supreme Court has repeatedly held that district courts lack jurisdiction over suits, like

Energy Transfer's, that attempt to bypass an exclusive remedial scheme established by Congress.

*See Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200

(1994). And at least one district court has ruled that it likely did not have jurisdiction over a case

seeking to enjoin an administrative proceeding under a nearly identical whistleblower provision of

the Food Safety Modernization Act ("FSMA"). The Fifth Circuit, moreover, recently reaffirmed

that Congress may strip district courts of jurisdiction over a case seeking to enjoin an

administrative proceeding on constitutional grounds. *Burgess v. Whang*, 152 F.4th 579, 582, 589

(5th Cir. 2025) (12 U.S.C. § 1818(i)(1) explicitly precludes district court jurisdiction); *compare*

12 U.S.C. § 1818(i)(1) ("except as otherwise provided in this section or [the statutorily authorized

appeals process], no court shall have jurisdiction to affect by injunction or otherwise the issuance

or enforcement of any notice or order . . .") *with* 49 U.S.C. § 60129(b)(4)(B) ("An order of the

Secretary of Labor with respect to which review could have been obtained under subparagraph (A)

shall not be subject to judicial review in any criminal or other civil proceeding."); *accord Moats v. Nat'l Credit Union Admin. Bd.*, 153 F.4th 449, 451, 455 (5th Cir. 2025).

The claims at issue here plainly "*could* have been" reviewed by the court of appeals in accordance with Section 60129(b)(4)(B). For that reason, Energy Transfer is prohibited from short-circuiting the administrative proceedings before their completion. *Id.* Should Wyderka prevail on his retaliation claim, Energy Transfer may seek review in the court of appeals, which is positioned to remedy any alleged error as specifically provided for by Section 60129(b)(4)(B).

Energy Transfer relies on *Axon,* 598 U.S. 175 (2023), to support its subject-matter jurisdiction argument. Mot. for Prelim. Inj., Dkt. No. 14, p. 7. But unlike the statute considered in *Axon*, the PSIA at issue in this case contains a separate *express* bar on this court's judicial review. *Axon* addressed the Securities Exchange Act, a statute that does not include an express jurisdictional bar. In that case, the Supreme Court held that the plaintiffs' Article II claims were not implicitly precluded under *Thunder Basin*, 510 U.S. 200, but it recognized that Congress may also preclude jurisdiction "explicitly, providing in so many words that district court jurisdiction will yield." *Axon*, 598 U.S. at 185. The Fifth Circuit in *Burgess* also noted that the *Thunder Basin* factors are only used to analyze implicit preclusion, *see* 152 F4th at 584-85, and were thus not relevant to the court's explicit preclusion analysis. Because Congress's preclusion of district court jurisdiction is explicit here, *see* 49 U.S.C. § 60129(b)(4)(B) ("[l]imitation on collateral attack"), *Axon* does not apply.

Energy Transfer's reliance on *SpaceX* for its subject matter jurisdiction argument, Mot. for Prelim. Inj., Dkt. No. 14, p. 7, is likewise misplaced. The Norris-LaGuardia Act, the statute at issue in *SpaceX*, is different than the PSIA. *Space Exploration Techs. Corp. v. NLRB,* 151 F.4th 761 (5th Cir. 2025) ("*SpaceX*"). The Norris-LaGuardia Act withdraws jurisdiction from district courts in

cases "involving or growing out a labor dispute." *Id.* at 769 (quoting 29 U.S.C. § 101)). The Fifth Circuit concluded that this language did not preclude district court jurisdiction over a constitutional challenge to the NLRB's structure. *Id.* at 769-70. The court's analysis turned on whether the suit fell within the statutory definition of "labor dispute," which involves consideration of factors such as whether the employers were "engaged in the same industry, trade, craft, or occupation." *Id.* It strips district-court jurisdiction for review of any agency order. 49 U.S.C. § 42121(b)(4)(B). Clearly, the NLRA's jurisdiction-stripping provision differs significantly from that in the PSIA, as the NLRA requires consideration of whether the case "grows" from a dispute in a particular subject area. By contrast, the relevant language in the PSIA is not limited to cases growing out of a labor dispute. Instead, the wording of the PSIA jurisdiction-stripping provision is closer to the language of the statutes at issue in *Burgess* and *Moats* discussed above.

**B.    Even if the Court reaches the constitutional claims, Defendants are entitled to summary judgment because Energy Transfer fails to show a constitutional violation.**

**1.    Energy Transfer has no Seventh Amendment right to a jury trial here.**

If the Court considers the merits of Energy Transfer's Seventh Amendment claim (and for the reasons discussed above, it should not), the two-part test articulated in *SEC v. Jarkesy* confirms that the Seventh Amendment is not implicated here. And even if it were, the administrative adjudication of Wyderka's PSIA claim falls within the public-rights exception. 603 U.S. 109, 120 (2024).

**i.    The Seventh Amendment does not apply where, as here, the "make-whole" relief sought by Wyderka is equitable in nature.**

The Seventh Amendment right to trial by jury only "extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy,* 603 U.S. at 122 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). In *Jarkesy*, the Supreme Court provided guidance regarding

how courts should decide whether a suit is "legal in nature," identifying two factors for consideration: "the cause of action and the remedy it provides." *Id.* at 123. And "[s]ince some causes of action sound in both law and equity," the Supreme Court "concluded that the remedy was the 'more important' consideration." *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 421 (1987)). The Supreme Court determined that the SEC's federal securities-fraud action, which sought civil penalties designed "to punish the defendant rather than to restore the victim," was analogous to common-law fraud actions historically brought in the courts of law. This in turn implicated the Seventh Amendment jury-trial right. *Id.* at 124.

Application of the *Jarkesy* factors makes clear that the Seventh Amendment is not implicated in this case. Energy Transfer claims that most of the relief that Wyderka seeks is legal in nature. Mot. for Prelim. Inj., Dkt. No. 14, p. 10. Defendants contend that Wyderka seeks equitable relief in the underlying administrative proceeding, which precludes the parties' right to a jury under the Seventh Amendment.

As the Supreme Court recognized in *Jarkesy*, "monetary relief can be legal or equitable." 603 U.S. at 123. Rather, "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id.* (quoting *Tull*, 481 U.S. at 422). Restitution differs from a penalty in that the former seeks only to "restor[e] the status quo and order[] the return of that which rightfully belongs to the [plaintiff]." *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946). In *Jarkesy*, the statutes at issue conditioned the availability and size of the SEC's penalties on considerations such as "culpability, deterrence, and recidivism." 603 U.S. at 123-24. Because the statutes "tie[d] the availability of civil penalties to the perceived need to punish the defendant rather than to restore the victim," the Court held that the remedy sought was a legal penalty rather than equitable restitution, triggering

the Seventh Amendment. *Id.* at 124.    Relief that restores a victim is equitable restitution, not legal. *See id.*

The remedies available under the PSIA, by contrast, are meant to make a prevailing whistleblower whole and to restore the status quo. *See* 49 U.S.C. § 60129(b)(3)(B) (allowing the Secretary to order "affirmative action to abate the violation," "reinstate[ment]" of "the complainant to his or her former position together with" compensation and terms and conditions of employment, and compensatory damages). The Supreme Court has observed that monetary remedies like backpay are purely equitable when, as with the PSIA, they are statutorily made an integral part of overall relief designed to make an employee whole. *See West v. Gibson*, 527 U.S. 212, 217 (1999); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 572 (1990). None of the punitive factors found determinative in *Jarkesy* are present in the PSIA whistleblower provision. *Compare* 603 U.S. at 123-24 (citing 15 U.S.C. §§ 78u–2(c), 80b–3(i)(3)), *with* 49 U.S.C. § 60129(b)(3)(B). Rather, the statutory remedies authorized by the PSIA are designed merely to "restore the status quo" for the prevailing whistleblower and thus equitable, not legal. Neither the PSIA nor its implementing regulations afford punitive damages. Therefore, the Seventh Amendment is not implicated. 49 U.S.C. § 60129(b)(3)(B); 29 C.F.R. § 1981.109(b); *Jarkesy*, 603 U.S. at 123.

Energy Transfer states that "most of [Wyderka's] requested remedies under the PSIA are legal in nature," including compensatory damages, but then Energy Transfer also acknowledges that compensatory damages were not at issue in *Jarkesy.* Mot. for Prelim. Inj., Dkt. No. 14, p. 10-12. Energy Transfer makes assertions about Wyderka's remedies, without examining the remedies under the standard established in *Jarkesy. Id.* As the Supreme Court has repeatedly explained, the nature of the remedy should not be judged in a vacuum; rather, the court should look to whether

the remedy is designed to "punish" and "deter" or to "restore the status quo." *Id.*; *see also Tull*, 481 U.S. at 422. Reviewing not just whether monetary remedies are sought but reviewing the purpose of the remedy is key. *Id.* And when Congress makes monetary relief available under "a make-whole statute," the relief is considered equitable. *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1259 (10th Cir. 2004); *see also Chauffeurs* 494 U.S. at 572 (recognizing that backpay is a form of equitable relief in Title VII cases). The design of the provisions in the PSIA for restorative remedies are outside the scope of the Seventh Amendment. *See Tull*, 481 U.S. at 422; *Jarkesy*, 603 U.S. at 121-126 (recognizing that compensatory damages seeking to make a complainant whole are an equitable remedy).

Energy Transfer attempts to cast the relief sought by Wyderka as legal in nature based on the text of a statute not at issue here.[3] Mot. for Prelim. Inj., Dkt. No. 14, pp. 10, 15-16. But the actual statute at issue in this case—the PSIA whistleblower protection provision—contains no words indicating that the remedies available to a complainant are meant to "punish" or to be "punitive" in nature. *See* 49 U.S.C. § 60129(b)(3)(B). Some whistleblower statutes authorize punitive damages, but the PSIA is not one of them. For example, 49 U.S.C. § 20109(e)(1) authorizes punitive damages in actions brought under the whistleblower provisions of the Federal Railroad Safety Act. The remedies available to whistleblowers under the PSIA serve to place the whistleblower back in the same position that they would have been in, but for the adverse action.

---

[3] Energy Transfer cites numerous cases that are inapposite to the relief it seeks in this case and that neither examine penalties available to whistleblowers generally nor examine penalties available under the PSIA or similar statutes specifically, including *Mertens* (an Employee Retirement Security Act case cited in *Jarkesy* for the proposition that "[w]hile monetary relief can be legal or equitable, money damages are the prototypical common law remedy,"…"[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 (1993) (citations omitted). *Chauffeurs, Teamsters and Helpers* is another inapposite case cited by Energy Transfer and it addresses union members suing their union for breach of contract. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558 (1990).

49 U.S.C. § 60129(b)(3)(B); 29 C.F.R. § 1981.109(b).

As discussed *supra*, the remedies available under the PSIA, designed solely to restore the status quo, are equitable.

### ii. The PSIA whistleblower proceeding is equitable in nature and not based in common law.

In any event, the second *Jarkesy* factor—the "relationship between the causes of action in this case and common law," 603 U.S. at 125—also weighs against Energy Transfer. A PSIA whistleblower retaliation claim is not closely analogous to any cause of action at common law. For purposes of the Seventh Amendment analysis, this Court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull*, 481 U.S. at 417-18.

As an initial matter, although Energy Transfer asserts that a PSIA whistleblower claim is analogous to a common-law contract action, Mot. for Prelim. Inj., Dkt. No. 14, pp. 13-16, Energy Transfer does not explain how Wyderka's action could be akin to a breach of contract where Wyderka's employment was at will. Energy Transfer also asserts that a PSIA whistleblower claim is analogous to a common-law tort action, *id.*, but has not identified a specific tort that is analogous to Wyderka's claim. Wrongful discharge would appear to be the most appropriate analogue, but history confirms that wrongful discharge has no roots in 18th century common law. Instead, it is a mid-20th century innovation. *See* Krauskopf, *Employment Discharge: Survey and Critique of the Modern At Will Rule*, 51 UMKC L. Rev. 189, 232 (1983); Kempf & Taylor, *Wrongful Discharge: Historical Evolution, Current Developments, and a Proposed Legislative Solution*, 28 San Diego L. Rev. 117, 121-23 (1991). As such, PSIA whistleblower claims do not carry "old soil" from any

common-law claims for wrongful discharge. *Jarkesy*, 603 U.S. at 125 (citation omitted).[4]

Energy Transfer contends that under *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 266 (5th Cir. 2014), whistleblower claims are legal in nature. Mot. for Prelim. Inj., Dkt. No. 14, pp. 13-14. But Energy Transfer overstates the holding and relevance of that case. *Halliburton* addresses whether damages for emotional distress and reputational harm were available under the whistleblower protection provision of the Sarbanes-Oxley Act. *Id.* at 263. To answer that question, the court engaged in a lengthy analysis of the text and purpose of the statute, the text of comparable statutes, and other cases that had addressed the question, all of which mostly indicated that these types of damages should be available. *Id.* at 263-66. Lastly, in confirming this determination, the court referred to the Sarbanes-Oxley Act's common-law "backdrop," noting that the tort of wrongful discharge is available in some jurisdictions. *Id.* at 266.

But, as previously noted, the entirely separate question of whether a litigant has a Seventh Amendment right to a jury trial (which was not at issue in *Halliburton*) turns on whether the claim at issue is similar to a legal action in the 18th century. *Halliburton* said nothing about this question. Because wrongful discharge is a 20th-century invention, *Halliburton*'s reasoning does not speak to the Seventh Amendment question in this case.

Next, Energy Transfer cites cases that compare civil-rights statutes to common-law actions, *see* Mot. for Prelim. Inj., Dkt. No. 14, p. 14. But these cases are of little help. For example, Energy

---

[4] And even if wrongful discharge did have 18th-century roots (it does not), the current common law in Texas does not provide for an action for wrongful discharge outside a narrow context not applicable here—where an employee alleges they were fired solely due to their refusal to perform a criminal act. *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). Wyderka does not allege that Energy Transfer discharged him for refusing to perform a criminal act, so he could not bring a claim for wrongful discharge under Texas law. Furthermore, the activity protected by the whistleblower protection provision of the PSIA is much broader than the narrow scope covered by the Texas wrongful discharge tort. *See* 49 U.S.C. § 60129(a)(1) (protecting, *inter alia*, providing information to an employer or the federal government about potential safety violations; testifying before Congress or in court; and commencing a proceeding relating to pipeline safety).

Transfer cites *Curtis v. Loether*, 415 U.S. 189, 195 n.10 (1974), where the Supreme Court compared a claim for racial discrimination to an action for defamation or intentional infliction of mental distress. Mot. for Prelim. Inj., Dkt. No. 14, p. 14. Although *Curtis* suggested that housing-discrimination claims for damages under the Fair Housing Act could be considered analogous to a "dignitary tort," any analogy between racial discrimination in housing and a common-law tort action has no bearing on whether a whistleblower claim under the PSIA is analogous to a common-law action. A whistleblower claim under a statute in which Congress set forth an extensive regulatory regime with detailed safety requirements for pipeline transportation and facilities is different in nature from a claim of racial discrimination in housing. *See Curtis*, 415 U.S. at 194, 195 n.10 (citing *N.L.R.B. v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937)). Energy Transfer's citation to two other cases examining the unique history of the civil rights statutes, *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) and *Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994), does not shed any additional light on the nature of whistleblower claims under the PSIA.

In other words, the common law provides no analogue for the relief Wyderka seeks here. His right derives exclusively from the PSIA, which establishes an equitable cause of action and provides relief "solely to 'restore the status quo.'" *Jarkesy*, 603 U.S. at 123 (quoting *Tull*, 481 U.S. at 422). Because the Seventh Amendment does not apply to actions that are equitable in nature like Wyderka's, Energy Transfer's claim fails.

      **iii.**    **Defendants' adjudication of public rights under the PSIA is consistent with both the Seventh Amendment and Article III.**

Energy Transfer also cannot prevail on its Seventh Amendment claim because Wyderka's whistleblower complaint seeks adjudication of public rights that need not be litigated before a jury

in an Article III court. To ascertain "whether a proceeding involves an exercise of Article III judicial power," the Supreme Court's "precedents have distinguished between 'public rights' and 'private rights.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 333-34 (2018) (citation omitted). Congress may "properly assign[] a matter to adjudication in a non-Article III tribunal" when it involves public rights and, in such cases, "the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Id.* at 345 (quoting *Granfinanciera*, 492 U.S. at 53-54). The Court must presume that Congress's assignment of PSIA whistleblower adjudications to DOL was constitutional. *Granfinanciera*, 492 U.S. at 61 ("To be sure, we owe some deference to Congress' judgment after it has given careful consideration to the constitutionality of a legislative provision.").

Two pipeline explosions, one in 1999 and one in 2000, that caused numerous deaths and injuries and tens of millions of dollars in property damage led to the enactment of the PSIA. *See* H.R. Rep. No. 107-605(II), at 23 (July 23, 2002) (report of the House Committee on Energy and Commerce). *See also* https://www.ntsb.gov/investigations/AccidentReports/ Reports/ PAR0301. pdf and https://www.ntsb.gov/investigations/AccidentReports/Reports/PAR0202.pdf. Congress passed the PSIA in order to improve employee empowerment to report public safety concerns, but also to better safeguard the infrastructure of national pipelines and better safeguard the people who live near pipelines. *Id.*

PSIA whistleblower claims involve public rights. Contrary to Energy Transfer's assertion, *Jarkesy* did not "shut the door" on the public-rights exception. *See* Mot. for Prelim. Inj., Dkt. No. 14, pp. 16-17. Rather, the Supreme Court explained the exception applies if Congress's "purpose . . . was not to enable the Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 603 U.S. at 137. In *Atlas Roofing Co. v. Occupational*

*Safety & Health Rev. Comm'n*, 430 U.S. 442 (1977), the Court held that OSHA was "self-consciously novel" in "both concept and execution." *Id*;[5] *see also Jones & Laughlin Steel*, 301 U.S. at 48-49 (rejecting Seventh Amendment challenge to monetary award under anti-retaliation provision). And in cases not involving the Federal Government, the Supreme Court in *Granfinanciera* instructed that the "crucial question . . . is whether Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution.'" 492 U.S. at 54 (citation modified). In either scenario, the public-rights exception applies.

The whistleblower protection provision of the PSIA, 49 U.S.C. § 60129, shares both public-rights characteristics: it is novel and closely integrated into a public-regulatory scheme. The PSIA was intended to protect "against risks to life and property posed by pipeline transportation and pipeline facilities," and it included a host of detailed requirements to further that goal, including minimum-safety and facility-operation standards, qualifications for pipeline operators, mandates that operators conduct leak detection and repair programs, and requirements for the use of certain specific safety-related technologies. 49 U.S.C. § 60102(a), (c)-(d), (f), (n), (q). In addition, because then-existing law did not protect whistleblowers like Wyderka, Congress passed the "self-consciously novel" whistleblower provisions of the PSIA to protect employees who report violations of pipeline safety laws, *Jarkesy*, 603 U.S. at 137, to encourage compliance and reporting of non-compliance, and to deter violations of Congress' pipeline-safety scheme. *See, e.g.*, 49 U.S.C. §§ 60102-60143, 60129(a)(1). "The purpose of this regime was not to enable the

---

[5] The Court in *Jarkesy* declined to overrule *Atlas Roofing*, 603 U.S. at 136-40, which "remain[s] binding precedent" on this Court. *See Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (citation omitted).

Federal Government to bring or adjudicate claims that traced their ancestry to the common law." *Jarkesy*, 603 U.S. at 137. Rather, the PSIA establishes novel protections that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 594 (1986).

Courts have long held that DOL's adjudication of claims under similar whistleblower-protection statutes thus involve "public rights" that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Yellow Freight Sys., Inc. v. Martin*, 983 F.2d 1195, 1200-01 (2d Cir. 1993) (rejecting Article III and Seventh Amendment challenges to DOL adjudication of similar whistleblower claim under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105); *see also Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 806-07 (N.D. Cal. 2008) (same as to whistleblower claims under Sarbanes-Oxley Act, 18 U.S.C. § 1514A). *Jarkesy* did not silently overturn this authority any more than it overturned the public-rights framework of *Granfinanciera*, 492 U.S. at 53, and *Thomas*, 473 U.S. at 593-94. This is particularly so because the Supreme Court itself expressly limited its review in *Jarkesy* to the question of whether the SEC can, consistent with Article III and the Seventh Amendment, seek civil penalties in an administrative adjudication. *See Jarkesy*, 603 U.S. at 141 (Gorsuch, J., concurring) ("The Court decides a single issue: Whether the [SEC]'s use of in-house hearings to seek civil penalties violates the Seventh Amendment right to a jury trial."). In that regard, *Jarkesy* did not consider whether Article III would be implicated if the SEC sought make-whole relief or imposed non-punitive remedies, let alone what other agencies can do under different statutes with different histories. Whistleblower retaliation claims like those of the PSIA therefore remain public-rights actions today.

Furthermore, cases decided after *Jarkesy* demonstrate that novel statutory schemes like the

whistleblower protection provision of the PSIA fall within the public rights exception. *See Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394, 397, 404, 408 (5th Cir. 2025) (public rights exception applied to an agency enforcement action against bank officers for, *inter alia*, breach of fiduciary duty, as the law regulating banks was "meant to vindicate safety to the banking ecosystem at large," and thus was "analogous" to the novel safety scheme of *Atlas Roofing*); *Axalta Coating Sys. LLC v. FAA*, 144 F.4th 467, 476 (3d Cir. 2025) (civil penalties for violations of FAA regulation of transportation of hazardous waste fall within public rights exception, as those standards brought no common-law soil, but instead "consist of technical prescriptions for engaging in the regulated activity").

Energy Transfer also asserts that because the underlying administrative matter is between Wyderka and Energy Transfer, the public has no interest in the resolution of Wyderka's claims because "Wyderka is a private party." Mot. for Prelim. Inj., Dkt. No. 14, p. 16. But the Supreme Court has squarely "rejected the view that 'a matter of public rights must at a minimum arise between the government and others.'" *Granfinanciera*, 492 U.S. at 54 (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 (1982) (plurality opinion)). The Court "held, instead, that the Federal Government need not be a party for a case to revolve around 'public rights.'" *Id.* (quoting *Thomas*, 473 U.S. at 596-99 (Brennan. J., concurring)). Again, the key question is whether Congress "create[d] a seemingly private right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution," *id.* (internal quotation marks omitted), and that is clearly true of PSIA whistleblower claims.

In sum, the Court should hold that the public-rights exception removes the PSIA whistleblower proceeding from exclusive Article III jurisdiction.

Finally, even if this Court were to find Energy Transfer's Seventh Amendment claim

meritorious, the sweeping injunction Energy Transfer seeks—i.e., to have the court declare that the administrative proceeding is unconstitutional and direct the ALJ to dismiss the case—would be inappropriate. Any relief should be limited to enjoining DOL from imposing legal remedies administratively, thus allowing the administrative proceeding to continue as to all other remedies. *Jarkesy* did not purport to upend the long history of administrative adjudication outside the narrow context at issue in that case—the adjudication of remedies that are legal in nature. *See Crowell v. Benson*, 285 U.S. 22, 49 (1932) (refusing to invalidate a proceeding provided that substantial rights of the parties were not infringed).

### 2. If the Court reaches the Article II removal protection claim, it should sever the offending provisions.

Energy Transfer argues that the ALJ is "double insulated from the President's removal authority" and this violates Article II of the Constitution. Mot. for Prelim. Inj., Dkt. No. 14, p. 17. But without subject-matter jurisdiction, the Court need not reach the merits of the Article II removal-protection claim. And even if the Court determines it does have jurisdiction, Energy Transfer is not entitled to a preliminary injunction halting the ALJ proceedings. Instead, the proper remedy would be severance of the offending provisions. Accordingly, if the Court reaches this issue, it should enter summary judgment severing the removal protections challenged by Energy Transfer.

Although the Fifth Circuit recently determined that the possibility of severing offending ALJ removal protections did not preclude the court from preliminarily enjoining ongoing administrative proceedings, it explained that severance may be available at "the merits phase, when the court considers final relief." *SpaceX*, 151 F.4th at 773.[6]

---

[6] Defendants expressly reserve their right to make all appropriate arguments, including but not limited to that compensable harm is a necessary showing to obtain any relief in a removal challenge, if *SpaceX*'s holding is

In cases concerning a potentially unconstitutional statutory provision, as here, there is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625–627 (2020); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010); *Seila Law LLC v. CFPB*, 591 U.S. 197, 234 (2020). Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S. at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id*. at 628. Here, severing statutory removal restrictions would remedy the alleged constitutional violations.

The Supreme Court has taken this approach every time it has found a structural constitutional defect in the appointment or removal provisions of a statute in the past fifteen years. *See Free Enter. Fund*, 561 U.S. at 508–09 (severing removal protections instead of precluding exercise of authority); *Seila Law*, 591 U.S. at 237 (severing removal protections, using "a scalpel rather than a bulldozer in curing the constitutional defect"); *United States v. Arthrex, Inc.*, 594 U.S. 1, 23–25 (2021) (severing provision that prevented decisions of Administrative Patent Judges from being reviewed by Director of Patent Trial and Appeal Board, and rejecting argument that proper remedy was dismissal of underlying patent adjudication).

To illustrate, in *Free Enterprise*, the Court found the Public Company Accounting Oversight Board's ("PCAOB") removal protections unconstitutional but rejected the plaintiffs' attempt to enjoin the PCAOB's operations. 561 U.S. at 508, 513. Instead, the Supreme Court severed the offending statutory provisions, leaving the members of the PCAOB subject to removal

---

modified, reversed, or vacated in the future.

by the SEC. *Id*. Likewise, in *Seila Law*, the Supreme Court found the removal protections for the Director of the Consumer Financial Protection Bureau ("CFPB") unconstitutional. 591 U.S. at 232. As a result, the Supreme Court severed the Director's removal protection, stating that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id*. at 235.

Given the availability of severance, Energy Transfer is not entitled to a permanent injunction halting the proceedings entirely. As an initial matter, severance is compatible with the relief Energy Transfer seeks in this case, as it would remove the allegedly unconstitutional aspect of the proceedings. Furthermore, a plaintiff seeking a permanent injunction must show that the balance of equities favors the plaintiff, *Bay, Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006), and here, the balance of equities where severance is available clearly favors Defendants. Energy Transfer has not made any actual showing of the harm it alleges—i.e., that the President was frustrated in overseeing the underlying enforcement action. *See Collins v. Yellen*, 594 U.S. 220, 259-60 (identifying two "clear-cut" examples of harm attributable to a removal restriction that could be actionable: (1) where "the President had attempted to remove [the officer] but was prevented from doing so," and (2) where "the President had made a public statement expressing displeasure with actions taken by [the officer] and had asserted that he would remove" the officer if not for the statutory bar). And in fact, if the President wanted this adjudication to go forward, an injunction interfering with the proceeding would frustrate the President's will. Clearly that cannot be the correct result. Instead, severance alleviates any potential harm that could be suffered by Energy Transfer while ensuring the President may continue to enforce the PSIA. *See Seila Law*, 591 U.S. 197, 232-38 (where the court is confronted with the choice of permanently enjoining an

ongoing enforcement case or severance of offending removal protections, severance is the correct remedy).

Accordingly, to the extent the Court determines that a constitutional infirmity is present, the Court should enter summary judgment severing the challenged provisions. *See, e.g.*, *Free Enterprise*, 561 U.S. at 513; *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury").

### 3.    Energy Transfer's nondelegation doctrine and separation of powers arguments are without merit.

Energy Transfer contends that the provision of the PSIA that permits a complainant such as Wyderka to remove the case to federal court if the agency has not issued a final decision within 210 days of the filing of the complaint suggests a violation of the constitution. Mot. for Prelim. Inj., Dkt. No. 14, pp. 22-23; *see* 49 U.S.C. § 60129(b)(3)(D)(i). But Wyderka has not exercised any governmental power, and Energy Transfer has thus failed to demonstrate a nondelegation or separation of powers injury sufficient to confer standing. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought"). Even if Energy Transfer had demonstrated an injury, its nondelegation and separation of powers claims are confused on the law and fail on the merits.

### i.    Energy Transfer lacks standing for its nondelegation and separation of powers claims.

Energy Transfer has not suffered an actual or imminent injury redressable by this Court sufficient to confer standing for its nondelegation claim. Energy Transfer alleges that the PSIA unconstitutionally delegates authority to Wyderka to decide to pursue his whistleblower claim in

federal district court, but Wyderka has not exercised that power, and Energy Transfer fails to explain how it has been harmed by its mere existence. Indeed, Energy Transfer's alleged harm of being subjected to a violation of the separation of powers and the nondelegation doctrine is no more than a generalized "interest in proper application of the Constitution and laws," and "does not state an Article III case or controversy." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992). A plaintiff may not establish injury merely by asserting a constitutional violation; instead, Energy Transfer must identify a concrete and particularized injury in fact caused by that constitutional violation. *See Haaland v. Brackeen*, 599 U.S. 255, 296 (2023) ("Because Texas is not injured by the placement preferences," it "does not have standing to bring . . . its nondelegation claims"). Regardless, Wyderka has not exercised any governmental authority whatsoever in this case—much less in a manner that causes harm to Energy Transfer. His claim remains before the ALJ to this day. The someday possibility that Wyderka may elect to remove his PSIA whistleblower claim to federal court does not give Energy Transfer standing to challenge it today.

### a.    Separation of powers principles are not implicated here.

Even if Energy Transfer had established standing and jurisdiction, its nondelegation claim would still fail to state a claim on the merits. Energy Transfer's overarching contention—that the PSIA "violates separation of powers" by allowing a complainant like Wyderka to remove his claims to federal district court in certain circumstances (Mot. for Prelim. Inj., Dkt. No. 14, pp. 22-23)—misconstrues the separation of powers doctrine entirely. The separation of powers principle operates as "a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other." *Mistretta v. United States*, 488 U.S. 361, 382 (1989) (quoting *Buckley v. Valeo*, 424 U.S. 1, 122 (1976)). The question in a separation-of-powers claim, therefore, is whether a law or action "accrete[s] to a single Branch powers more appropriately diffused among

separate Branches or that undermine the authority and independence of one or another coordinate Branch." *Id*.

Here, however, Energy Transfer does not allege any incursion by one branch of Government into the constitutional authority of another, but rather, execution of the "power to decide whether to keep his claim in an Article I agency—or whether to kickout to an Article III court" by Wyderka, who is by Energy Transfer's own admission "*a private litigant*," Mot. for Prelim. Inj., Dkt. No. 14, p. 22). Energy Transfer's citation to the Fifth Circuit's divided opinion in *Jarkesy v. SEC*, 34 F.4th 446 (cited at Mot. for Prelim. Inj., Dkt. No. 14, pp. 22-23) is therefore inapposite. In that case, the Fifth Circuit considered the separation of powers issues posed by Congressional delegation to a federal agency, 34 F.4th at 459, not a private party. To the extent Energy Transfer challenges an alleged execution of Executive functions by a *private* party, such a claim is not cognizable under the separation of powers, which focuses on "disrupt[ions] [of] the proper balance between the coordinate branches [of Government]." *Nixon v. Adm'r of Gen. Servs*., 433 U.S. 425, 443 (1977).

### b. The PSIA does not offend the private nondelegation doctrine.

Energy Transfer argues that the PSIA language permitting a complainant such as Wyderka to remove the case to federal court constitutes a violation of the nondelegation doctrine because it does not provide an "intelligible principle" for Wyderka to follow. Mot. for Prelim. Inj., Dkt. No. 14, p. 22. But Energy Transfer cites no relevant authority in support of this proposition. Indeed, Wyderka's alleged power to control his own case against Energy Transfer is a quintessential exercise of *private* power; it involves no exercise of governmental authority, and the delegation doctrine does not address private power.

To the extent that Energy Transfer is arguing that the PSIA implicates the private

nondelegation doctrine, that doctrine does not apply here because the PSIA does not impermissibly delegate governmental authority to a private entity, and no court has ever held that it does. *Jarkesy*, 34 F.4th at 459, 462–63, did not consider the implications of the private nondelegation doctrine at all—rather, it applied the *public* nondelegation doctrine to a different statute, and issued a ruling on public nondelegation grounds that the Supreme Court declined to affirm. *See Jarkesy*, 603 U.S. at 121. Thus, even if the Fifth Circuit's public nondelegation holding was persuasive on this issue (it is not), it would have no bearing on Energy Transfer's private nondelegation claim.

The private nondelegation doctrine is "the lesser-known cousin of the doctrine that Congress cannot delegate its legislative function to an agency of the Executive Branch." *Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 721 F.3d 666, 670 (D.C. Cir. 2013), *vacated and remanded on other grounds,* 575 U.S. 43 (2015). It holds that "[f]ederal lawmakers cannot delegate regulatory authority to a private entity." *Id.* at 670 (quoting *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936)). But "[n]ot every Congressional delegation of authority to a private party is impermissible." *Pittston Co. v. United States*, 368 F.3d 385, 394 (4th Cir. 2004). Indeed, "Congress may employ private entities for ministerial or advisory roles," *id.* at 395, or to gather facts for an agency, among other functions. *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004). The question, then, is whether the private entity exercises genuine governmental power such that its "involvement . . . in the administrative process" has "trespasse[d] into an unconstitutional delegation." *Ass'n of Am. R.R.*, 721 F.3d at 671. The Supreme Court has invoked the doctrine to invalidate a federal law only twice, and not in more than 80 years. *See Nat'l Cable Television Ass'n, v. United States,* 415 U.S. 352, 353 (1974) (Marshall, J., concurring and dissenting) (calling the doctrine "moribund").

Congress's decision to allow Wyderka to press his PSIA whistleblower claim in federal

district court following exhaustion of his administrative remedies does not constitute an improper delegation because the power delegated is not governmental at all. Rather than delegating any *governmental* authority, 49 U.S.C. § 60129(b)(3)(D)(i) merely establishes a "'jurisdictional prerequisite' to bringing a whistleblower retaliation claim in federal court." *Guile v. Durham Nephrology Associates*, 2016 WL 375077, at *2 (M.D.N.C. Jan. 29, 2016) (quoting *Marcus v. Barilla Am. NY, Inc.*, 14 F. Supp. 3d 108, 120 (W.D.N.Y. 2014)). Congress regularly assigns limited authority to private parties to pursue private rights of action in conjunction with an administrative scheme, and nothing about the PSIA's provision allowing a whistleblower to remove his claims to district court renders the whistleblower's choice governmental or legislative. Similar provisions are found in many other contexts, none of which has been successfully challenged on nondelegation grounds. *See* 49 U.S.C. § 20109(d)(3) (Federal Railroad Safety Act); 42 U.S.C. § 5851(b)(4) (Energy Reorganization Act); 18 U.S.C. § 1514A(b)(1)(B) (Sarbanes-Oxley Act); 42 U.S.C. § 2000e-5(f)(1) (Title VII of the Civil Rights Act of 1964); 28 U.S.C. § 2675(a) (Federal Tort Claims Act).

Courts have also upheld against nondelegation challenges far more substantial private conditions on federal action than what Energy Transfer has alleged here. In *Currin v. Wallace*, Congress authorized the Agriculture Secretary to regulate tobacco auctions but not "unless two-thirds of the [tobacco] growers, voting at a prescribed referendum, favor it." 306 U.S. 1, 6 (1939). The Supreme Court rejected as "untenable" the claim that this veto over federal regulation was an unconstitutional delegation of government power to the private growers: "the required referendum does not involve any delegation of legislative authority. Congress has merely placed a restriction upon its own regulation by withholding its operation as to a given market 'unless two-thirds of the growers voting favor it.'" *Id.* at 15 (citation omitted). If the full weight of governmental power to

*regulate* can be conditioned on the approval of the regulated entities themselves, then surely Congress can authorize Wyderka to remove his claims to district court, just as it allows Energy Transfer to choose whether to appeal to the Fifth Circuit after receiving an adverse decision. *See Pittston*, 368 F.3d at 395 (private entity's implementation of a federal retirement program did not violate private nondelegation doctrine). Indeed, if allowing a private party to choose its forum amounts to an exercise of governmental power in violation of the private nondelegation doctrine, then Energy Transfer's decision to bring this action in the Northern District of Texas as opposed to another jurisdiction under 28 U.S.C. § 1391(e)(1) would also be unconstitutional. Of course, this is not the case. Energy Transfer's choice of forum no more reflects an exercise of governmental power than does Wyderka's decision to proceed before the ALJ.

A whistleblower complainant like Wyderka has no authority to prescribe any rules to anyone, let alone those affecting DOL's adjudication of a PSIA claim. Indeed, Wyderka has no role whatsoever in any of DOL's investigative or adjudicative decisions, and it is DOL and the federal judiciary, not Wyderka, who determines whether a violation of the PSIA's whistleblower protection provisions has occurred. *See* 49 U.S.C § 60129(b)(2)(A) ("the Secretary shall conduct an investigation and determine whether there is reasonable cause to believe that the complaint has merit"); *id*. § 60129(b)(2)(C)(iii) ("The Secretary may determine that a violation of subsection (a) has occurred"). Even if Wyderka's ability to proceed before an ALJ or a district court could be construed as an exercise of governmental power, there is thus no doubt that Wyderka "function[s] subordinately" to DOL, and that DOL has "authority and surveillance" over the finding of whatever violation he alleges, rendering the delegation permissible. *Pittston,* 368 F.3d at 394.

### 4.    Energy Transfer's due process violation claims are unsupported.

Energy Transfer briefly argues that the administrative proceedings violate the Due Process

Clause of the Fifth Amendment in a variety of ways. Mot. for Prelim. Inj., Dkt. No. 14, pp. 23-24. Even if the Court had jurisdiction over these claims, *see supra*, they fail as a matter of law. Energy Transfer's due process challenges consist of objections to hypothetical future acts which have not (and may never) occur. To prevail on a procedural due process claim, Energy Transfer must "show (1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (cleaned up). Energy Transfer has made no such showing here. Its claims amount to wholly speculative "facial challenge[s]," where it "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (citation omitted). None of Energy Transfer's due process arguments clear that high bar for relief.

Energy Transfer argues that it "has not known in advance what discovery it may pursue [in the ALJ proceeding] in mounting its defense" because the ALJ has "broad discretion to limit discovery to expedite the hearing." *Id.* Energy Transfer has not provided any ALJ order or allegation that the ALJ has expedited the hearing or limited its discovery. Instead, Energy Transfer's litigation with the ALJ has not been expedited and included completion of written discovery, depositions, and motions for summary judgment.[7] *See* Ex. 6 to Complaint, ALJ Order Denying Motion for Summary Judgment, Dkt. No. 1. Further, the ALJ provided Energy Transfer with scheduling orders and a notice of docketing that referenced the relevant discovery rules with a hyperlink to the rules. *See* Ex. 5 to Complaint, Notice of Docketing, Dkt. No. 1; https://www.dol.gov/agencies/oalj/PUBLIC/RULES_OF_PRACTICE/REFERENCES/REFERE

---

[7]  The ALJ's November 17, 2025 Scheduling Order provides the April 21, 2026 hearing date and notes that the hearing has been continued multiple times and this is the fourth amended notice of hearing.

NCE_WORKS/29_CFR_PART_18_SUBPART_A_(2015). Rules 18.60-18.65 detail written

discovery and depositions, similar to the Federal Rules of Civil Procedure. *Id.*

Energy Transfer also argues that DOL possesses the power to "join the case and dually

serve as litigant/prosecutor and adjudicator/ultimate decisionmaker. Mot. for Prelim. Inj., Dkt. No.

14, p. 24. These due process claims are not supported by any relevant case law and suffer from a

glaring jurisdictional defect: they fail to show any actual or "certainly impending" injury. *Clapper*

*v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). With regard to the alleged due process concerns

Energy Transfer identifies, it is purely speculative whether any these actions will ever occur in

Energy Transfer's case, and Energy Transfer does not argue otherwise. Rather, Energy Transfer

merely implies that DOL or Wyderka *might* take such actions in the future, but that speculation is

insufficient to establish standing for a ripe due process claim, let alone state a claim on the merits.

*See id.* at 414 (a "speculative chain of possibilities does not establish" a "certainly impending"

injury). The Supreme Court has squarely held that simply alleging the existence of a constitutional

defect is insufficient absent a non-speculative injury to the plaintiff itself. *See Brackeen*, 599 U.S.

at 296. *See also F.T.C. v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("the expense and

annoyance of litigation is 'part of the social burden of living under government. . . . Mere litigation

expense, even substantial and unrecoupable cost, does not constitute irreparable injury." (citations

omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[T]he mere trouble and expense of

defending an administrative proceeding is insufficient to warrant judicial review of the agency's

action prior to the conclusion of the administrative proceeding." (citation omitted)).

Finally, Energy Transfer's complaint that the ALJ rejected some of its constitutional

arguments when denying its motion to dismiss (Mot. for Prelim. Inj., Dkt. No. 14, pp. 24-25) is

merely an expression of disagreement with an interlocutory agency ruling. Energy Transfer's

argument can be raised on appeal to the ARB once a final decision is reached by the ALJ in Energy

Transfer's case, and on appeal to the Fifth Circuit if Energy Transfer again is defeated. Energy

Transfer does not explain how a familiar limitation on interlocutory review deprives it of any

constitutionally protected interest. The Due Process Clause does not serve as a guarantee of

interlocutory appeal over every interim decision made during an ALJ adjudication that a party

disagrees with, particularly when Article III judicial review is available in due course, and the

PSIA itself expressly bars Energy Transfer's collateral attack. *Cf. Chauv v. SEC*, 72 F. Supp. 3d

417, 430 n.104 (2014)(citing *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009)).

### C.    Enjoining a routine administrative proceeding is not in the public interest.

Defendants, Wyderka, and the public would suffer significantly were this Court to enjoin

the ALJ proceeding. The administrative proceedings to enforce PSIA's whistleblower protections

play a critical role in maintaining public safety involving pipelines. And the harm that Plaintiffs

claim to suffer is one they have not complained about for years. Indeed, Plaintiffs have

continuously participated in the ALJ proceeding since 2023, which demonstrates that they will not

suffer irreparable harm if this Court denies their requested relief.

If the Court determines it does have jurisdiction, the balance of the harms and public

interest do not weigh in favor of Energy Transfer. The balance of harms and the public interest

"merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009),

and both factors favor Defendants. Defendants and the public would suffer significantly were this

Court to enjoin the PSIA proceeding. Wyderka's whistleblower claim has been pending for years,

and the agency and Wyderka have thus "engendered serious reliance interests that must be taken

into account." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 40 (2020).

Indeed, these administrative proceedings are the cornerstone of Congress' anti-whistleblower-

retaliation mandate in the PSIA. Enjoining them would frustrate Congress's objectives, preventing DOL from "effectuating statutes enacted by representatives of [the] people," and causing the United States to "suffer[] a form of irreparable injury" as a result. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).

This is particularly true here, where the proceedings at issue are part of a longstanding structure in effect in agencies throughout the federal government. *See Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (vacating injunction that would cause a "sea change" in federal immigration hearings); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (observing that finding ALJ tenure protections unconstitutional "would have potentially catastrophic effects . . . throughout the federal government"). Accordingly, the balance of the equities and the public interest weigh against granting Energy Transfer an injunction.

## V.    CONCLUSION

For the foregoing reasons, this case should be dismissed for lack of subject-matter jurisdiction. But if the Court reaches the merits of Energy Transfer's claims, it should enter summary judgment in Defendants' favor. Either way, Plaintiff's Motion for Preliminary Injunction should be denied.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY


*/s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas Bar No. 24055299
1100 Commerce Street, Third Floor
Dallas, TX   75242-1699
Telephone:     214-659-8600
Facsimile:      214-659-8807
Mary.cherry@usdoj.gov

*Attorneys for Defendants*
*in their official capacities*


<u>Certificate of Service</u>

On December 12, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney