**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **ENERGY TRANSFER LP,**<br>**d/b/a SUNOCO LOGISTICS, GP, LLC,** | |
| Plaintiff, | |
| v. | **Case No. 3:25-cv-01258-L** |
| **LORI CHAVEZ-DEREMER**, in her official<br>capacity as Secretary of the U.S. Department of<br>Labor, et al., | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY
INJUNCTION AND RESPONSE TO GOVERNMENT'S MOTION TO DISMISS, OR IN
THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 2

STANDARD OF REVIEW ........................................................................................................ 3

LEGAL ARGUMENT ................................................................................................................ 3

    I.    This Court has jurisdiction over the constitutional claims at issue here. ........................... 3

        A.    PSIA does not explicitly preclude district court jurisdiction. ......................................... 4

        B.    PSIA does not implicitly preclude district court jurisdiction. ......................................... 7

    II.    The Seventh Amendment Requires Article III Adjudication of Wyderka's Claims. .......... 9

        A.    Wyderka Seeks Legal Remedies Traditionally Awarded at Law. ................................. 10

        B.    Wyderka's Claims Mirror Traditional Common-Law Causes of Action. ......................11

        C.    The Public-Rights Doctrine Does Not Apply to This Proceeding Because the Claims and Remedies at Issue Involve Private Rights, Not Public Rights. ...................................... 12

    III.    The Administrative Adjudication Violates Article II, and Defendants' Removal, Review, and Severability Arguments Do Not Cure That Defect. ........................................................... 16

        A.    Defendants Do Not Dispute That DOL ALJs Exercise Executive Power, and Their Removal Arguments Fail Under Controlling Precedent. ...................................................... 16

        B.    An Ongoing Article II Violation Warrants Immediate Relief, and Severability Does Not Authorize the Proceeding to Continue ................................................................................. 17

    IV.    The Public Interest and Balance of Harms Favor Enjoining the Unconstitutional Administrative Proceeding ....................................................................................................... 21

CONCLUSION ......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABM Indus. Groups, LLC v. U.S. Dep't of Labor,*
    756 F.Supp.3d 468 (S.D. Tex. 2024) ...............................................................11, 12

*AT&T Inc. v. FCC,*
    149 F.4th 491 (5th Cir. 2025) ..........................................................................18, 19

*Axon Enter., Inc. v. FTC,*
    598 U.S. 175 (2023)........................................................................................ *passim*

*Bennett v. Corroon & Black Corp.,*
    845 F.2d 104 (5th Cir. 1988) ..................................................................................14

*Burgess v. Whang,*
    152 F.4th 579 (5th Cir. 2025) ...................................................................................7

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,*
    494 U.S. 558 (1990).................................................................................................14

*Cochran v. SEC*....................................................................................................................10

*Collins v. Yellen* ............................................................................................................21, 23

*Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020).....................................................................................................25

*DOL v. The Edgewood Co.,*
    ARB No. 2025-0017, 2025 WL 870644 (2025) ....................................................8, 9

*eBay Inc. v. MercExchange, L.L.C.* ....................................................................................23

*Free Enter. Fund v. PCAOB,*
    561 U.S. 477 (2010).....................................................................................20, 22, 24

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33 (1989)........................................................................................4, 16, 17, 18

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) ...................................................................................17

*Kinder Morgan, Inc. v. United States Dep't of Labor,*
    No. 4:25-cv-3651, 2025 WL 3635155 (S.D. Tex., December 15, 2025)
    ...............................................................................................10, 12, 19, 24, 27

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)..........................................................................................14

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ..........................................................................13

*Moore v. City of Van*,
    238 F. Supp. 2d 837 (E.D. Tex. 2003)..............................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009)..........................................................................................25

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    584 U.S. 325 (2018)..........................................................................................19

*Ortega v. Office of the Comptroller of the Currency*,
    155 F.4th 394 (5th Cir. 2025) ..........................................................................18

*SEC v. Jarkesy*,
    603 U.S. 109 (2024)............................................................................... *passim*

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020)....................................................................................20, 22

*Smith v. Glenns Ferry Highway District*,
    462 P.3d 1147 (Idaho 2020)..............................................................................14

*Space Exploration Techs. Corp. v. NLRB*,
    151 F.4th 771 (5th Cir. 2025) ....................................................20, 21, 23, 26

*Stedman v. Konover Const. Corp.*,
    No. CV-93-0457003-S, 1994 WL 715842 (Conn. Super. Ct. Dec. 6, 1994)..........................15

*Stephenson v. P.C.M.D. Management, Inc.* ..............................................................14

*Stern v. Marshall*,
    564 U.S. 484–87 (2011)..............................................................................16, 17

*Thomas v. Union Carbide*,
    473 U.S. 568 (1985)..........................................................................................19

*United States v. Arthrex, Inc.*,
    594 U.S. 1 (2021)..............................................................................................22

*Waldrop v. Southern Co. Services, Inc.*,
    24 F.3d 152 (11th Cir. 1994) ..........................................................................13

*West v. Gibson*,
    527 U.S. 212 (1999)..........................................................................................13

*Wulferic, LLC v. FDA*,
   793 F.Supp.3d 830 (N.D. Tex. 2025) ................................................................11, 12

**Statutes**

28 U.S.C. § 1331 ................................................................................6, 7, 10, 12

49 U.S.C. § 60129 ....................................................................................................7

49 U.S.C. § 60129(a) ...............................................................................................9

49 U.S.C. § 60129(b)(1) ..........................................................................................7

49 U.S.C. § 60129(b)(2)(A) ...................................................................................16

49 U.S.C. § 60129(b)(3)(A) ...................................................................................10

49 U.S.C. § 60129(b)(3)(B) ....................................................................................14

49 U.S.C. § 60129(b)(3)(B)(iii) ..............................................................................13

49 U.S.C. § 60129(b)(3)(D)(i) ...........................................................................8, 25

49 U.S.C. § 60129(b)(4)(A) .....................................................................................9

49 U.S.C. § 60129(b)(4)(B) ................................................................................9, 10

49 U.S.C. § 60129(b)(5) ...........................................................................................8

49 U.S.C. § 60129(b)(6)(A) .....................................................................................8

PSIA .............................................................................................................. *passim*

Whistleblower Act ..................................................................................................14

**Other Authorities**

29 C.F.R. § 1981.106(a)..........................................................................................16

## INTRODUCTION

This case presents a straightforward constitutional question: whether Energy Transfer may be compelled to defend itself in an administrative adjudication that violates Article II and the Seventh Amendment before any Article III Court may review those defects. Under controlling U.S. Supreme Court and Fifth Circuit precedent, the answer is no.

Initially, this Court has jurisdiction to adjudicate Energy Transfer's constitutional claims. The Pipeline Safety Improvement Act ("PSIA") does not preclude district court review of structural constitutional challenges to an administrative proceeding. The Supreme Court has held statutory review schemes do not bar district court jurisdiction where a plaintiff challenges the legality of an unconstitutional adjudicatory forum. PSIA channels review of final agency orders to courts of appeals, but it provides no mechanism for adjudicating Energy Transfer's Article II and Seventh Amendment claims, which the agency lacks authority to resolve. Courts addressing PSIA and similar statutes, including (recently) the U.S. District Court for the Southern District of Texas, have correctly held that district courts retain jurisdiction over such claims.

On the merits, injunctive relief is appropriate because the administrative adjudication violates the Seventh Amendment. The whistleblower claims at issue involve private rights and seek quintessentially legal relief, including back pay and compensatory damages. They mirror traditional common-law retaliation claims historically tried to juries. The public-rights doctrine does not apply where, as here, the Government declined enforcement, is not a party to the proceeding, and seeks no penalties payable to the Treasury. Supreme Court precedent—from *Granfinanciera* decided in 1989 through *SEC v. Jarkesy* decided in 2024—forecloses the Government's attempt to convert a private dispute into a public right merely because Congress routed it through an administrative forum.

1

In addition, the proceeding independently violates Article II. Energy Transfer is being compelled to litigate before administrative law judges who exercise executive power while being insulated from presidential removal by multiple layers of for-cause protection. Defendants do not meaningfully dispute that U.S. Department of Labor ("DOL") Administrative Law Judges ("ALJs") from the Office of Administrative Law Judges ("OALJ") exercise executive power or that they are shielded from removal. Instead, they contend that any constitutional defect is cured by agency supervision, post-hoc judicial review, or severability. Controlling precedent rejects each theory. Article II is violated immediately once a regulated party is forced to proceed before an unaccountable adjudicator and cannot be cured after the fact by appellate review or speculative severance.

Finally, the balance of harms and the public interest favor injunctive relief. There is no legitimate public interest in continuing an unconstitutional adjudication. Enjoining the OALJ proceeding does not extinguish the complainant's claims; it merely ensures that any adjudication occurs in a constitutionally valid forum. Where Energy Transfer faces an ongoing separation-of-powers injury and Defendants identify no concrete reliance interest sufficient to outweigh that harm, injunctive relief is warranted. For these reasons, the Court should deny the Government's motion to dismiss, Motion for Summary Judgement, and grant Energy Transfer's motion to enjoin the unconstitutional administrative proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2025, Energy Transfer filed this action seeking declaratory and injunctive relief to prevent the continuation of the OALJ proceeding, alleging that the administrative adjudication violates the Constitution and inflicts immediate and ongoing injury independent of any eventual merits determination. The federal defendants moved to dismiss and opposed Energy

2

Transfer's motion for preliminary injunction. Separately, on May 31, 2025, Andrew Wyderka ("Wyderka") filed a Petition for Amicus Permission, which sought "leave to file an Amicus Brief(s) relating to this proceeding." Dkt. 5.

## STANDARD OF REVIEW

Energy Transfer previously outlined the four prerequisites for preliminary injunctive relief. (*See* Mot. for Prelim. Inj., Dkt. 14, at 7-9) "The difference between the standard for a permanent injunction and the standard for a preliminary injunction is that in the former the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits." *Moore v. City of Van*, 238 F.Supp.2d 837, 852 (E.D. Tex. 2003).[1]

## LEGAL ARGUMENT[2]

### I.     This Court has jurisdiction over the constitutional claims at issue here.

The Government argues the Court must dismiss this case for lack of subject matter jurisdiction because PSIA "precludes this Court's review of Energy Transfer's claims." (Memo. at 17) While federal district courts have jurisdiction over cases "arising under" federal law, 28 U.S.C. § 1331, with respect to federal agencies, Congress can "divest[] district courts of their ordinary jurisdiction" by substituting "an alternative scheme of review" where the agency's final decision is reviewable by an Article III court of appeals. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Congress may strip a district court's jurisdiction either explicitly, by "providing in so many words that district court jurisdiction will yield," or implicitly, "by specifying a different method to resolve

---

[1] The Government has provided accurate standards of review for motions under Federal Rules of Civil Procedure 12(b)(1) and 56, so Energy Transfer does not reiterate them here.

[2] Energy Transfer incorporates the arguments in its PI Motion, which not only support its request for a preliminary injunction but also show why the Court should deny the Government's dispositive motion. (*See* Mot. for Prelim. Inj., Dkt. 14)

claims about agency action." *Id*. "The ultimate question" is "whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id*. at 186.

The Government asserts that because PSIA's "preclusion of district court jurisdiction is explicit … *Axon* does not apply." (Memo. at 19) But the Government is wrong.  As in *Axon*, the claims here allege "that some fundamental aspect of the [agency's] structure violates the Constitution; that the violation ma[kes] the entire proceeding unlawful; and that being subjected to such an illegitimate proceeding causes legal injury (independent of any rulings the ALJ might make)." 598 U.S. at 182. Because the PSIA review scheme does not reach Energy Transfer's constitutional claims challenging the nature of the proceeding, and the structure of the agency, this Court has jurisdiction to decide such claims. *Id*. at 181.

### A. PSIA does not explicitly preclude district court jurisdiction.

To determine whether a statute explicitly precludes a district court from exercising jurisdiction, courts examine whether the statute's text "expressly limits" the jurisdiction generally conferred by other statutes, such as 28 U.S.C. § 1331. *See Burgess v. Whang*, 152 F.4th 579, 585 (5th Cir. 2025). Thus, the Court "determine[s] the scope of preclusion simply by interpreting the words Congress has chosen." *Id*. (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 25 (2012) (Alito, J., dissenting)).

The words Congress used in PSIA do not "expressly limit" the Court's jurisdiction over the constitutional claims at issue here. To begin with, PSIA protects *employees* against discrimination for "whistleblowing-type" activities, 49 U.S.C. § 60129 (title) ("Protection of employees providing pipeline safety information"), and so encompasses only claims brought by "[a] person who believes that he or she has been discharged or otherwise discriminated against" in retaliation for so doing. 49 U.S.C. § 60129(b)(1). Thus, the Government is correct when it asserts that "Congress

4

required that judicial review *of DOL decisions in PSIA whistleblower cases* be channeled to an appropriate United States Court of Appeal[.]" (Memo. at 17) (emphasis added).

Accordingly, PSIA applies only to employees and provides no claim or rights whatsoever to an employer like Energy Transfer. PSIA emphasizes this point (and compounds the constitutional issues) when it provides that if the Secretary of Labor fails to issue a final decision within 210 days of an employee's complaint, "*that employee* may bring an original action at law or equity" in a district court "which shall have jurisdiction over such action without regard to the amount in controversy[.]" 49 U.S.C. § 60129(b)(3)(D)(i) (emphasis added).[3] It also allows either the Secretary of Labor or the employee on whose behalf an order was issued by the Secretary to file an action in district court "to enforce such order," 49 U.S.C. § 60129(b)(5), or "to require compliance with such order." 49 U.S.C. § 60129(b)(6)(A). Again, an employer like Energy Transfer has no such equivalent right.

Even if PSIA were not structurally limited to claims brought by employees, the administrative review scheme contemplated by PSIA does not allow either the ALJ or the review board to pass on constitutional questions. *See DOL v. The Edgewood Co.,* ARB No. 2025-0017, 2025 WL 870644 at *2 (2025) (denying request for jury trial under Seventh Amendment because of a "limitation on the Board's authority to pass on the facial constitutionality of the statues and

---

[3] Notably, in this limited circumstance PSIA protects the right to trial by jury. 49 U.S.C. § 60129(b)(3)(D)(i) ("which action shall, at the request of either party to the action, be tried by the court with a jury."). So where the Secretary of Labor fails to issue its own order, and where the employee (but not the employer) chooses to go to district court, that court will have jurisdiction and *then* either party may demand a jury. But the fundamental right to a jury does not depend on the forum, and Congress cannot so easily avoid application of the Seventh Amendment. *See SEC v. Jarkesy*, 603 U.S. 109, 127 (2024) ("Congress may not avoid a jury trial by preventing the case from being heard before an Article III tribunal.").

regulations it administers[.]"). So an employer like Energy Transfer cannot raise its constitutional concerns before the ALJ.[4]

The Government focuses on two provisions of PSIA. The first says a "person adversely affected or aggrieved by an order issued under paragraph (3) may obtain review of the order in [a] United States Court of Appeals[.]" 49 U.S.C. § 60129(b)(4)(A). The second states: "[a]n order of the Secretary of Labor with respect to which review could have been obtained under subparagraph (A) shall not be subject to judicial review…" 49 U.S.C. § 60129(b)(4)(B). Based on these two provisions, the Government declares "[b]ecause the statute explicitly and exclusively channels review of *claims involving PSIA whistleblower proceedings* to the courts of appeals and prohibits judicial review of such claims in any other proceeding, this Court need look no further to confirm its lack of jurisdiction." (Memo. at 18) (emphasis added)

But again, the only claims allowed to be appealed under PSIA are an *employee's* claims against an employer, 49 U.S.C. § 60129(a), and the administrative process forbids adjudication of the statue's constitutionality. *The Edgewood Co.,* ARB No. 2025-0017, 2025 WL 870644 at *2. Thus, when the statute provides for review of "an order issued under paragraph (3)," it provides for review of the employee's *statutory* claims brought against the employer, not for any *constitutional* claims raised by the employer.

The Government suggests that Energy Transfer's constitutional claims are "an attempt to bypass an exclusive remedial scheme established by Congress," (Memo. at 18) but in reality it is PSIA's remedial scheme that bypasses Energy Transfer's claims. And the Government is incorrect when it declares that "[t]he *claims at issue here* plainly 'could have been' reviewed by the court of

---

[4] Consistent with this limitation, Defendant ALJ Willow Fort declined to fully address Energy Transfer's constitutional challenge, consistent with the DOL's position that ALJs and the Board lack authority to adjudicate constitutional claims. (*See* Mot. for Prelim. Inj., Dkt. 14, at 4-6)

appeals in accordance with Section 60129(b)(4)(B)." (Memo. at 19) (emphasis added) Instead, the statute's text confirms that the only item reviewable by a court of appeals is "an order issued under paragraph (3)" – that is, an order issued by the Secretary of Labor.[5] 49 U.S.C. § 60129(b)(3)(A) (requiring Secretary of Labor to "issue a final order" not later than 90 days after the hearing). Accordingly, "[a]lthough the text of PSIA explicitly strips district courts of jurisdiction over claims involving an order that has been issued by [DOL], the text does not strip district courts of their jurisdiction over any other type of claim." *Kinder Morgan, Inc. v. United States Dep't of Labor*, No. 4:25-cv-3651, 2025 WL 3635155 at *3 (S.D. Tex., December 15, 2025).

In sum, nowhere does the text or structure of PSIA expressly limit the jurisdiction of a district court over the constitutional claims at issue here. Instead, because "PSIA refers only to orders that have been issued by [DOL] after a hearing on the record has been held by an ALJ … PSIA does not explicitly strip district courts of their § 1331 jurisdiction." *Id*. at *3. *See also Cochran v. SEC*, 20 F.4th 194, 200-201 (5th Cir. 2021).

**B. PSIA does not implicitly preclude district court jurisdiction.**

The Government argues only that PSIA *explicitly* precludes Energy Transfer's claims and divests this Court of its jurisdiction. (Memo. at 19) ("PSIA at issue in this case contains a separate *express* bar on this court's judicial review.") (emphasis in original). Accordingly, it fails to analyze the *Thunder Basin* factors, which it asserts "are only used to analyze implicit preclusion[.]" (*Id*.) Because Energy Transfer presents several structural challenges to the agency's adjudication, the Government's attempt to sidestep *Axon*'s reasoning should fail.

---

[5] An "order issued under paragraph (3)" is "a final order providing the relief prescribed by this paragraph or denying the complaint." 49 U.S.C. § 60129(b)(3)(A).

In fact, "if a constitutional challenge implicates the agency's authority, and if the constitutional violation would taint 'all or a broad swath of [an agency's] work,' then the claim would be like those in *Axon* and *Free Enterprise*." *Wulferic, LLC v. FDA*, 793 F.Supp.3d 830, 841 (N.D. Tex. 2025). In particular, "a Seventh Amendment challenge is necessarily a challenge to the forum in which any action is being adjudicated." *Id*. at 843. And as noted in *Wulferic*, "there are no jury trials in administrative tribunals. So, either [Energy Transfer] is entitled to a jury trial and the [DOL's] administrative proceeding must cease, or [Energy Transfer] is not entitled to a jury trial and the [DOL's] action can proceed." *Id*. Because Energy Transfer is entitled to a jury trial, it "is necessarily entitled to an Article III adjudication, and the agency adjudication must cease." *Id*. at 845. And "[b]ecause a proceeding that has already happened cannot be undone, an agency's direct review scheme should pose no independent bar to district court jurisdiction." *Id*. at 840. Finally, as *Cochran* and *Axon* demonstrate, "being subject to a proceeding before an improperly insulated ALJ is a harm separate from any substantive action taken by the ALJ." *ABM Indus. Groups, LLC v. U.S. Dep't of Labor*, 756 F.Supp.3d 468, 477–78 (S.D. Tex. 2024).

The *Thunder Basin* factors confirm that the PSIA does not implicitly strip this Court's jurisdiction over Energy Transfer's constitutional claims because: (1) precluding jurisdiction would "foreclose all meaningful judicial review"; (2) the claims are "wholly collateral to the statute's review provisions"; and (3) the claims are "outside the agency's expertise." *Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212-13).

First, if Energy Transfer is subjected to the unconstitutional ALJ hearing, "judicial review would come too late to be meaningful." *Wulferic*, 793 F.Supp.3d at 845. Second, a challenge is necessarily collateral if it contests the agency's power to proceed at all. *Axon*, 598 U.S. at 192–93. Because Energy Transfer challenges the Government's power to proceed, it is collateral. *Wulferic*,

793 F.Supp.3d at 845. Third, the constitutional claims raised here are complex questions of administrative and constitutional law, detached from consideration of agency policy. *Axon*, 598 U.S. at 186, which fall far outside the agency's expertise. *Wulferic*, 793 F.Supp.3d at 845.

Applying the *Thunder Basin* factors, the *Kinder Morgan* court recently held that PSIA "does not implicitly strip the district court of jurisdiction over … constitutional claims,", concluding "it is clear that Congress did not intend for PSIA to strip district courts of their § 1331 jurisdiction." 2025 WL 3635155 at *4. That Court went on to grant a preliminary injunction in circumstances nearly identical to those at issue here. *Id*. at *6. This Court should do the same.[6]

## II.     The Seventh Amendment Requires Article III Adjudication of Wyderka's Claims.

Defendants assert that "[a]pplication of the *Jarkesy* factors makes clear that the Seventh Amendment is not implicated in [Wyderka's] case," (Memo. at 10), but the facts and law support the contrary conclusion. "[A]ny seeming curtailment of the right [to a trial by jury] has always been and should be scrutinized with the utmost care." *Jarkesy*, 603 U.S. at 121 (internal quotation marks and citation omitted). And because "lower courts . . . [are] bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis,'" *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003), the Government read *Jarkesy* too narrowly. While *Jarkesy* considered whether the right to a jury attaches when the SEC seeks civil penalties for instances of financial fraud, the Supreme Court in no way limited its analytical framework to civil penalty recoveries. *Jarkesy*'s analysis applies here and controls the outcome of the parties' pending motions, requiring the Court to: 1) grant Plaintiff's motion for a preliminary injunction, and 2) deny the Government's Motion for Summary Judgment or in the Alternative, Motion to Dismiss.

---

[6] As for timing, even a three-year delay in filing an action (much longer than here) presented no hurdle to injunctive relief because "the government suffers no cognizable harm from stopping the perpetuation of unlawful agency action." *ABM Indus.*, 756 F.Supp.3d at 478.

The Seventh Amendment preserves the right to a jury trial in suits at common law. *See, e.g.*, *Waldrop v. Southern Co. Services, Inc.*, 24 F.3d 152 (11th Cir. 1994) ("The amendment extends the right to a jury trial to all suits where legal rights are involved, whether at common law or arising under federal legislation."), citing *Curtis v. Loether*, 415 U.S. 189, 194 (1974). To determine whether the right to a jury trial applies in a particular case, courts "consider the cause of action and the remedy it provides. Since some causes of action sound in both law and equity, [the Court] concluded that the remedy was the more important consideration." *Jarkesy*, 603 U.S. at 122–23 (internal quotation marks and citations omitted). That the claim arises under a statute is "immaterial," *id.* at 122, citing *Tull v. U.S.*, 481 U.S. 412, 414–425 (1987), and "the Seventh Amendment extends to a . . . statutory claim if the claim is 'legal in nature[.]'" *Id.*, quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989). So, the analysis turns on whether the claim is "legal in nature," not on whether the suit concerns a statute, civil rights, fair housing, or whistleblowing.

**A. Wyderka Seeks Legal Remedies Traditionally Awarded at Law.**

Addressing the "more important" factor first, the bulk of the remedies Wyderka seeks are legal in nature, which is "all but dispositive." *See Jarkesy*, 603 U.S. at 123. PSIA's remedies explicitly include "compensatory damages."[7] *See* 49 U.S.C. § 60129(b)(3)(B)(iii). Compensatory damages are not a "categor[y] of relief that w[as] *typically* available in equity[.]" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993). Wyderka also seeks money damages – "the prototypical common law remedy." *Id.*; *see also Mertens*, 508 U.S. 248 at 255 ("Petitioners …. seek ….

---

[7] *West v. Gibson*, 527 U.S. 212 (1999), cited by Defendants, does not label compensatory damages as equitable. Rather, the opinion suggests compensatory damages fall under an expanded umbrella of "appropriate" relief awardable by the EEOC under Title VII following a statutory amendment, and the decision distinguishes compensatory damages from previously available "equitable" remedies.

compensatory *damages*—monetary relief for all losses…. Money damages are, of course, the classic form of *legal* relief.") (internal citations omitted) (italics in original).

Nothing in § 60129(b)(3)(B) defines the remedies available under PSIA as "equitable." On the contrary, PSIA specifically authorizes an employee to recover "compensation" and "compensatory damages," 49 U.S.C. § 60129(b)(3)(B)(ii) and (iii), which are *monetary* claims and constitute "*legal* relief." *Mertens*, 508 U.S. 248 at 255. *See also Bennett v. Corroon & Black Corp.*, 845 F.2d 104, 106 (5th Cir. 1988) ("compensatory damages for mental anguish" were "unobtainable legal relief" under Title VII which, at the time, allowed recovery of only equitable relief).[8]

Finally, Defendants insinuate that if even some available remedies are equitable, then the right to a jury trial disappears. (*See* Memo. at 11-12). But *Chauffeurs* undermines this suggestion, finding in a "claim includ[ing] both legal and equitable issues," that "the money damages respondents seek are the type of relief traditionally awarded by courts of law," i.e., "backpay" that was "legal in nature." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 573 (1990). Based on the above, Energy Transfer satisfies the "more important" prong of the Seventh Amendment analysis.

## B. Wyderka's Claims Mirror Traditional Common-Law Causes of Action.

Wyderka alleges he suffered an adverse action in response to protected activity, a claim resembling common-law torts, wrongful discharge, and breach of employment contract. (*See* Memo. at 13-14) While not identical, "the close relationship" between Wyderka's claim and

---

[8] *Accord Stephenson v. P.C.M.D. Management, Inc.*, Appellate Case No. 2006-CA-000461, 2006 WL 3422573 (Fla. Cir. Ct. Nov. 16, 2006). Engaging in an analysis concordant with *Jarkesy's*, *Stephenson* held an employee's whistleblower claim aligned with common law actions and determined compensatory damages, like awarding back pay, constituted a legal remedy implicating the right to a jury trial.[8] *See id.* at *2-3; *see also Smith v. Glenns Ferry Highway District*, 462 P.3d 1147, 1158 (Idaho 2020) ("[D]amages in actions under the [Idaho] Whistleblower Act are sufficiently analogous to breach of contract damages, which were recognized as an issue for jury trial under the territorial statutes.").

common law tort and contract claims "confirms that [his] action is legal in nature." *Jarkesy*, 630 U.S. at 125-126. The jury trial right "is not limited to the common-law forms of action recognized when the Seventh Amendment was ratified…. The Amendment …. embraces all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Id.* at 122 (internal quotation marks and citations omitted) (cleaned up).

The Government acknowledges "[w]rongful discharge would appear to be the most appropriate analogue" and questions how breach of contract applies to at-will employment. (Memo. at 13) But the doctrine of at-will employment lacks deep roots in common law. Rather, English law tended toward requiring cause to terminate the employment relationship. *Stedman v. Konover Const. Corp.*, No. CV-93-0457003-S, 1994 WL 715842, at *3-4 (Conn. Super. Ct. Dec. 6, 1994) ("[T]he English rule allowing a discharged employee to maintain a wrongful termination action against his employer was the predominant American rule throughout the eighteenth century[.]"). Accordingly, Energy Transfer satisfies both prongs of the Seventh Amendment test which establish its right to a jury trial.

### C. The Public-Rights Doctrine Does Not Apply to This Proceeding Because the Claims and Remedies at Issue Involve Private Rights, Not Public Rights.

Defendants next contend that, even if the Seventh Amendment framework applies, the whistleblower claims at issue fall within the "public-rights" doctrine and therefore may be adjudicated outside an Article III court. (Memo. at 15–20). The public-rights doctrine is a narrow exception that turns on the nature of the claim and the relief sought, not on where Congress assigns adjudication.[9] *Jarkesy*, 603 U.S. at 131–134; *see Granfinanciera*, 492 U.S. at 51–55 (Congress

---

[9] The Government's reliance on the longevity of administrative adjudication fares no better. Historical agency practice cannot displace Article III or the Seventh Amendment where a claim involves private rights and legal remedies; constitutional limits do not yield to "tradition" once the nature of the right is properly identified. *See Jarkesy*, 603 U.S. at 135–36.

may not evade Article III or the Seventh Amendment by re-labeling private rights as public rights or by routing them through agency adjudication.). The nature of the claim and the relief sought must be "integrally related to particular federal government action" or involve the Government acting in its sovereign capacity. *Stern v. Marshall*, 564 U.S. at 490–91 (2011).

The OALJ proceeding in this case does not involve a public right for a threshold reason: the Government is not vindicating any sovereign enforcement interest. OSHA investigated the complaint and dismissed it. The case exists solely because Wyderka exercised a statutory right to object to that dismissal and seek *de novo* review before an ALJ. *See* 49 U.S.C. § 60129(b)(2)(A); 29 C.F.R. § 1981.106(a). DOL elected not to participate as a party, leaving the matter to proceed exclusively between private litigants. (*See* Mot. for Prelim. Inj., Dkt. 14, at 4)

Where the Government has declined enforcement, does not seek penalties payable to the Treasury, and does not act as prosecutor or regulator, the dispute concerns private rights that must be adjudicated by an Article III court. *Jarkesy*, 603 U.S. at 132–36 (2024); *Stern*, 564 U.S. at 484, 490–95; *Granfinanciera*, 492 U.S. at 51–56, 61–62. That PSIA permits a private complainant to continue the case after the Government declines enforcement only underscores that the proceeding no longer serves any sovereign function.

This proceeding concerns alleged employment retaliation and seeks individualized relief, including back pay and compensatory damages to a private party. Defendants base their attempt to characterize these claims as "public" based on their statutory origin or administrative placement, which ignores the constitutional limits articulated in *Granfinanciera*, *Stern*, and *Jarkesy*.

The Supreme Court held in *Granfinanciera* that Congress may not withdraw from Article III courts the adjudication of disputes that are private in nature and seek legal relief, even where those claims arise under federal statute or are assigned to a non-Article III forum. *Id*. at 51–55, 61–

13

62. Where, as here, the relief sought includes individualized monetary remedies traditionally awarded at law, the Seventh Amendment jury-trial right attaches notwithstanding Congress's choice of forum. *Id.* The Supreme Court's decision in *Jarkesy* reinforces this conclusion, holding that the public-rights exception does not apply even when a federal agency is the prosecuting party and emphasizing that "what matters is the substance of the action, not where Congress has assigned it." *Jarkesy*, 603 U.S. at 134. If claims prosecuted directly by a federal agency fall outside the public-rights exception when they seek legal remedies and resemble traditional actions at law, then *a fortiori* claims pursued solely by a private complainant after the Government has declined enforcement likewise fall outside that exception. *See Jarkesy v. SEC*, 34 F.4th 446, 457–59 (5th Cir. 2022).

Defendants argue that PSIA whistleblower claims fall within the public-rights exception because they are "novel" and "closely integrated into a public regulatory scheme." (Memo. at 17). But, the cases on which Defendants rely do not support application of the public-rights doctrine here. The nonbinding whistleblower decisions the Government cites (Memo. at 18) rest primarily on the perceived closeness of whistleblower provisions to underlying regulatory schemes, rather than on the constitutional distinction between public and private rights that governs the Article III and Seventh Amendment analysis. But *Jarkesy* forecloses that approach, holding that regulatory integration alone does not convert private, legal claims into public rights. *Jarkesy*, 603 U.S. at 134. Consistent with that principle, the Fifth Circuit has emphasized that the public-rights exception is narrow and presumptively inapplicable to suits at common law, and cannot be expanded based solely on statutory placement within an administrative scheme. *AT&T Inc. v. FCC*, 149 F.4th 491, 500–02 (5th Cir. 2025). Accordingly, the nonbinding authorities on which Defendants rely do not control the analysis in this case.

Defendants also rely on a collection of cases addressing sovereign enforcement, public franchises, or participation in specialized regulatory programs—none of which authorize treating private PSIA retaliation claims as public rights. *Atlas Roofing* involved classic sovereign enforcement: the Government prosecuted OSHA violations, sought civil penalties payable to the Treasury, and acted squarely as regulator and enforcer. 430 U.S. 442, 450–55 (1977). As the Supreme Court has since explained, *Atlas Roofing* represented a limited departure from traditional public-rights doctrine and has been substantially narrowed by later decisions, including *Granfinanciera*. *See Jarkesy*, 603 U.S. at 136 n.3, 138 n.4. In any event, PSIA retaliation claims bear no resemblance to the detailed regulatory enforcement scheme at issue in *Atlas Roofing* and instead mirror traditional private disputes between employer and employee.

The other cases the Government cites in support of the application of the public rights doctrine are factually distinguishable and inapposite because they treat regulatory context as dispositive, an approach the Fifth Circuit has since rejected. *Ortega v. Office of the Comptroller of the Currency,* 155 F.4th 394, 406–11 (5th Cir. 2025) (involving enforcement within a historically exclusive federal banking regime which is "entirely a creature of federal law" and subject to longstanding political-branch control); *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 336–37 (2018) (addressing administrative reconsideration of patents as public franchises and expressly limiting the holding to that narrow context); *Thomas v. Union Carbide*, 473 U.S. 568, 584–90 (1985) (upholding a specialized statutory compensation scheme among regulated entities participating in a congressionally created program that Congress could have resolved without adjudication).

In *AT&T Inc. v. FCC*, the Fifth Circuit rejected the argument that regulatory context alone converts private disputes into public rights, warning that such a theory would "blow a hole" in the

narrow public-rights exception to Article III. 149 F.4th 491, 500–02 (5th Cir. 2025), cert. granted (Jan. 9, 2026) (quoting *Jarkesy*, 603 U.S. at 135). As *AT&T* reaffirmed, the public-rights inquiry turns on the nature of the claim and the relief sought, not the mere fact that a claim arises within a regulated industry or statutory scheme. 149 F.4th 491, 500–02 (5th Cir. 2025). PSIA retaliation claims adjudicate private liability and seek legal relief between private parties and therefore cannot be converted into public rights based solely on their placement within an administrative framework. A recent decision from this circuit reached the same conclusion, holding that PSIA retaliation claims fall outside the public-rights exception where, as here, the Government declines enforcement and the proceeding adjudicates private liability and legal relief between private parties. Also s*ee Kinder Morgan*, 2025 WL 3635155 at *17-*18.

### III. The Administrative Adjudication Violates Article II, and Defendants' Removal, Review, and Severability Arguments Do Not Cure That Defect.

Defendants do not meaningfully dispute that ALJs exercise executive power or that they are subject to dual for-cause removal protections. (*See* Memo. at 19-23) Instead, Defendants contend that agency supervision, post-hoc judicial review, or severability can cure the defect. Each of those arguments fails as a matter of law.

#### A. Defendants Do Not Dispute That DOL ALJs Exercise Executive Power, and Their Removal Arguments Fail Under Controlling Precedent.

DOL ALJs exercise core executive adjudicatory authority by presiding over adversarial enforcement proceedings, making binding factual and legal determinations, and issuing decisions with legal consequences for private parties. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 492–98 (2010); *Seila Law LLC v. CFPB*, 591 U.S. 197, 204–05 (2020). Those officers are insulated from presidential control by multiple layers of for-cause removal protection, preventing the President from ensuring that executive power is exercised consistent with his constitutional responsibilities. *Free Enter. Fund*, 561 U.S. at 497–98; *Seila Law*, 591 U.S. at 211–12.

The Government argues that any Article II concern should be addressed through severance and internal agency supervision and review, rather than by halting the ongoing administrative adjudication. *See* Defs.' Mem. at 20–21. That position assumes, rather than disputes, that DOL ALJs exercise executive authority. But Article II secures democratic accountability through presidential removal, not after-the-fact oversight. *See*, e.g., *Free Enter. Fund*, 561 U.S. at 496–99; *Seila Law*, 591 U.S. at 224. As the Fifth Circuit recently confirmed, compelling a regulated party to proceed before ALJs protected by multiple layers of for-cause removal inflicts a present Article II injury, regardless of agency supervision or eventual review. *See Space Exploration Techs. Corp. v. NLRB,* 151 F.4th 761, 771-773, 778-81, (5th Cir. 2025) ("*SpaceX*").

The Government's effort to discount *SpaceX* misunderstands its holding. (Def. Br. 8–9). *SpaceX* did not turn on features unique to the NLRA; it turned on the constitutional principle that compelling a regulated party to submit to adjudication before officers insulated from presidential removal inflicts a present Article II injury. 151 F.4th at 779–81. That injury arises from the proceeding itself and is not cured by agency supervision, subsequent judicial review, or the speculative availability of severance. *See also Id.* at 773.

Nor can the Government plausibly recharacterize *SpaceX* as limited or distinguishable. The Fifth Circuit expressly grounded its analysis in *Axon*, *Free Enterprise Fund*, and *Seila*, Supreme Court precedent holding that Article II accountability is secured through presidential removal, not through internal supervision or post-hoc review. *SpaceX*, 151 F.4th at 779-81.

## B. An Ongoing Article II Violation Warrants Immediate Relief, and Severability Does Not Authorize the Proceeding to Continue

Defendants' contention that Energy Transfer must wait for a final agency decision before asserting its constitutional claims, including its Article II claim, is foreclosed by controlling precedent. Structural constitutional injuries arise "here and now" when a party is forced to submit

to an unconstitutional adjudicatory forum. *Axon*, 598 U.S. at 191–92. The injury is the proceeding itself, not its outcome. *SpaceX*, 151 F.4th at 771, 779-81.

Defendants' reliance on *Collins v. Yellen* does not require a different result. Collins addressed retrospective relief from completed agency action; it did not authorize courts to permit ongoing unconstitutional proceedings to continue. 594 U.S. 220, 250–52, 258-60 (2021). As the Fifth Circuit explained in *SpaceX*, Article II does not tolerate the idea of process first, Constitution later adjudication. 151 F.4th at 771, 779-81. Accordingly, this Court may, and should, address Energy Transfer's constitutional injury and the constitutionality of the proceeding now.

Defendants further argue that even if the Court identifies an Article II defect in the administrative adjudication, the proper remedy would be severance of the challenged removal protections rather than injunctive relief halting the proceeding. That argument mischaracterizes both the severability cases on which Defendants rely and the nature of the constitutional injury at issue.

Defendants' severability argument fails for the additional reason that they never identify what statutory provision would be severed, how severance would operate in practice, or how it would restore presidential control over DOL ALJs in real time. Severability is not a free-floating concept; it requires a concrete showing that excising a specific provision would immediately cure the constitutional defect. Defendants make no such showing here because there is no discrete statutory provision whose severance would restore presidential control over DOL ALJs while this proceeding is ongoing.[10]

---

[10] Defendants' severability argument also fails as a practical matter. The Article II defect Energy Transfer challenges does not arise from a single, discrete statutory provision that can simply be excised. Rather, it arises from the interaction of multiple statutory and regulatory provisions that together insulate DOL administrative law judges from presidential control. Defendants do not explain how severance could be implemented mid-proceeding without fundamentally altering the adjudicatory framework Congress enacted. In the absence of any workable severance mechanism capable of curing the constitutional defect in real time, severability offers no basis to permit this proceeding to continue.

The Supreme Court's severability decisions, including *Free Enterprise Fund*, *Seila Law*, *Barr*, and *Arthrex*, addressed the remedial question of how to cure a structural constitutional defect once judicial review was properly before the Court. None held that the Government may continue to subject a regulated party to an unconstitutional adjudicatory forum merely because a severance remedy might later be available. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 508–09 (2010); *Seila Law LLC v. CFPB*, 591 U.S. 197, 232–38 (2020); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625–30 (2020); and *United States v. Arthrex, Inc.*, 594 U.S. 1, 23–25 (2021).

In *Free Enterprise Fund*, the Court severed removal protections after concluding that the PCAOB's structure violated Article II, but it did not suggest that regulated parties must continue to appear before unconstitutionally insulated officers pending judicial repair. *Free Enter. Fund*, 561 U.S. at 508–09. Likewise, *Seila Law* and *Barr* concerned how to preserve the remainder of a statute after identifying an unconstitutional provision, not whether an ongoing enforcement action could proceed while the constitutional defect persisted. *Seila Law*, 591 U.S. at 232–38; *Barr*, 591 U.S. at 625–30. *Arthrex* similarly addressed how to restructure executive authority to ensure accountability, not whether a party could be compelled to endure an unconstitutional adjudication in the meantime. *Arthrex*, 594 U.S. at 23–25. Critically, none of these cases involved a plaintiff seeking prospective relief from an ongoing administrative proceeding on the ground that the proceeding itself was constitutionally infirm, making them distinguishable to this case on this point.

On the other hand, the Supreme Court resolved that question in *Axon*, holding that a structural separation-of-powers injury arises "here and now" when a party is forced to submit to an unconstitutional adjudicatory forum. The injury is the process itself, not the ultimate outcome,

and it is not cured by the prospect of post-hoc judicial review or downstream remedies. *See Axon*, 598 U.S. at 191–92.

The Fifth Circuit's decision in *SpaceX* applies that principle directly. Although the court acknowledged that severance may be considered at the merits stage, it squarely rejected the argument that the mere availability of severance forecloses preliminary injunctive relief. 151 F.4[th] at 773, 781. The constitutional harm, the court explained, is the compelled submission to adjudicators who exercise executive power while insulated from presidential removal, not the final disposition of the case. *Id.* at 771, 779–81.

Defendants' reliance on *Collins* is misplaced for the same reason. *Collins* addressed retrospective relief from completed agency action and whether past decisions must be set aside solely because an officer enjoyed unconstitutional removal protection. 594 U.S. at 250–52. It did not authorize courts to permit an ongoing unconstitutional proceeding to continue, nor did it condition prospective relief on proof that the President attempted to remove the officer. *Id.* at 258–60. As *Axon* and *SpaceX* demonstrate, those remedial limitations have no application where a plaintiff seeks to prevent a present and ongoing Article II violation.

Nor does *eBay Inc. v. MercExchange, L.L.C.* alter the analysis. *eBay* concerns the equitable standard for permanent injunctions following a merits determination in patent cases. 547 U.S. 388, 391 (2006) (addressing patent remedies, not structural constitutional violations). Nothing in *eBay* limits a court's authority to enjoin unconstitutional proceedings, nor does it undermine the rule that structural constitutional violations inflict irreparable harm. *See Axon*, 598 U.S. at 191–92.

District courts applying the precedent set forth in *Axon* and *SpaceX* have reached the same conclusion. Most recently, in *Kinder Morgan, Inc.*, the court rejected the argument that severability alone precludes injunctive relief and held that compelling a party to proceed before

unconstitutionally insulated ALJs inflicts a present Article II injury warranting judicial intervention. *See* 2025 WL 3635155 at *15-*18.

In short, because the Article II violation is present and ongoing, severability does not authorize the Government to continue the unconstitutional adjudication. Where, as here, Energy Transfer is being compelled to defend itself before adjudicators who exercise executive power while shielded from presidential removal, Article II requires that the proceeding be halted. *SpaceX*, 151 F.4th at 780–81; *Axon*, 598 U.S. at 191–92. Severability, therefore, offers no relief to the ongoing Article II violation at issue here and provides no basis for denying injunctive relief.

## IV. The Public Interest and Balance of Harms Favor Enjoining the Unconstitutional Administrative Proceeding.

Defendants contend that enjoining the OALJ proceeding would disserve the public interest and upset settled reliance interests. That argument rests on a fundamental misunderstanding of both the relief Energy Transfer seeks and the nature of the constitutional injury at issue.

There is no legitimate public interest in compelling a regulated party to participate in an adjudicatory process that violates the Constitution; to the contrary, the public has a strong interest in ensuring that executive power is exercised in conformity with Article II. *See Axon*, 598 U.S. at 191–92 (recognizing immediate harm from unconstitutional proceedings); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 497–98 (2010) (constitutional accountability is essential to legitimacy); *Nken v. Holder*, 556 U.S. 418, 435–436 (2009). Where an adjudicatory forum is structurally defective, allowing it to proceed undermines, rather than advances, the rule of law.

Because structural constitutional injuries arise "here and now," the public interest demands that litigants be spared from ongoing unconstitutional proceedings. *Axon*, 598 U.S. at 191–92. The injury is the proceeding itself, not merely its ultimate outcome. *SpaceX*, 151 F.4th at 779-81 (holding that compelling a regulated party to participate in adjudication before ALJs insulated from

presidential removal inflicts a present and ongoing Article II injury). Accordingly, once a structural defect is identified, the public interest favors halting the unconstitutional proceeding, not permitting the Executive Branch to proceed first and address constitutional violations later.

Defendants' citation to *Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020), does not alter that analysis. *Regents* addressed whether an agency acted arbitrarily and capriciously under the APA when rescinding a policy, and whether it adequately considered reliance interests engendered by that policy. *Id*. at 30–31. This case involves no rescission of agency policy and no APA challenge, but whether an ongoing adjudication violates Article II. *Regents* has no application to that inquiry.

Even if reliance interests were relevant, Defendants have not identified any legitimate reliance that would outweigh Energy Transfer's constitutional rights. The Government declined to pursue enforcement and elected not to participate as a party in the OALJ proceeding. And Wyderka retained the unilateral statutory right to remove his case to federal court at any time, eliminating any reasonable expectation that the administrative proceeding would continue to conclusion. *See* 49 U.S.C. § 60129(b)(3)(D)(i). Where neither the Government nor the complainant can plausibly claim a settled expectation in the continuation of an unconstitutional forum, there is no reliance interest sufficient to overcome a present separation-of-powers violation.

Defendants also suggest that Energy Transfer's prior participation in the OALJ proceeding weighs against injunctive relief. That argument is foreclosed by precedent.[11] Courts do not excuse ongoing constitutional violations simply because a party initially complied with an unlawful process before seeking relief. As *Axon* and *SpaceX* confirm, a regulated party need not "bet the

---

[11] Energy Transfer pursued its constitutional claims promptly after controlling precedent clarified that district courts have jurisdiction to hear such challenges and that structural constitutional injuries arise from the proceeding itself, not from its ultimate outcome. *See* Mot. for Prelim. Inj., Dkt. 14, at 4-6.

farm" or endure an unconstitutional adjudication to its conclusion before seeking judicial intervention. *See Axon*, 598 U.S. at 191–92; *SpaceX*, 151 F.4th at 773, 780-81. The Constitution does not permit a "process-first, Constitution-later" approach to executive adjudication.

The balance of harms likewise favors injunctive relief. Energy Transfer faces ongoing constitutional injury each day it is compelled to litigate before adjudicators who exercise executive power while insulated from presidential removal.[12] That injury cannot be remedied by post-hoc review or speculative severance. By contrast, Defendants identify no comparable harm from pausing an unconstitutional proceeding. Enjoining the OALJ process does not extinguish the complainant's claims; it merely ensures that any adjudication proceeds in a constitutionally valid forum.

Finally, the public interest favors prompt judicial intervention to address structural constitutional defects. Separation-of-powers violations are not technicalities; they go to the legitimacy of the adjudicatory process itself. Allowing such proceedings to continue erodes democratic accountability and public confidence in the administration of justice. Accordingly, the public interest and balance of harms support enjoining the unconstitutional OALJ proceeding. That conclusion accords with the reasoning of other courts confronting materially identical circumstances. *See Kinder Morgan.,* 2025 WL 3635155, at *16-*18 (public interest and balance

---

[12] Defendants notably do not respond to Energy Transfer's related argument that the OALJ proceeding lacks core Article III adjudicatory safeguards, including application of the Federal Rules of Evidence and other procedural protections that ordinarily govern judicial trials. See Mot. for Prelim. Inj., Dkt. 14 at 22-25. That omission underscores the nature of the injury Energy Transfer identifies here: not disagreement with any interlocutory ruling, but compelled participation in an adjudicatory forum that departs from constitutionally prescribed structures and protections. The resulting harm is not abstract. In this proceeding, Energy Transfer has been required to incur additional time and expense responding to procedurally defective filings by a pro se complainant, including filing a motion to strike submissions that did not comply with the OALJ's rules, after which the complainant was permitted to cure and refile through amended submissions. Energy Transfer does not raise these circumstances as an independent due-process claim or seek review of interlocutory rulings; they instead illustrate the concrete, ongoing burdens imposed by being forced to litigate in an unconstitutional forum, burdens that cannot be undone or remedied through post-hoc review once incurred.

of harms favored enjoining an ongoing PSIA administrative proceeding that subjected employer to a structurally unconstitutional adjudicatory forum).

## CONCLUSION

The Government's position would require Energy Transfer to endure a deprivation of constitutional rights that no later order could remedy. To prevent that irreparable harm, the Court should enjoin the OALJ proceeding and deny the Government's dispositive motion. Because the constitutional violations arise from the proceeding itself, relief must come now, before those rights are lost.

Date: January 30, 2026

Respectfully submitted,


/s/ *Kara M. Maciel*
**Kara Maciel, Esq.**
District of Columbia Bar No. 477363
kmaciel@connmaciel.com
**Mark H. Ishu, Esq.**
Illinois State Bar No. 6296803
mishu@connmaciel.com
Conn Maciel Carey LLP
5335 Wisconsin Avenue, NW, Suite 660
Washington, D.C. 20015
*Lead Counsel for Plaintiff Energy Transfer*


**Jessica Renee Brown**
Texas State Bar No. 24048975
Jessica@KJPartners.law
KJ Partners LLP
4849 Greenville Ave., Ste. 100-170
Dallas, Texas 75206
Tel: (469) 586-6881
Local Counsel for Plaintiff Energy Transfer

24

**<u>CERTIFICATE OF SERVICE</u>**

On January 30th , 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Kara M. Maciel*_____
**Kara Maciel, Esq.**

25