IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

| | |
|---|---|
| ENERGY TRANSFER LP, doing business as SUNOCO LOGISTICS GP LLC, <br><br>     Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR, LORI CHAVEZ-DEREMER, in her official capacity as Secretary of the United States Department of Labor, WILLOW FORT, in her official capacity as an Administrative Law Judge of the United States Department of Labor, and THE OFFICE OF ADMINISTRATIVE LAW JUDGES OF THE UNITED STATES DEPARTMENT OF LABOR, <br><br>     Defendants. | Civil Action No. 3:25-CV-01258-L |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, MOTION TO DISMISS**

i

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY ............................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    THE PSIA PRECLUDES DISTRICT COURT JURISDICTION OVER ENERGY
      TRANSFER'S CLAIMS ................................................................................... 2

      A.    Energy Transfer's Claims Are Explicitly Precluded ............................. 2

      B.    Energy Transfer Improperly Focuses on Implicit Jurisdiction .............. 5

II.   THE SEVENTH AMENDMENT DOES NOT REQUIRE ARTICLE III
      ADJUDICATION OF WYDERKA'S CLAIMS ................................................ 6

      A.    Energy Transfer Mischaracterizes the Equitable Legal Remedies That Wyderka
            Seeks ................................................................................... 6

      B.    Wyderka's Claims Are Not Analogous to Traditional Common-Law Causes of
            Action .................................................................................. 8

      C.    The Public Rights Exception Applies to the Adjudication of PSIA Claims ........... 9

III.  IF THIS COURT REACHES THE ARTICLE II REMOVAL PROTECTION CLAIM,
      IT SHOULD SEVER THE UNCONSTITUTIONAL PROVISION .............................. 13

CONCLUSION ........................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................. 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T, Inc. v. FCC*,
  149 F.4th 491 (5th Cir. 2025) ................................................................................. 12, 13

*Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*,
  430 U.S. 442 (1977) .................................................................................... 10, 12, 13

*Axon Enterprise, Inc. v. FTC*,
  598 U.S. 175 (2023) ...................................................................................................... 6

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
  591 U.S. 610 (2020) ............................................................................................... 13, 14

*Blankenship v. Fin. Indus. Regulatory Auth.*,
  2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) ............................................................... 5

*Bosse v. Oklahoma*,
  580 U.S. 1 (2016) ........................................................................................................ 10

*Brock v. Roadway Exp., Inc.*,
  481 U.S. 252 (1987) .................................................................................................... 11

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*,
  494 U.S. 558 (1990) ...................................................................................................... 7

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) ........................................................................................ 6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ............................................................................................... 13, 14

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) ................................................................................................. 10, 11

*In the Matter of: Adm'r Wage & Hour Div., v. The Edgewood Co.*, ARB No. 2025-0017,
  2025 WL 870644 (ARB Feb. 28, 2025) ....................................................................... 4

*Island Creek Coal Co. v. Bryan*,
  937 F.3d 738 (6th Cir. 2019) ....................................................................................... 4

*Kinder Morgan, Inc. v. United States Dep't of Labor*,
  2025 WL 3635155 (S.D. Tex. 2025) ..................................................................... 13, 15

**Cases – Continued:**

*Lawson v. FMR LLC*,
571 U.S. 429 (2014) ................................................................................................... 10

*Marshall Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*,
923 F.3d 192 (D.C. Cir. 2019)..................................................................................... 5

*Massachusetts Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) ..................................................................................................... 7

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ..................................................................................................... 7

*Millsap v. McDonnell Douglas Corp.*,
368 F.3d 1246 (10th Cir. 2004) .................................................................................. 7

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
584 U.S. 325 (2018) ................................................................................................... 12

*Ortega v. Off. of the Comptroller of the Currency*,
155 F.4th 394 (5th Cir. 2025) ................................................................................... 12

*Schmidt v. Levi Strauss & Co.*,
621 F. Supp. 2d 796 (N.D. Cal. 2008).................................................................... 11

*SEC v. Jarkesy*,
603 U.S. 109 (2024) .............................................................................................Passim

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020) ............................................................................................. 13, 14

*Stedman v. Konover Const. Corp.*,
No. CV-93-0457003-S, 1994 WL 715842 (Conn. Super. Ct. Dec. 6, 1994) ............................ 8

*Thomas v. Union Carbide Agri. Prods. Co.*,
473 U.S. 568 (1985) ............................................................................................. 10, 12

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ..................................................................................................... 6

*Tull v. United States*,
481 U.S. 412 (1987) ..................................................................................................... 6

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ................................................................................................. 13, 14

iv

**Cases – Continued:**

*West v. Gibson*,
   527 U.S. 212 (1999) ............................................................................................ 7

*Yellow Freight Sys., Inc. v. Martin*,
   983 F.2d 1195 (2d Cir. 1993) .......................................................................... 11

**Statutes**

5 U.S.C. § 7521.......................................................................................... 14, 15

Federal Trade Commission Act,
   15 U.S.C. § 45 .................................................................................................. 6

Securities Exchange Act,
   15 U.S.C. § 78y ................................................................................................. 6

18 U.S.C. § 1514A ................................................................................................ 11

Title VII of the Civil Rights Act of 1964,
   42 U.S.C. § 2000e–5(g)(1) .............................................................................. 8

Surface Transportation Assistance Act of 1982
   49 U.S.C. § 31105 ........................................................................................... 11

49 U.S.C. § 60129(a) .............................................................................................. 4
49 U.S.C. § 60129(b)(3)(B) ................................................................................. 7, 8
49 U.S.C. § 60129(b)(3)(D)(i) ............................................................................... 3
49 U.S.C. § 60129(b)(4)(A) .................................................................................... 3
49 U.S.C. § 60129(b)(4)(A)-(B) ............................................................................. 5
49 U.S.C. § 60129(b)(4)(B) ................................................................................ 2, 6
49 U.S.C. § 60129(b)(5) .......................................................................................... 4

**Other Authorities**

*Employment Discharge: Survey and Critique of the Modern At Will Rule*,
   51 UMKC L. Rev. 189 (1983)............................................................................ 9

*Wrongful Discharge: Historical Evolution, Current Developments, and
      a Proposed Legislative Solution*,
         28 San Diego L. Rev. 117 (1991) .............................................................. 9

## SUMMARY

Plaintiff Energy Transfer LP's former employee, Andrew Wyderka ("Wyderka"), filed a whistleblower claim against Energy Transfer that is pending in administrative proceedings before the Department of Labor ("DOL"). In this action, Energy Transfer seeks to enjoin the administrative proceedings. The DOL defendants responded to Energy Transfer's Motion for Preliminary Injunction and concurrently filed a motion for summary judgment, or in the alternative, a motion to dismiss. Energy Transfer's combined reply and response brief is saturated with confused and unpersuasive arguments. As a threshold matter, its claims in this Court should be dismissed for lack of subject matter jurisdiction based on the plain language of the Pipeline Safety Improvement Act ("PSIA") whistleblower provision, which expressly bars district court jurisdiction and channels review of relevant agency action in the underlying administrative proceedings to the U.S. Courts of Appeals. Energy Transfer's opposition ignores the text of the statute and instead attempts to distract this Court with inaccurate assertions that various provisions of the PSIA deprive it, as an employer, of any rights under that statute.

Even if this Court concludes it has jurisdiction, DOL is entitled to summary judgment because its adjudication of Wyderka's PSIA whistleblower claim does not implicate the Seventh Amendment or Article III. First, Wyderka seeks relief that is equitable in nature because it is part of the PSIA whistleblower provision's comprehensive scheme intended to make a complainant whole. Second, Energy Transfer has not shown (and could not show) that a PSIA whistleblower proceeding is analogous to a claim under 18th century English common law. Finally, administrative adjudication of Wyderka's PSIA claim is consistent with the public rights exception to the Seventh Amendment and Article III. Accordingly, this is the type of scheme Congress may (and did) assign to administrative adjudication without raising constitutional concerns.

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss**      **1**

If the Court reaches Energy Transfer's Article II removal protection claim, it should sever the unconstitutional ALJ removal protections. Energy Transfer's arguments against severance defy precedent. Moreover, Energy Transfer failed to prove its entitlement to a permanent injunction because severance is available.

This Court should dismiss the Complaint in its entirety or grant summary judgment to DOL on all counts.

**ARGUMENT[1]**

## I.    THE PSIA PRECLUDES DISTRICT COURT JURISDICTION OVER ENERGY TRANSFER'S CLAIMS.

### A.    Energy Transfer's Claims Are Explicitly Precluded.

The PSIA explicitly precludes district court jurisdiction over Energy Transfer's claims. Energy Transfer attempts to avoid the PSIA whistleblower provision's express restriction on collateral attacks by quibbling with its statutory language. Pl. Resp., Dkt. No. 24, pp. 4-7. But the relevant jurisdiction-stripping provision, titled "Limitation on collateral attack," states that "[a]n order of the Secretary of Labor with respect to which review *could* have been obtained under subparagraph (A) [providing for review in a federal court of appeals] *shall not* be subject to judicial review in any criminal or other civil proceeding." 49 U.S.C. § 60129(b)(4)(B) (emphasis added). That provision governs this case, because Energy Transfer's claims are plainly ones which "*could* have been" reviewed by the court of appeals in accordance with Section 60129(b)(4)(B), had Energy Transfer advanced the claims through the administrative process to an order of the Secretary instead of attempting to short-circuit the proceedings before their completion.

Where Energy Transfer engages with the plain text of the collateral attack provision, it

---

[1] Defendants incorporate the arguments in their Motion for Summary Judgment and Response to Plaintiff's Motion for Preliminary Injunction. See DOL Mot., Dkt. No. 21.

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss    2**

gets the analysis backwards. It argues that "nowhere does the text or structure of PSIA expressly limit the jurisdiction of a district over the constitutional claims at issue here." Pl. Resp. Dkt. No. 24, p. 7. This Court, however, should draw the opposite conclusion from the statutory silence on constitutional claims because the collateral-attack provision makes no distinction between non-constitutional and constitutional collateral attacks. As long as the constitutional claim could be litigated through direct review in the Court of Appeals—which it can (*see infra*)—then no jurisdiction exists under the plain text of the statute for this court to hear such an attack.

Energy Transfer's argument about explicit preclusion seems to be based largely on a mistaken understanding about alleged unfairness in the PSIA's administrative adjudication process. Energy Transfer asserts that because the relevant portion of the PSIA protects only whistleblowers, it "provides no claim or rights whatsoever to an employer like Energy Transfer," and that the only claims that the PSIA permits to be appealed are an employee's claim against an employer. Pl. Resp., Dkt. No. 24, p. 5. While it is correct that employees, not employers, are necessarily the alleged PSIA whistleblowers, this does not mean that it does not afford rights, including due process rights, to employers.[2]  Energy Transfer's assertion to the contrary is simply inaccurate. Energy Transfer has exercised its rights in the administrative process through discovery, depositions, and motions for summary judgment. And if the administrative process results in a decision adverse to Energy Transfer, the statute explicitly gives Energy Transfer the right to appeal that decision to a federal court of appeals. 49 U.S.C. § 60129(b)(4)(A) (providing that "[*a*]*ny person* adversely affected or aggrieved by" an agency order may appeal that order to a court of appeals (emphasis added)).

---

[2]  As detailed in DOL's Opening Brief, Energy Transfer does not have a legitimate due process challenge. *See* DOL Mot., Dkt. No. 21, p. 29. To prevail on a procedural due process claim, Energy Transfer must meet three factors (a cognizable liberty or property interest, the deprivation of that interest by some form of state action, and that the procedures employed were constitutionally inadequate), but Energy Transfer failed to make such a showing. Id. (citations omitted).

Energy Transfer is similarly off base in citing other provisions of the PSIA to support its argument that this Court has jurisdiction over this action. It cites 49 U.S.C. § 60129(b)(3)(D)(i), which permits an employee to bring an action in district court if the agency has not issued a final decision within 210 days of the employee's complaint and the delay is not due to bad faith by the employee. Pl. Resp., Dkt. No. 24, p. 5. The fact that Congress provided employees with an alternative forum in which to proceed with their cases under certain circumstances has no bearing on whether this Court has jurisdiction to enjoin an ongoing administrative proceeding. Energy Transfer also cites 49 U.S.C. § 60129(b)(5), which allows the Secretary of Labor and employees to enforce orders issued against employers in district court, to argue that employers have no equivalent cause of action. Pl. Resp., Dkt. No. 24, p. 5. Again, this provision (which logically does not permit employers to file suits to enforce orders that find no violations of the PSIA whistleblower provision and so do not require any actions by anyone) has no relevance to whether this Court has jurisdiction over this action.

Energy Transfer asserts that "the only claims allowed to be appealed under PSIA are an employee's claims against an employer, 49 U.S.C. § 60129(a), and the administrative process forbids adjudication of the statu[t]e's constitutionality." Pl. Resp., Dkt. No. 24, p. 6. Energy Transfer's argument is unavailing. It is accurate that the decisionmakers in the administrative adjudication process (i.e., the ALJ and the DOL's Administrative Review Board, which decides appeals of ALJ decisions under the PSIA) cannot rule on the constitutionality of the PSIA's whistleblower provision. *Adm'r Wage & Hour Div., v. The Edgewood Co.*, ARB No. 2025-0017, 2025 WL 870644 (ARB Feb. 28, 2025) at *1 (noting that the Administrative Review Board "has long held it does not have the power to pass on the constitutional validity of the statutes and regulations it administers. (citations omitted)). However, as long as Energy Transfer preserves its constitutional challenges by raising them throughout the administrative proceedings, it can obtain

review of these constitutional claims by a court of appeals in due course. *Cf. Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750–51 (6th Cir. 2019) (holding that petitioner failed to preserve its constitutional claims when it failed to properly raise them); *Marshall Cnty. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 923 F.3d 192, 208 (D.C. Cir. 2019) (holding constitutional challenges were waived where "[p]etitioners had ample opportunity in the proceedings before the ALJ and the Commission to raise the constitutional and statutory challenges that they now press before this court, but failed to do so").

Furthermore, if any doubt remains as to this Court's lack of jurisdiction, the posture of *Jarkesy* provides additional clarity. *SEC v. Jarkesy*, 603 U.S. 109, 119-20 (2024). *Jarkesy* itself came up on direct review to the Fifth Circuit, *id.*, not through a collateral attack in district court, as Energy Transfer has attempted here. In that sense, a decision denying jurisdiction here would align with the procedural pathway taken in *Jarkesy*, where the plaintiff's constitutional claims were pursued on direct appeal from an SEC administrative proceeding to the Fifth Circuit, and then to the Supreme Court. *See Blankenship v. Fin. Indus. Regulatory Auth.*, No. 24-CV-3003, 2024 WL 4043442, at *2 n.3 (E.D. Pa. Sept. 4, 2024) (same). Clearly, channeling Mr. Jarkesy's constitutional claims to the court of appeals provided sufficient opportunity to ensure redress for those claims. The same opportunity to be heard would be available to Energy Transfer in the present case if this Court finds it has no jurisdiction.

Energy Transfer's muddled arguments do not overcome the PSIA's text and Congress's decision to explicitly bar district court jurisdiction and collateral attacks. 49 U.S.C. § 60129(b)(4)(A)-(B).

**B.    Energy Transfer Improperly Focuses on Implicit Jurisdiction.**

Energy Transfer's arguments concerning implicit preclusion, Pl. Resp., Dkt. No. 24, pp.7-9, are irrelevant because DOL has argued only that the PSIA *explicitly* precludes

jurisdiction. *Implicit* preclusion is not at issue here. Thus, many of the cases cited by Energy Transfer have no relevance to the jurisdictional analysis because they concern only implicit preclusion. Notably, the factors set forth in *Thunder Basin Coal Company v. Reich*, 510 U.S. 200 (1994), are only used to analyze implicit preclusion. Likewise, *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *Cochran v. SEC*, 20 F.4th 194, 200-01 (5th Cir. 2021), concern only implicit preclusion. Neither the Federal Trade Commission Act nor the Securities Exchange Act, the statutes considered in *Axon* and *Cochran*, respectively, contain a separate express bar on this Court's judicial review as the PSIA does. *Compare* 15 U.S.C. § 45 (FTC Act) (no prohibition on district court review) *and* 15 U.S.C. § 78y (SEC Act) (same) *with* 49 U.S.C. § 60129(b)(4)(B) (limiting collateral attacks in district court for PSIA matters).

## II.    THE SEVENTH AMENDMENT DOES NOT REQUIRE ARTICLE III ADJUDICATION OF WYDERKA'S CLAIMS.

### A.    Energy Transfer Mischaracterizes the Equitable Legal Remedies That Wyderka Seeks.

Energy Transfer argues that "the bulk of the remedies Wyderka seeks are legal in nature." Pl. Resp., Dkt. No. 24, pp. 9-11. Although Energy Transfer is correct that the PSIA allows (and Wyderka seeks) compensatory damages, Energy Transfer is mistaken when it further asserts that compensatory damages are legal in this case. *Jarkesy* instructs that "[w]hat determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" 603 U.S. at 123 (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)). In fact, the Supreme Court has long made this distinction, distinguishing "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo"; the former "were issued by courts of law," as opposed to "courts of equity." *Tull*, 481 U.S. at 422. Thus, caselaw, including *Jarkesy*, acknowledges that relief designed to restore the status quo can be equitable in nature. And that

precisely describes the types of relief that the PSIA provides: compensatory damages to make the employee whole, not to punish the employer.

Energy Transfer states that "[n]othing in § 60129(b)(3)(B) defines the remedies available under PSIA as 'equitable'" and cites *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), for the principle that compensatory damages are necessarily legal remedies. Pl. Resp., Dkt. No. 24, p. 11. *Mertens* does not support Energy Transfer's argument. *Mertens* addressed the Employee Retirement Income Security Act ("ERISA"), but ERISA is not a make-whole statute; it is concerned with preventing mismanagement of retirement plans and does not grant rights to individual beneficiaries. *Mertens*, 508 U.S. at 261-62; *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985). Thus, ERISA cases are not instructive in instances where the statute allows a claimant to seek make-whole relief, as is true of the PSIA whistleblower provision. *See, e.g.*, *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1259 (10th Cir. 2004) ("ERISA, unlike Title VII . . . , is not a make-whole statute."). Energy Transfer also attempts to distinguish *West v. Gibson*, 527 U.S. 212 (1999), Pl. Resp., Dkt. No. 24, p. 10 n.7, but that case demonstrates that Congress may authorize an agency to award make-whole relief, including compensatory damages, without implicating the Seventh Amendment. 527 U.S. at 217-19. *West* squarely contradicts the assertion that compensatory damages are always legal in nature.

Lastly, Energy Transfer mischaracterizes *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558 (1990), and the purpose for which DOL cited it. DOL Mot., Dkt. No. 21, pp. 11-12. While *Chauffeurs* concluded that the money damages sought in that case, from a union for a breach of the duty of fair representation under the National Labor Relations Act, were legal, the Supreme Court reached this conclusion by noting that money damages can be equitable, such as in the Title VII context, where a statute expressly identifies monetary remedies as relief intended to make the injured party whole. *Chauffeurs*, 494 U.S. at 572-73; *see also*

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss      7**

*Millsap*, 368 F.3d at 1258 (recognizing that traditionally legal remedies such as back pay can be considered equitable if Congress "specifically make[s] [the relief] part of an equitable remedy"). DOL cited *Chauffeurs* for its recognition of this principle. DOL Mot., Dkt. No. 21, pp. 11-12. Here, like Title VII, the PSIA combines monetary relief with other equitable remedies—such as affirmative action to abate the violation and reinstatement—to authorize relief in the form of a single order to:

> (i) take affirmative action to abate the violation; (ii) reinstate the complainant to his or her former position together with the compensation (including back pay) and restore the terms, conditions, and privileges associated with his or her employment; and (iii) provide compensatory damages to the complainant.

49 U.S.C. § 60129(b)(3)(B); *compare* 42 U.S.C. § 2000e–5(g)(1) (listing Title VII remedies, including back pay as well as affirmative action and reinstatement). Energy Transfer asserts that *Chauffeurs* concluded that money damages in the form of back wages are legal and that DOL relied on this case to argue that even if money damages are legal, there is no Seventh Amendment right to a jury if equitable remedies are also sought. Pl. Resp., Dkt. No. 24, p. 11. As discussed, Energy Transfer is wrong on both points.

In sum, the remedies sought by Wyderka are part of a statute intended to "restore the status quo," *Jarkesy*, 603 U.S. at 123, by making the complainant whole. And as *Jarkesy* and other cases make clear, this type of make-whole relief is equitable, not legal, in nature.

**B.      Wyderka's Claims Are Not Analogous to Traditional Common-Law Causes of Action.**

Energy Transfer states that Wyderka's claim "mirrors" and "resembles" a common-law cause of action. Pl. Resp., Dkt. No. 24, pp. 11-12. To the contrary, a PSIA whistleblower retaliation claim is not akin to any cause of action at common law. Energy Transfer cites *Stedman v. Konover Const. Corp.*, to support its contention that "English law tended toward requiring cause to terminate the employment relationship." Pl. Resp., Dkt. No. 24, p. 12 (citing

*Stedman v. Konover Const. Corp.*, No. CV-93-0457003-S, 1994 WL 715842, at *3-4 (Conn. Super. Ct. Dec. 6, 1994). But Wyderka's employment relationship with Energy Transfer was at will and did not require termination for cause. Furthermore, *Stedman* is inapplicable because it turned on whether Connecticut state law (not the Seventh Amendment) provides a right to a jury trial. *Id.* at 4.

Energy Transfer fails to identify a specific tort that is analogous to Wyderka's claim, though it suggests that the claim is a tort and a breach of contract, as well as a wrongful discharge. Pl. Resp., Dkt. No. 24, pp. 11-12. But, as DOL explained its motion, while wrongful discharge would appear to be the most appropriate analogue, wrongful discharge is a mid-20th century innovation and has no roots in 18th century common law. *See* DOL Mot., Dkt. No. 21, p. 13 (citing Krauskopf, *Employment Discharge: Survey and Critique of the Modern At Will Rule*, 51 UMKC L. Rev. 189, 232 (1983) and Kempf & Taylor, *Wrongful Discharge: Historical Evolution, Current Developments, and a Proposed Legislative Solution*, 28 San Diego L. Rev. 117, 121-23 (1991)). Because Wyderka's claims are exclusively derived from the PSIA and are not analogous to any common law claim in 18th century England, the claim is equitable, not legal in nature, and does not implicate the Seventh Amendment.

### C.      The Public Rights Exception Applies to the Adjudication of PSIA Claims.

PSIA whistleblower claims may be adjudicated administratively because they fall within the public rights exception. Energy Transfer argues that the public rights exception does not apply because Wyderka seeks legal remedies in an action that resembles an action at common law. Pl. Resp., Dkt. No. 24, pp. 13-14. Not only is that a circular argument, but it is also not correct. For the reasons discussed above, Energy Transfer has not demonstrated, and cannot demonstrate, that an employee in Wyderka's circumstances—whose employment the parties understood to be at will—could bring a suit at common law for being fired in retaliation for

voicing concerns about possible violations of a detailed statutory pipeline safety scheme.

In any event, the PSIA whistleblower provision easily fits into the public rights exception to the Seventh Amendment and Article III, articulated in *Granfinanciera*, *S.A. v. Nordberg,* 492 U.S. 33 (1989), *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568 (1985), and *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Commission*, 430 U.S. 442 (1977), and reaffirmed in *Jarkesy*. As DOL explained it its motion, DOL Mot., Dkt. No. 21, pp. 16-18, the PSIA whistleblower provision is "self-consciously novel," like the Occupational Safety and Health ("OSH") Act in *Atlas Roofing*. *See Jarkesy*, 603 U.S. at 136-37 (describing the OSH Act as "self-consciously novel"); *see also Lawson v. FMR LLC*, 571 U.S. 429, 435 (2014) (explaining that Sarbanes-Oxley Act whistleblower provision, which is analogous to the PSIA provision at issue here, was necessary because "efforts to 'quiet' whistleblowers generally were not proscribed under then-existing law"). Just like the OSH Act in *Atlas Roofing*, then, the PSIA "did not borrow its cause of action from the common law," and the public rights exception thus similarly applies to this case. *See Jarkesy*, 603 U.S. at 136-38; *see also Atlas Roofing*, 603 U.S. at 136-40. Despite Energy Transfer's assertions downplaying *Atlas Roofing*'s significance, Pl. Resp., Dkt. No. 24, p. 15, the Court in *Jarkesy* declined to overrule it, and it "remain[s] binding precedent" on this Court. *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) (per curiam) (citation omitted).

Energy Transfer also asserts that the fact that the government is not a party in this whistleblower dispute before the ALJ, which is instead between two private parties, takes this matter out of the public rights exception. Pl. Resp., Dkt. No. 24, p. 13. The Supreme Court has expressly "rejected the view that a matter of public rights must at a minimum arise between the government and others," and instead noted that "the Federal Government need not be a party for a case to revolve around public rights." *Granfinanciera*, 492 U.S. at 54 (internal quotation marks

omitted). In such situations, the relevant analysis is whether the claims at issue are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution," even if Congress "create[d] a seemingly private right." *Id.* (internal quotation marks omitted). Wyderka's PSIA claims satisfy this requirement, as explained in DOL's motion. DOL Mot., Dkt. No. 21, pp. 16-18.

Furthermore, courts have repeatedly rejected Seventh Amendment and Article III challenges to DOL's administrative adjudication of claims under whistleblower protection statutes on the grounds they involve public rights suitable for administrative adjudication. *See* DOL Mot., Dkt. No. 21, p. 18; *see, e.g.*, *Yellow Freight Sys., Inc. v. Martin*, 983 F.2d 1195, 1200-01 (2d Cir. 1993) (rejecting Article III and Seventh Amendment challenges to DOL adjudication of analogous whistleblower claim under the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 31105); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 806-07 (N.D. Cal. 2008) (same as to analogous whistleblower claims under Sarbanes-Oxley Act, 18 U.S.C. § 1514A). Energy Transfer attempts to dismiss these cases as "nonbinding" and argues that the cases "rest primarily on the perceived closeness of whistleblower provisions to underlying regulatory schemes." Pl. Resp., Dkt. No. 24, p. 14. But that closeness remains important to the Seventh Amendment analysis even after *Jarkesy*. *See Jarkesy*, 603 U.S. at 133-34 (explaining that *Granfinanciera*, on which the Court relied, analyzed whether the actions at issue were "'closely intertwined' with the bankruptcy regime" (quoting *Granfinanciera*, 492 U.S. at 54)). And in *Yellow Freight*, for example, the court also explained that the statute at issue was meant to protect "safety on the nation's highways" by "creat[ing] an extensive public regulatory scheme" that included whistleblower protections because employees in the transportation industry "need express protection against retaliation for reporting these violations"—that is, because they were not protected under the common law. 983 F.2d at 1200-01 (quoting *Brock v.*

*Roadway Express, Inc.*, 481 U.S. 252, 258 (1987)). The same is true of the analogous PSIA provision at issue here.

Next, Energy Transfer tries to distinguish *Ortega v. Off. of the Comptroller of the Currency*, 155 F.4th 394 (5th Cir. 2025), by arguing that it involved "enforcement within a historically exclusive federal banking regime." Pl. Resp., Dkt. No. 24, p. 15. But *Ortega* also explicitly stated that the law at issue was "analogous to *Atlas Roofing*'s OSHA" where "Congress saw the inadequacy of court adjudication of a particular problem, created new remedies to target that particular problem, and assigned their adjudication to an administrative agency." 155 F.4th at 408. The same is true of the PSIA whistleblower protection provision. Energy Transfer likewise fails in its attempt to distinguish *Oil States Energy Servs., LLC v. Greene's Energy Group, LLC*, 584 U.S. 325, 333-34 (2018), and *Thomas*, 473 U.S. 568, because Energy Transfer misinterprets the import of DOL's reliance on those cases. DOL did not assert that those cases were factually analogous to this instant case. Rather, DOL cited them as providing some of the legal framework applicable here, DOL Mot., Dkt. No. 21, pp. 16-18, including the proposition that a claim "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution" falls within the public rights exception, *id.* at 18; *see Thomas*, 473 U.S. at 594. Energy Transfer has not denied that these principles are still good law.

Energy Transfer's reliance on *AT&T, Inc. v. FCC*, 149 F.4th 491 (5th Cir. 2025), *petition for cert. granted* (U.S. Jan. 9, 2026) (No. 25-406), Pl. Resp., Dkt. No. 24, pp. 15-16, is also unavailing, because in that case, the FCC had argued (unsuccessfully, in the Fifth Circuit's opinion) that the regulation of common carriers was a category of adjudication that historically fell within the public rights exception. *Id.* at 500-02; *see Jarkesy*, 603 U.S. at 128-30 (recognizing a category of cases that "historically could have been determined exclusively by

[the executive and legislative] branches," including immigration, tariffs, and relations with Indian tribes) (citations omitted). Here, in contrast, DOL is not arguing that the PSIA whistleblower protection provision falls within the public rights exception by virtue of long historical practice; rather it is akin to the "novel" OSH Act at issue in *Atlas Roofing*, which "did not borrow its cause of action from the common law." *Id.* at 136-37. Furthermore, the court in *AT&T* concluded that the claim at issue was not within the public rights exception in part because "the common carrier doctrine is deeply rooted in the common law." 149 F.4th at 501. But as discussed *supra*, the PSIA whistleblower protection provision is not drawn from the common law and is not akin to a common law claim.

Lastly, Energy Transfer cites *Kinder Morgan, Inc. v. United States Dep't of Labor*, No. H-25-cv-3651, 2025 WL 3635155 (S.D. Tex. 2025), as holding "that PSIA retaliation claims fall outside the public-rights exception." Pl. Resp., Dkt. No. 24, p. 16 (citing *Kinder Morgan*, 2025 WL 3635155, at *17-18). Energy Transfer grossly mischaracterizes the *Kinder Morgan* decision. The page numbers that Energy Transfer cites in the decision do not exist. More importantly, the district court in *Kinder Morgan* specifically noted that its decision did not address the Seventh Amendment at all. 2025 WL 3635155, *5 at n.22.

## III.   IF THIS COURT REACHES THE ARTICLE II REMOVAL PROTECTION CLAIM, IT SHOULD SEVER THE UNCONSTITUTIONAL PROVISION.

If the Court concludes that it has jurisdiction over this action and reaches the removal protection issue, it should sever the objectionable ALJ removal protections. None of Energy Transfer's arguments against severance are persuasive. Energy Transfer asserts that the Supreme Court cases cited by DOL are inapplicable because they "addressed the remedial question of how to cure a structural constitutional defect once judicial review was properly before the Court" but did not permit an unconstitutional adjudication to continue "merely because a severance remedy might later be available." Pl. Resp., Dkt. No. 24, p. 19 (citing *Free Enter. Fund v. Pub. Co. Acct.*

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss      13**

*Oversight Bd.,* 561 U.S. 477 (2010); *Seila Law LLC v. CFPB,* 591 U.S. 197 (2020); *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020); *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021)). Energy Transfer misunderstands the purpose for which DOL cited these cases. While they may not have involved on-going administrative adjudications, they nonetheless provide guiding principles about severing unconstitutional provisions that this Court can and should apply to this action. As explained in DOL's opening brief, DOL Mot., Dkt. No. 21, p. 21, the Supreme Court has made clear that there is "a strong presumption of severability," where "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S. at 625-627, 630; *see also Free Enter. Fund,* 561 U.S. at 508 ("[W]hen confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." (internal quotations marks omitted)); *id.* at 509 (explaining that because the challenged law "remains fully operative as a law with these tenure restrictions excised," the remaining provisions, which can operate independently, must be sustained (internal quotation marks omitted)); *Seila Law*, 591 U.S. at 237 (severing removal protections, using "a scalpel rather than a bulldozer in curing the constitutional defect"); *Arthrex*, 594 U.S. at 23 ("[W]hen confronting a constitutional flaw in a statute, [a court should] try to limit the solution to the problem" by disregarding the "problematic portions while leaving the remainder intact." (internal quotation marks omitted)). Energy Transfer identifies no reason to disregard these principles.

Energy Transfer also contends that DOL's severability argument fails because DOL never identified "what statutory provision would be severed" and "how severance would operate in practice." Pl. Resp., Dkt. No. 24, p. 18. Although DOL is not required to submit a "severance plan" with its motion, this Court can sever the multiple layers of removal restrictions for ALJs in 5 U.S.C. § 7521 from the PSIA administrative adjudication scheme, which can operate

independently of those restrictions. Energy Transfer has not pointed to any unconstitutional removal protections in the PSIA or its implementing regulations. Therefore, with the multiple layers of removal restrictions in 5 U.S.C. § 7521 severed from Wyderka's administrative adjudication in this case, the adjudication can proceed free from unconstitutional removal protections.

Lastly, Energy Transfer again patently misconstrues *Kinder Morgan* and incorrectly states the *Kinder Morgan* court "rejected the argument that severability alone precludes injunctive relief." Pl. Resp., Dkt. No. 24, p. 20. The *Kinder Morgan* decision did not address severance. 2025 WL 3635155. That case provides no support for Energy Transfer's arguments against severance.[3]

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Opening Brief, this case should be dismissed for lack of subject-matter jurisdiction. But if the Court reaches the merits of Energy Transfer's claims, it should enter summary judgment in Defendants' favor. Alternatively, the Court should sever the multiple layers of removal restrictions for ALJs in 5 U.S.C. § 7521 from the PSIA administrative adjudication scheme.

---

[3] Energy Transfer does not rebut DOL's argument that the availability of severance precludes a permanent injunction to halt the proceedings entirely. As explained in DOL's motion, Energy Transfer has failed to show that the balance of harms and the public interest favor permanently enjoining Wyderka's administrative proceeding because severance alleviates any potential harm that Energy Transfer could suffer while the administrative adjudication proceeds. DOL Mot., Dkt. No. 21, p.22.

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss        15**

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY


*/s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney
Texas Bar No. 24055299
1100 Commerce Street, Third Floor
Dallas, TX    75242-1699
Telephone:     214-659-8600
Facsimile:     214-659-8807
Mary.cherry@usdoj.gov

*Attorneys for Defendants*
*in their official capacities*


<u>Certificate of Service</u>

On March 12, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Mary M. (Marti) Cherry*
Mary M. (Marti) Cherry
Assistant United States Attorney

**Defendants' Reply Brief in Support of Their Motion for Summary Judgment and Motion to Dismiss        16**